IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CIVIL ACTION NO. 5:14-CV-00448-BO

| | |
|---|---|
| MOISES ENOT VELASQUEZ-MONTEROSSA, on behalf of himself and all others similarly situated, | ) ) ) ) |
|        Plaintiff, | ) ) |
| vs. | ) ) |
| MI CASITA RESTAURANTS a/k/a MI CASITA RESTAURANTE MEXICANO; JM MACIAS, INC.; JFC LLC; MACIAS LLC; MACIAS ENTERPRISE LLC; MC MANAGEMENT LLC; MEXICAN FOODS EXPRESS, INC.; PIRAMIDE MEXICAN FOODS, INC.; VIA 216 NC LLC; JESUS MACIAS; and JUAN MACIAS, | ) ) ) ) ) ) ) ) ) ) ) |
|       Defendants. | ) |

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR CONDITIONAL CERTIFICATION PURSUANT TO THE FAIR LABOR STANDARDS ACT, AND FOR CLASS CERTIFICATION UNDER FED. R. CIV. P. 23

# TABLE OF CONTENTS

TABLE OF CONTENTS…………………………………………………………………………..ii

TABLE OF AUTHORITIES…………………………………………………………………iv

I.  INTRODUCTION................................................................................................... 1

II.  FACTUAL BACKGROUND............................................................................. 4

A.  The Named Plaintiff, Early Opt-in Plaintiff and Putative Plaintiffs Are Similarly Situated to One Another Regardless of the Location in Which They Worked…………………….…………………………………………………........................ 4

B.  Plaintiff and Putative Plaintiffs are Similarly Situated Because They Worked Under the Same Illegal Payment Scheme That Failed to Pay Overtime Pay……….................................................................................................. 6

C.  The Putative Class Includes at Least 100 Other Workers Who Deserve the Protections of the FLSA……………………………….................................................................. 10

D.  Plaintiff And His Counsel Are Prepared to Pursue Defendants' Willful Violations on Behalf of Others…………………………………………………………. 10

IV.  LEGAL ARGUMENT ..................................................................................... 11

1.  CONDITIONAL CLASS CERTIFICATION AND COURT-AUTHORIZED NOTICE ARE WARRANTED……………………………………………................................. 11

A.  Courts Employ A Two-Stage Certification Process for FLSA Collective Actions ……………………………………………………………………........ 12

B.  A Lenient Standard Is Applied For Conditional Certification And Court-Facilitated Notice in FLSA Collective Actions…………........................................................ 13

C.  Plaintiffs Easily Meet The "Similarly Situated Standard."…................................................................................................... 14

i.  Plaintiffs Sufficiently Establish That The Class Members And They Are Similarly Situated With Respect to Their Job Duties.................................. 15

ii.  Plaintiffs And The Class Members Are Similarly Situated With Respect To Their FLSA Claims.................................................................................... 15

D.  Plaintiffs' Case is Appropriate for Court-Facilitated Notice…….................................................................................................. 17

i.    Plaintiff's Proposed Judicial Notice is Accurate and Informative ............ 18

ii.   A List of Putative Class Members Is Necessary to Facilitate
      Notice................................................................................................... 19

iii.  Defendants Should Post the Court-Approved Notice and Consent Forms At
      Each Place of Employment...................................................................... 19


2.    PLAINTIFF'S NCWHA CLAIMS SHOULD BE CERTIFIED AS A CLASS ACTION
UNDER FED. R. CIV. P. 23(A) AND (B)(3) ........................................................... 20

A.    Plaintiffs Satisfy the Rule 23(a) Requirements…................................................ 20

      i.   The Proposed Class is Sufficiently Numerous.................................................. 21

      ii.  The Proposed Class Satisfies the Commonality and Typicality Requirements
           of Fed. R. Civ. P. 23(a)(2) and (a)(3)........................................................... 21

      iii. Plaintiffs Velasquez and His Counsel Will Fairly and Adequately Protect the
           Interests of the Class................................................................................... 24

B.    The Proposed Class Satisfies the Requirements of Rule 23(b)(3) ...................... 25

      i.   Common Questions of Law and Fact Predominate Any Individual
           Questions………………………………………………………………. 25

      ii.  A Class Action Is The Superior Method For Litigating This
           Matter……………………………………………………….................. 26

IV.  CONCLUSION ............................................................................................................ 29

---

**Motion for Notice – Page iii**

Cases

*Amchem Prods. v. Windsor*, 521 U.S. at 623 (1997) .................................................................25

*Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331 (4th Cir. 1998)............................22, 23

*Broussard*, 155 F.3d 331, 1998 U.S. App. LEXIS 20248, 41 Fed. R. Serv. 3d (Callaghan) 1151 (4th Cir. N.C.1998)................................................................................................................24

*Brown v. Nucor Corp.*, 576 F.3d 149 (4th Cir. 2009) ................................................................22

*Bumgarner v. NCDOC*, 276 F.R.D. 452, 2011 U.S. Dist. LEXIS 106926, at *457 (E.D.N.C. 2011)........22

*Byard v. Verizon W. Va., Inc.*, 287 F.R.D. 365, 2012 U.S. Dist. LEXIS 152814, at *376 (N.D. W. Va. 2012) . 19

*Calderon v. GEICO Gen. Ins. Co.*, 2011 WL 98197, 2011 U.S. Dist. LEXIS 2815, at * 21 (D. Md. Jan. 12, 2011) ........................................................................................................ 11, 12, 17, 19

*Ceras-Campo v. WF P'ship*, 2011 WL 588417 (E.D.N.C. Feb. 9, 2011) ......................................13, 26, 27

*De Luna-Guerrero v. N.C. Grower's Ass'n*, 338 F. Supp. 2d 649, (E.D.N.C. 2004) ...........................12, 14

*Diaz v. Quality Crab Co.*, 2011 WL 4498941 (E.D.N.C. Aug. 12, 2011) ......................................12, 13, 20

*Dornberger v. Metropolitan Life Ins. Co.*, 182 F.R.D. 72, 81 (S.D.N.Y. 1998)........................................24

*Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54 (D. Mass. 1997) ...............................28

*Earl v. Norfolk State Univ.*, No. 2:13CV148, 2014 WL 6608769, at *4 (E.D. Va. Nov. 18, 2014) ..........13

*East Texas Motor Freight System, Inc., v. Rodriguez*, 431 U.S. 395 (1977) ...............................23

*Enriquez v. Cherry Hill Mkt Corp.*, No. 10-CV-5616 (FB), 2012 U.S. Dist. LEXIS 17036, at * 11, 2012 WL 440691 (E.D.N.Y Feb. 10, 2012)................................................................20

*Faust v. Comcast Cable Commc'ns Mgmt., LLC*, 2011 WL 5244421, at *2 (D.Md. Nov. 1, 2011) ..........14

*Gaxiola v. Williams Seafood of Arapahoe, Inc.*, 776 F. Supp. 2d 117, 2011 U.S. Dist. LEXIS 20473, Wage & Hour Cas. 2d (BNA) 1000 (E.D.N.C. 2011) ...............................................20, 21, 26

*Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147 (U.S. 1982) .........................................21

*Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981) ...........................................................................28

*Haggart v. United States*, 89 Fed. Cl. 523 (Fed. Cl. 2009) .......................................................26

*Harris*, 2011 WL 4443024, at *7 ...............................................................................21, 23, 26

*Haywood v. Barnes*, 109 F.R.D. 568 (E.D.N.C. 1986) ..............................................................22

**Motion for Notice – Page iv**

*Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249 (S.D. N.Y. 1997) ....................................................... 15

*Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989) ................................. 11, 14, 17, 18, 19

*Horne v. Smithfield Packing Co.*, 2011 WL 4443034, (E.D.N.C. Sept. 23, 2011) .................. 12, 21, 23, 26

*Jimenez-Orozco v. Baker Roofing Co.*, 2007 U.S. Dist. LEXIS 93860 at *6 .......................... 12, 13, 23, 27

*Kidwell v. Transp. Com. Int'l Union*, 946 F.2d 283 (4th Cir. 1991) ......................................... 22

*LaFleur v. Dollar Tree Stores, Inc.*, 30 F. Supp. 3d 463 (E.D. Va. 2014) .................................... 16

*Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 357, 2007 U.S. Dist. LEXIS 32642, at *358, 15 Wage & Hour Cas. 2d (BNA) 1096 (S.D.N.Y. 2007) ............................................... 11, 15, 17

*Martinez-Hernandez v. Butterball, LLC.*, 2008 WL 8658452, 2008 U.S. Dist. LEXIS 111931 (E.D.N.C. Nov. 14, 2008) .................................................................................................. 13, 21, 23, 26

*McLaurin et al v. Prestage Foods, Inc.*, 271 F.R.D. 465 (E.D.N.C. 2010) ............ 12, 13, 18, 20, 21, 22, 26

*Mitchel v. Crosby Corp.*, 2012 WL 4005535, at *7-8 (D. Md. Sept. 10, 2012) ........... 12, 13, 14, 16, 21, 26

*Mitchell v. Smithfield Packing Co.*, 2011 WL 4442973 (E.D.N.C. Sept. 23, 2011) ............................ 12, 23

*Montoya v. S.C.C.P. Painting Contractors, Inc.*, No. CCB–07–455, 2008 WL 554114, at *5 (D.Md. Feb.26, 2008) ................................................................................................................ 12, 14

*Myers v. Hertz Corp.*, 624 F.3d 537 (2d Cir.2010) ............................................................. 12, 13

*Olvera-Morales v. Intern. Labor Mgmt Corp.*, 246 F.R.D. 250 (M.D.N.C. 2007) .................................... 24

*Quintanilla v. A&R Demolition, Inc.*, 2005 U.S. Dist. LEXIS 34033, at *50, 2005 WL 2095104 (S.D. Tex. Aug. 30, 2005) ...................................................................................................... 17

*Regan v. City of Charleston*, 2014 WL 3530135, 2014 U.S. Dist. LEXIS 96317, at *10, (D.S.C. July 16, 2014) .......................................................................................................................... 12

*Rehberg v. Flowers Foods, Inc.*, 2013 WL 1190290, 2013 U.S. Dist. LEXIS 40337 at *5-6, 20 Wage & Hour Cas. 2d (BNA) 755, (W.D.N.C. Mar. 22, 2013) ............................................ 17, 19, 20

*Rodger v. Electronic Data Systems Corp.*, 160 F.R.D. 532 (E.D.N.C. 1995) ............................ 21

*Romero v. Mountaire Farms, Inc.*, 796 F. Supp. 2d 700 (E.D.N.C. 2011) ....... 12, 18, 21, 23, 24, 25, 26, 27

*Smith v. Lowe's Cos.*, 2005 U.S. Dist. LEXIS 9763, at *6, 2005 WL 6742234 (S.D. Ohio May 11, 2005) .................................................................................................................................. 17

*Visco v. Aiken County*, 974 F. Supp. 2d 908 (D.S.C. 2013) ...................................................... 17

**Motion for Notice – Page v**

*Wal-Mart Stores Inc., v. Dukes*, 131 S. Ct. 2541, 2551 (2011); Fed. R. Civ. P. 23(a)(2).......................... 22

*Williams v. XE Servs., LLC*, 2011 WL 52353 (E.D.N.C. Jan. 4, 2011) ........................................ 13, 15, 16

_____

# I.    INTRODUCTION

The Fair Labor Standards Act ("FLSA") was passed in **<u>1938</u>** in order to achieve the rapid elimination of detrimental labor conditions.  29 U.S.C § 202.  To achieve this important public policy objective, the FLSA requires that employers pay employees at least the federal minimum wage for all hours worked and overtime pay for hours worked in excess of 40 hours per week.  29 U.S.C.  §  207(a)(1).    In  addition,  the  FLSA  mandates  that  employers  keep  and maintain accurate records of <u>all hours worked for each employee</u>.  *See* 29 C.F.R. § 516.2 (emphasis added).

**<u>Since 1993</u>**,  the  policies  and  practices  of  Mi  Casita  Restaurants  ("Mi  Casita"  and collectively  with  the  above-named  Defendants,  the  "Defendants")  have  been  scrutinized, investigated, and litigated as failing to comply with the clear statutory requirements of the FLSA and the North Carolina Wage and Hour Act ("NCWHA").  In an order signed February 8, 1999, Defendants  in  this  matter  J.M.  Macias,  Inc.  d/b/a  Mi  Casita  Restaurante  Mexicano,  Juan  M. Macias,  and  Jesus  Macias,  among  others,  were  ordered  to  pay  back  wages  and  attorneys'  fees  by this Court as the result of an FLSA collective action that covered Mi Casita's operations from "<u>at least</u>" **<u>1993, 1994, 1995, and 1996</u>** through November 15, 1996.  *See* **Exhibit C**, Order in *Hernandez-Florez, et al v. J.M. Macias, Inc., et al*, (hereinafter, the "first lawsuit") pp. 1-2 (emphasis added)**.**  After settling this first lawsuit, Defendants did not put a timekeeping system into place and continued to pay nonexempt employees a flat salary regardless of their actual hours of work. **Exhibit E,** Deposition of Juan Macias, page 25: lines 5-10 (that the first lawsuit was settled); *id*. at 35:24-36:2 (that the system was not changed until 2011); *id*. 34:11-35:9 (acknowledging that Defendants' response after the first lawsuit "could have been better").

Subsequently in **2011**, the Department of Labor ("DOL") investigated Defendants operations (the "DOL investigation") from **2008, 2009, 2010, and 2011** through August 23, 2011. *See* **Exhibit D**, Findings from the Department of Labor provided to Defendant Juan Macias as to Defendant J.M. Macias, Inc. As a result of its investigation, the Department of Labor found that Defendants again owed back wages to multiple employees. *Id*. at 3. Specifically and predictably, the DOL found that Defendants were not keeping an accurate record of their employees' time, violating 29 C.F.R. § 516, and continued to pay a salary[1] to nonexempt employees that denied proper overtime compensation. *See id*., p. 3. To rectify these continued problems, Defendant Macias alleges that in <u>2011</u> Defendants finally implemented a time tracking system designed to fix Defendants' long-standing problems. *See* **Exhibit E,** 25:15-26:1; 39:1-10.

This case picks up where the Department of Labor investigation left Defendants[2] and is brought by Named-Plaintiff Moises Enot Velasquez Monterossa ("Plaintiff" or "Velasquez"), who alleges that even after the DOL investigation and after Defendants allegedly put a time tracking system in place, he, Early Opt-In Plaintiff Turcios, and putative plaintiffs continued to be paid a salary amount that did not pay overtime and did not pay for their actual hours of work. Plaintiff is joined by Early Opt-In Plaintiff Anyi Turcios Reyes (the "Early Opt-In Plaintiff" or "Turcios") who similarly testifies that she was paid a flat salary amount, regardless of working in excess of 40 hours a week, while working in several nonexempt positions in two different restaurant locations for Defendants. Moreover, these individuals (collectively, the "Plaintiffs") explain that they were not required to or were not permitted to record their actual hours of work in the

---

[1] Although not at issue in the class certification phase of the case, the term "salary" as used by Plaintiff is not intended to convey that the set amount paid to him did not vary or did not vary based on the quality or quantity of work. When Plaintiff worked as a Cook 2, he was paid less than as a Cook 1. Further, the amount paid to Plaintiff was dependent on Plaintiff making up any unanticipated time off such that if he failed to make up the time, his set payment for that week was subject to being reduced if he failed to make up the time off.

[2] *See* **Exhibit D** dated August 23, 2011 and note that this action dates back to August 8, 2011.

**Motion for Notice – Page 2**

timekeeping system Defendants set up to feign compliance with the FLSA while the DOL was actively investigating Defendants. Plaintiffs' allegations are not one-sided but are corroborated by Defendant Juan Macias who admits that Defendants' belated time tracking policies have, in practice, fallen short of the FLSA's requirements even *after* the DOL investigation was concluded. *See* 29 C.F.R. § 516; **Exhibit E** (Macias Depo.), 160:22-161:5 ("Q: It appears that there's missing documents and some inaccuracies in those documents from what I'm seeing. Would you agree? A. That's true."); *id*. at 97:2-16 (recognizing that Plaintiff's time was not tracked properly shortly after the DOL investigation and during the week reflected in **Exhibit I**); *id*. at 129:1-8 (recognizing that managers do not check to see if employees' time is accurate or paid correctly).

This case, thus, presents the unique circumstances of a group of Defendants who have already received a judgment against them in one collective/class action, had findings levied against them by the Department of Labor, and now face claims from Named Plaintiff on behalf of himself, the Early Opt-in Plaintiff, and putative plaintiffs who bring forth allegations nearly identical to those brought by previous employees and in accord with the findings of government investigators. *See e.g.*, Dkt #1, Complaint, ¶¶ 33, 35, 40. In the continued pursuit of public and private relief, Plaintiffs bring this Motion for Conditional Certification (the "Motion") under the FLSA on behalf of the many employees affected by Defendants' continued and persistent companywide policy, practice, and decision to pay flat salary amounts to nonexempt workers which do not properly pay those workers for their actual hours of work in excess of 40 hours per week. Defendants' policies continue to violate the Fair Labor Standards Act and/or the North Carolina Wage and Hour Act, N.C. Gen. Stat. §§ 95-25.1, *et seq*. Plaintiff's Motion requests that the Court conditionally certify this case as a Fair Labor Standards Act collective action under the <u>lenient</u> standards of Section 216(b) so that Plaintiff may send timely notice of this lawsuit to other similarly situated

individuals.[3]  Plaintiff also moves for class certification of his North Carolina Wage and Hour Act claims under Fed. R. Civ. P. 23(a) and (b)(3).  This Motion is supported by evidence sufficient to show Plaintiff has met the lenient burden for collective action certification applicable at this early stage of the litigation as well as the applicable standards for class certification under Rule 23.  The Complaint and consents already filed with the Court by Defendants' former employees are supported by additional sworn testimony, including testimony from Defendants.  For these reasons and those that follow, the Motion should be granted.

## II.     FACTUAL BACKGROUND

### A.     The Named Plaintiff, Early Opt-in Plaintiff, and Putative Plaintiffs Are Similarly Situated to One Another Regardless of the Location in Which They Worked.

The non-tipped and non-managerial employees employed by Defendants do the same duties and work under the same policies and practices regardless of the location served. Defendants readily admit this fact.  When deposed pursuant to a Fed. R. Civ. P. 30(b)(6) Deposition Notice, Defendant Juan Macias admits that Named Plaintiff, Early Opt-in plaintiff and the putative plaintiffs[4] do the same thing regardless of which restaurant they work in:

Q.   *This Cook 1 position* –

A.   *Yes, sir.*

Q.   *-- is this unique to Mr. Velasquez or would it apply to all the Cook 1s?*

A.   *No, it's not unique at all – to Mr. Velasquez at all, no.*

---

[3] The FLSA statute of limitations runs from the date an individual opts into the case.  Consequently, for former employees who are no longer being subjected to the illegal practice, every day without Notice is a day's pay they lose forever.  Plaintiffs therefore request an expedited determination of this Motion.

[4] Named Plaintiff and Opt-In Plaintiffs also indicated that while they and others may have had different titles, such as "Cook No. 1, 2, 3, or 4, or serving chips, cleaning the restaurant or seating people, all had primarily the same non-exempt responsibilities, cooking and serving the food, or seating the customers.  *See* Deposition of Named Plaintiff Enot Velasquez. *See e.g.*, **Exhibit F** at 124:2-125:15 *see also* Opt-In Plaintiff Turcios Deposition ("hereinafter Turcios Depo or **Exhibit G**") at 26:18-27:8.

**Motion for Notice – Page 4**

*Q. Okay. I want to –*

*A. Everybody's got the same responsibilities.*

*Q. All the Cook 1s? All the Cook 1s have the same responsibility?*

*A. With -- with the responsibilities -- all Cook Number 1s had the same responsibilities that I have testified to, yes.*

*Q. Okay. Similarly, you described to me a Cook 2's job. A Cook 2 in –*

*A. Yes.*

*Q. -- in one location would be a Cook 2's in the same [sic] location?*

*A. Yes.*

*Q. And would that be the same for the wait staff, wait staff's primary duty in one location is the same as in the other locations?*

*A. Yes.*

*Q. Is that also true for a food runner – food runner? One location has the same primary duties as a food runner –*

*A. Yes.*

*Q. -- in a different location?*

*A. Yes, sir.*

*Q. And for a bus person as well –*

*A. Yes, sir.*

**Exhibit E**, 122:10-123:21.

Moreover, Defendant Juan Macias, testified that Defendants' policies and practices were

not unique to one employee or one location:

*Q. Is there any reason why the policies that apply to Lillington would be different than the policies that would apply to Hope Mills?*

*A. No.*

**Motion for Notice – Page 5**

*Q. Is there any reason why the policies or practices that apply to Angier would be any different to those at Hope Mills?*

*A. No.*

*Q. And that would be true for all locations?*

*A. Yes.*

**Exhibit E,** 192:9-18. Consequently, even though the Named Plaintiff worked in one location and the Early Opt-In Plaintiff worked in two locations, their work was the same as the work of workers in the same positions at other locations and they functioned under the same policies and procedures as the other putative plaintiffs at Defendants' various locations.

**B.** **Plaintiff and Putative Plaintiffs are Similarly Situated Because They Worked Under the Same Illegal Payment Scheme That Failed to Pay Overtime Pay.**

Following the DOL investigation, Defendants ostensibly implemented a timekeeping system for its nonexempt workers. In theory, Named Plaintiff, Early Opt-in Plaintiff, and putative Plaintiffs were supposed to record their hours and their managers were supposed to review and sign-off on the hours for accuracy. *See e.g.*, **Exhibit E**, 37:4-38:4 (recording); *id*. at 58:8-13, 128:21-25 (managers' review). In practice, however, the company used the timekeeping system to ensure nonexempt employees worked no fewer than 8 hours in a day and made them sign <u>blank</u> timesheets as a condition precedent to receiving their paycheck. Ultimately, Defendants' apparent effort to track time appears to have been designed to fake compliance with the DOL's 2011 orders but ensure Plaintiff and putative Plaintiffs worked under the same illegal scheme as before.

Defendant Juan Macias admits that while the company's policy, allegedly put into place after the DOL investigation in 2011 and immediately preceding the period covered by this lawsuit, requires employees to accurately report their time and for managers to verify the time reported, this <u>unwritten</u> policy <u>has not been enforced,</u>

*Q.  You described to me a policy that was attempted to be put in place following the Department of Labor investigation.  We've looked at some documents.*

*A.  Uh-huh.*

*Q.  It appears that there's missing documents and some inaccuracies in those documents from what I'm seeing.  Would you agree?*

*A.  That's true.*

**Exhibit E**, 160:22-161:5.  The unwritten policy <u>has been functionally abandoned</u>,

*Q.  So if the manager's not signing the time sheet, then who's checking to make sure that the employees are recording their time accurately and ultimately that they're being paid correctly?*

*A.  I don't know.  I mean, it was obviously changed.  Shouldn't have been a change but it was.*

*Id.*at 129:1-8, referring to **Exhibits H-J**, Defendants 107, 108, 111 (reflecting that Defendants appear to have utilized time sheets around the time covered by the DOL investigation that required a manager's signature but later did not).

Plaintiffs' testimony sheds further light on this farce.  Rather than comply with the FLSA, Plaintiff explains that Defendants' timekeeping policy was a ruse from the very beginning:

*Q.  And do you know why they put in a time clock?*

*A.  (INTERPRETER)  Yes.*

*Q.  Why?*

*A.  (INTERPRETER)  Because they told us that one day the Department of Labor was going to go there and that we needed to mark eight working hours per day.  But even though after we marked them, we would continue, keep on going, and keep on working.*

**Exhibit F,** 162:1-9, 163:18-164:5.

Plaintiff Velasquez worked as a cook and, in this position, was supposed to record his actual hours of work.  *See e.g.*, **Exhibit F** at 210:10-211:4.  Plaintiff testifies that the other cooks

were supposed to use this system as well.  *Id.* at 211:6-211:16.  Additionally, Plaintiff testified that the front house staff were also supposed to utilize the system, including the "order takers, the busboys and the chip takers." *Id.*; *see also id.* at 163:10-17.  In fact, Early Opt-In Plaintiff Turcios also corroborates that while she worked as a hostess, chip taker, waitress, and cleaner, there was a time clock at the entrance and that no one who worked with her as a chip taker, cleaner, or hostess used the timeclock to record hours worked.  **Exhibit G**, Deposition of Early Opt-In Turcios, 26:18-27:8 (her positions and duties); 35:11-13 (location of clock).[5]

However, Plaintiffs consistently explain that, not only were they not permitted to accurately track their hours, their actual hours were either not recorded at all or they were required to sign blank timesheets so that Defendants could complete (i.e. falsify) documents on their behalf.  *See e.g.*, **Exhibit F**, 63:9-17, 91:2-92:16 (explaining that Plaintiff neither recorded the hours in **Exhibits H and I** nor signed those documents), 96:1-98:12 (again explaining that documents were signed in Plaintiff's name for Plaintiff), 210:10-211:4, 215:4-11 (same); **Exhibit G**: 35:14-23 (Turcios was never required to use the timekeeping system).  Plaintiff testified that he was required to sign blank timesheets in order to receive his paycheck; therefore, "None of these hours represent what [he] used to work there."  **Exhibit F**, 92:12-92:21.  Defendants' "policy" is best explained by Plaintiff

> *Q. At any point in time during your employment, were you using a time clock to record your time in and time out?*
>
> *A. (INTERPRETER) It wasn't a clock. It was a computer what we used.*
>
> *Q. And were you using that computer to actually record the exact time that you were coming in in the morning and the exact time at the end of day, or did you have to do something else?*
>
> *A. (INTERPRETER) I had to make some changes. If I mark that it was at 9:00, I had to*

---

[5] Functionally, this system appears designed to only exclude Defendants' Restaurant Managers, like Jesus Macias; Assistant Managers, like Erberto and Raphael Macias; and Upper Management, like Juan Macias.

**Motion for Notice – Page 8**

*make the changes for it to reflect eight hours.*

*But I had to continue to work.*

**Exhibit F**, 210:5-17.

There is no dispute that Plaintiffs worked in excess of 40 hours a week. **Exhibit G,** 52:20-53:18 (Early Opt-in Turcios worked 55-60 hours); **Exhibit F**, 63:6-7 (Plaintiff worked approximately 70 hours or more).   Nevertheless, like the other putative plaintiffs working for Defendants, after the watchful eyes of the DOL looked away, Defendants paid them a salary that did not pay them overtime.  **Exhibit F,** 159:11-161:13 (all cooks paid a salary and no overtime); **Exhibit G**, 33:19-34:16, 38:16-18 (Turcios paid a salary and no overtime in 2011-2013 while working as a chip taker, hostess, waitress, and cleaner). From personally seeing and communicating with potential class members, Plaintiffs know that these putative class members worked similar overtime hours without receipt of overtime pay. *See e.g.*, **Exhibit F** 62:16-18, 117:17-20, 119:2-6, 159:11-19, 164:23-165:9**.**  It is through these observations and conversations that Plaintiffs know that they have the same primary interests in bringing this suit:  to recover their unpaid wages, including the time and one-half premium for hours over 40 in a week.  As Plaintiff clearly alleges:

> *"What I think is that we were all paid the same. They didn't pay us -- they were all paid the same. We were not paid equally. They didn't pay us by hours. They paid us for everything from the time it opened until it closed."*

*Id*. at 177:12-17.   Plaintiffs also specifically identify individuals who worked under similar conditions in distinct locations who would be eligible to join this case. *Id*. at 207:23-208:21, 119:2-6.

In short, Defendants' policy to violate its stated policy resulted in Plaintiffs and putative plaintiffs being paid a salary which excludes overtime pay, and not according to their actual hours

of work.

**C.**     **The Putative Class Includes at Least 100 Other Workers Who Deserve The Protections of The FLSA.**

Defendants operate a chain of 16 Mexican food restaurants concentrated around the greater Fayetteville, North Carolina area.  Defendants employ approximately 200 employees at a time and the putative class likely exceeds one-hundred (100) workers.[6]

**D.**     **Plaintiff And His Counsel Are Prepared to Pursue Defendants' Willful Violations on Behalf of Others.**

Moreover, while Defendant acknowledges the previous problems the company has had, he admits that Defendants still do not have any formal written documents regarding time recording or payment of overtime.  **Exhibit E**, 185:15-25. Because Defendant has also admitted that he understood the requirements of the law and recognized that employees should be compensated for all hours worked, this also demonstrates Defendants' continued willfulness and persistence in violating FLSA mandates.  *See e.g.*, *id*. at 27:23-28:1 (Macias correctly explaining how nonexempt employees should be paid).

Significantly, when pressed by opposing counsel, Plaintiff explains that he expects the "just thing, what the law says it has to be done or imposes. That we have to get paid for overtime, over 40 hours and get paid at time-and-a-half." **Exhibit F**, 178:10-179:14.  Defendant Macias acknowledges that Plaintiff is a good worker and is smart.  **Exhibit E**, 92:5-15.   Plaintiff participates in decisions made about this case and brought this case on behalf of himself and others who are similarly situated.  **Exhibit F**, 207:2-21, 218:7-13.

The Law Offices of Gilda A. Hernandez and Lee & Braziel, LLP have extensive

---

[6] *See* **Exhibit E**, 65:9-11 (that Defendant currently employ around 200 employees), 77:16-24 (that Defendants have 6-7 wait staff per store, or approximately 100 wait staff employees).  To arrive at 100 from 200, Plaintiff subtracted the 30 managers  and assistant managers, subtracted 100 wait staff, and assumed minimal turnover over the four years, and counting, covered by this lawsuit.

experience litigating complex wage and hour class and collective actions, and are therefore competent and capable of conducting this litigation. Also, both firms are presently handling a number of wage and hour class actions in the State of North Carolina and elsewhere, further increasing expertise.

### III.    LEGAL ARGUMENT

### 1.    CONDITIONAL CLASS CERTIFICATION AND COURT-AUTHORIZED NOTICE ARE WARRANTED.

Named Plaintiff seeks conditional certification and a Court-facilitated notice in this collective action for unpaid overtime under the FLSA, 29 U.S.C. § 216(b). The FLSA expressly authorizes employees to pursue their claims collectively:

> [a]n action . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and on behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216 (b). This collective action procedure allows for efficient adjudication of similar claims, so "similarly situated" employees, whose claims are often small and not likely to be brought on an individual basis, may join together and pool their resources to prosecute their claims. *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

Three important features define an FLSA "collective action" under section 216(b).  First, to participate in a collective action, an employee must "opt-in", and a written consent to join the suit must be filed with the court. *Id.* at 168.   Second, the statute of limitations continues to run on each employee's claim until his/her individual opt-in form is filed with the court. *See Calderon v. GEICO Gen. Ins. Co.,* 2011 WL 98197, 2011 U.S. Dist. LEXIS 2815, at * 21 (D. Md. Jan. 12, 2011); *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 2007 U.S. Dist. LEXIS 32642, at *358, 15 Wage & Hour Cas. 2d (BNA) 1096 (S.D.N.Y. 2007).   Third, to serve the "broad

remedial purpose" of the FLSA, courts can order notice to other potential similarly situated employees to inform them of this opportunity to "opt-in" to the case. *See McLaurin et al v. Prestage Foods, Inc.,* 271 F.R.D. 465 (E.D.N.C. 2010) ("the Court typically authorizes Plaintiff's counsel to provide putative class members with notice of lawsuit and right to opt-in"); *Montoya v. S.C.C.P. Painting Contractors, Inc.,* No. CCB–07–455, 2008 WL 554114, at *5 (D.Md. Feb.26, 2008) (same); *Myers v. Hertz Corp.,* 624 F.3d 537, 554 (2d Cir. 2010) ("[D]istrict courts have 'discretion, in appropriate cases to implement [§216(b)] . . . by facilitating notice to potential plaintiffs' of the pendency of their opportunity to opt-in as represented plaintiffs"); *see also Regan v. City of Charleston,* 2014 WL 3530135, 2014 U.S. Dist. LEXIS 96317, at *10, (D.S.C. July 16, 2014) (same).

### A.    Courts Employ A Two-Stage Certification Process for FLSA Collective Actions.

Courts in the Fourth Circuit employ a two-stage approach to determine whether a case should be certified as a collective action. *See Calderon v. GEICO Gen. Ins. Co.* 2011 WL 98197 at *9; *see also McLaurin,* 271 F.R.D. at 469; *Romero v. Mountaire Farms, Inc.,* 796 F. Supp. 2d 700 (E.D.N.C. 2011); *Mitchell v. Smithfield Packing Co.,* 2011 WL 4442973 (E.D.N.C. Sept. 23, 2011); *Horne v. Smithfield Packing Co.,* 2011 WL 4443034, (E.D.N.C. Sept. 23, 2011); *Harris v. Smithfield Packing Co.,* 2011 WL 4443024 (E.D.N.C. Sept. 23, 2011); *De Luna-Guerrero v. N.C. Grower's Ass'n,* 338 F. Supp. 2d 649, (E.D.N.C. 2004). At the initial "notice stage," the Court determines whether the plaintiffs and potential opt-ins are sufficiently "similarly situated" to issue notice and allow the case to proceed as a collective action through discovery. *See Mitchel v. Crosby Corp.,* 2012 WL 4005535, at *7-8 (D. Md. Sept. 10, 2012); *see also Diaz v. Quality Crab Co.,* 2011 WL 4498941 (E.D.N.C. Aug. 12, 2011) (citing *Jimenez-Orozco v. Baker Roofing Co.,* 2007 U.S. Dist. LEXIS 93860 at *6. In making this determination, courts apply a "fairly lenient

standard" and, when they do, they "typically grant []" plaintiffs' notice motions. *See Diaz,* 2011 U.S. Dist. LEXIS 116315, at \*5-6; *see also McLaurin*, 2010 U.S. Dist. LEXIS 119792, at \*469.

Once the court determines that potential opt-in plaintiffs may be "similarly situated" for the purpose of authorizing notice, the court "conditionally certifies" the collective action, and plaintiffs send a court-approved notice to potential members. *See Martinez-Hernandez v. Butterball, LLC.,* 2008 WL 8658452, 2008 U.S. Dist. LEXIS 111931 (E.D.N.C. Nov. 14, 2008). Those potential plaintiffs may then elect to "opt-in" under section 216(b) by filing written consents with the court. *See Diaz,* 2011 U.S. Dist. LEXIS 116315, at \*4. The action then proceeds as a collective action once notice is accomplished. *Id.* The second stage of certification comes later, usually after discovery is complete and is based upon a more developed factual background. *See Jimenez-Orozco*, 2007 U.S. Dist. LEXIS 93860 at 13.

### B.     A Lenient Standard Is Applied For Conditional Certification And Court-Facilitated Notice in FLSA Collective Actions.

Critically, Plaintiffs are not required to prove that they are actually similarly situated to their former co-workers for this purpose. "The purpose of the first stage is merely to determine '*whether* similar plaintiffs do, in fact, exist.'" *Earl v. Norfolk State Univ.*, No. 2:13CV148, 2014 WL 6608769, at \*4 (E.D. Va. Nov. 18, 2014) (citing *Myers v. Hertz Corp.,* 624 F.3d 537, 555 (2d Cir.2010)). The burden for demonstrating that potential plaintiffs are "similarly situated" is accordingly low, as plaintiffs need only present a "modest factual showing" that plaintiffs and potential collective action members were victims of "a common policy or plan that violated the law." *See Ceras-Campo v. WF P'ship,* 2011 WL 588417 (E.D.N.C. Feb. 9, 2011) (same); *Williams v. XE Servs., LLC,* 2011 WL 52353 (E.D.N.C. Jan. 4, 2011); *see also Mitchel v. Crosby Corp.,* 2012 WL 4005535, at \*9-10, (concluding that through plaintiffs' declarations, [p]laintiff had "made a 'modest factual showing' that they are 'similarly situated'" through their allegations

of common wage and overtime practices that violate the FLSA); *see also Montoya*, 2008 WL 554114, at *2 ("Potential plaintiffs will be considered similarly situated when, collectively, they were victims of a common policy or scheme or plan that violated the law."); *Faust v. Comcast Cable Commc'ns Mgmt., LLC,* 2011 WL 5244421, at *2 (D.Md. Nov. 1, 2011) (stating that, for conditional certification, plaintiffs only need to show " 'a colorable basis for their claim that a class of "similarly situated" plaintiffs exist[s]' " (citation omitted)).

Court-authorized notice protects against "misleading communications" and resolves disputes regarding the content of any notice. *Hoffmann-La Roche v. Sperling,* 493 U.S. 165, 110 S. Ct. 482, 107 L. Ed. 2d 480, 1989 U.S. LEXIS 5910, 58 U.S.L.W. 4072, 51 Fair Empl. Prac. Cas. (BNA) 853, 52 Empl. Prac. Dec. (CCH) P39, 479, 29 Wage & Hour Cas. (BNA) 937 (U.S. 1989) (prevents the proliferation of multiple individual lawsuits, ensures joinder of additional parties is accomplished properly and efficiently, and expedites resolution of the dispute. *Id.* at 170-72. Our Supreme Court has explained the benefits of a collective action to the judicial system and the parties: it allows "plaintiffs the advantage of lower individual costs to vindicate their rights by the pooling of resources. The judicial system benefits by efficient resolution of one proceeding of common issues of law and fact arising from the same alleged activity." *Id.* at 171. For these benefits to be realized, however, persons who may have been aggrieved by the unlawful conduct must be provided *accurate* and *timely* notice of the collective action so that they can make informed decisions about whether to participate. *Id.* Thus, courts have broad discretion to allow plaintiffs to notify potential claimants so that they may choose to opt into the suit. *Id.*; *De Luna-Guerrero,* 338 F. Supp. 2d at * 649; *Mitchel,* 2012 WL 4005535, at *22-23.

**C.** **Plaintiffs Easily Meet The "Similarly Situated Standard."**

To meet this burden, Plaintiffs must demonstrate the existence of a "factual nexus between

the [named plaintiff's] situation and that of the other current and former [employees]." *Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 262 (S.D. N.Y. 1997). This burden is accordingly "limited," "minimal," "lenient," and "not a stringent one." *Lynch*, 491 F. Supp. 2d at 368.

Here, in addition to the detailed allegations in the Original Complaint, Plaintiff's motion is supported by his sworn deposition testimony, the sworn deposition testimony of another opt-in Plaintiff, Defendant Macias's deposition testimony, and a sample of documents produced by Defendants that are demonstrably limited and incomplete. North Carolina district courts have authorized notice to putative class members based on much less. *See, e.g., Williams,* 2011 WL 52353, at *10-11 (granting certification on basis of two of named plaintiffs' affidavits).

i.   Plaintiffs Sufficiently Establish That The Class Members And They Are Similarly Situated With Respect to Their Job Duties.

Conditional certification under the FLSA is appropriate under the facts of this case because the evidence far exceeds that which is necessary to meet the low "similarly situated" standard, as all of the putative class members were not permitted to accurately record their actual hours worked and report that they worked uncompensated overtime. Plaintiffs meet their standard through the evidence presented in support of this Motion, most obviously through the deposition testimony of Juan Macias. *See* II A, *supra*. This evidence is still based on an immature factual record. Plaintiffs have therefore established a factual nexus between themselves and the putative class members regarding the duties they performed.

ii.   Plaintiffs And The Class Members Are Similarly Situated With Respect To Their FLSA Claims.

This lawsuit challenges a companywide practice that has previously been found to violate the FLSA: Defendants paid putative plaintiffs a salary and did not track and pay for employees' actual hours of work or for their overtime hours. *See* **Exhibit D**; *see also* II B, *supra*. Furthermore and in so doing, Defendants failed to pay putative class members overtime premium pay for *all* of

Motion for Notice – Page 15

the hours that they worked above forty (40) in a week as many of their hours worked were not allowed to be recorded, were not documented at all, or were falsified. *See* 29 U.S.C. § 207(a)(1). This is the very type of claim that Fourth Circuit courts have already recognized is appropriate for conditional certification. *See e.g.*, *Mitchel,* 2012 WL 4005535, at *14 (granting conditional certification where plaintiffs affirmed in their declarations that defendants maintained a common policy not to pay overtime hours and instructed Plaintiffs not to record all of their work on timesheets); *LaFleur v. Dollar Tree Stores, Inc.*, 30 F. Supp. 3d 463, 472 (E.D. Va. 2014) *motion to certify appeal denied*, No. 2:12-CV-00363, 2014 WL 2121721 (E.D. Va. May 20, 2014) *and reconsideration denied*, No. 2:12-CV-00363, 2014 WL 2121563 (E.D. Va. May 20, 2014) (conditional certification appropriate based on allegations that plaintiffs could not review or adjust actual hours worked in company's timekeeping system).

Here, with their Complaint, deposition testimony, and with Defendant Macias's admissions, Plaintiffs sufficiently established that they and the putative class members were victims of Defendants' persistent and widespread practice that did not track and pay for actual hours of work. Instead, Defendants paid Plaintiff, Early Opt-in Plaintiff, and the putative plaintiffs a salary amount other than for a brief period of time when they feigned compliance during the DOL investigation.

Plaintiffs have, therefore, met their "modest" burden of showing that they are "similarly situated" to other putative class members in terms of their FLSA claims, thereby warranting conditional class certification. *See Williams,* 2011 WL 52353, at *11-13 (court granted certification finding plaintiffs and potential plaintiffs were similarly situated based simply on plaintiffs' substantial allegations that they and potential plaintiffs were common victims of a FLSA violation, and where defendants admitted that the actions challenged by plaintiffs reflected a

company-wide policy.)

### D.     Plaintiffs' Case is Appropriate for Court-Facilitated Notice.

The U.S. Supreme Court has held that the benefits to the judicial system of collective actions "depend upon employees receiving *accurate* and *timely* notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffmann-La Roche*, 493 U.S. at 170.  District courts are thereby encouraged to become involved in the notice process early, to insure "*timely*, *accurate*, and *informative*" notice and to help maintain control of the litigation.   *Id*. at 171-72; *Rehberg v. Flowers Foods, Inc.*, 2013 WL 1190290, 2013 U.S. Dist. LEXIS 40337 at *5-6, 20 Wage & Hour Cas. 2d (BNA) 755, (W.D.N.C. Mar. 22, 2013). Short of providing an applicable standard, *Hoffmann-La Roche* establishes that a court-approved notice to potential plaintiffs in FLSA collective actions is proper in "appropriate cases."   *Id*. at 169-70; *Calderon v. GEICO Gen. Ins. Co.*, 2011 WL 98197 at *20.

This case is appropriate for a Court-approved notice for three over-arching reasons.  First, prompt Court-action is needed because claims of the potential opt-in plaintiffs are being extinguished or diminished due to the running of the statute of limitations on their claims.   *Id*. at 21; *Visco v. Aiken County,* 974 F. Supp. 2d 908 (D.S.C. 2013).  Courts have recognized that, unlike Rule 23 class actions, the statute of limitations for those who have not filed consent forms is not tolled with the commencement of this action. *See Lynch,* 2007 U.S. Dist. LEXIS 32642, at *371; *see also Smith v. Lowe's Cos.*, 2005 U.S. Dist. LEXIS 9763, at *6, 2005 WL 6742234 (S.D. Ohio May 11, 2005); *see also Quintanilla v. A&R Demolition, Inc.*, 2005 U.S. Dist. LEXIS 34033, at *50, 2005 WL 2095104 (S.D. Tex. Aug. 30, 2005).  But Court-facilitated notice will prevent the continued erosion of these claims while the parties discuss the legal and factual disputes necessary to resolve this litigation. *See Calderon v. GEICO Gen. Ins. Co.*, 2011 WL 98197 at *21.

Second, at this early stage, judicial notice provides all putative class members with an opportunity to pursue their claims in one forum, creating the significant judicial economies recognized in *Hoffmann-La Roche*. *See Lynch,* 2007 U.S. Dist. LEXIS 32642, at *371, (citing *Hoffmann-La Roche*, 493 U.S. at 170). Indeed, because similar – if not identical – issues of law and fact exist amongst all of the putative class members, one action benefits the judicial system by resolving this case collectively at least through the discovery phase. *Hoffmann-La Roche*, 493 U.S. at 170. Importantly, if the Court authorizes the notice, it should be sent to all putative class members who Defendants have employed for a fundamental reason. Namely, with his motion, named Plaintiffs seek to conditionally certify the FLSA collective action and to certify the North Carolina state law claims. *See McLaurin*, 271 F.R.D. at 469 ("where both the class and collective actions have been certified, notice covering up to three years preceding the filing of the action.").

Third, this case is the product of an extensive history of violations. As set out in II D, *supra*, the history and early facts of this case strongly suggest that Defendants' violations are willful. Because Defendants have been previously undeterred through the forced payment of back wages to a handful of prior plaintiffs, the Court must use its discretion to enforce long-standing federal law against a repeat offender.

      i.     <u>Plaintiff's Proposed Judicial Notice is Accurate and Informative</u>.

As required, Plaintiffs' proposed Notice[7] is "timely, accurate, and informative." *See Hoffmann-La Roche*, 493 U.S. at 172; *Rehberg,* 2013 WL 1190290, at *5. It likewise follows the suggested content set forth in *McLaurin*, 271 F.R.D. at 469; *Romero*, 796 F. Supp. 2d at 700, as the proposed notice describes the nature of the suit, the class composition, the effects of joining the case, and that Defendants cannot retaliate against the class members for opting into the action.

---

[7] *See* **Exhibit A**, Plaintiffs' proposed Notice relating to both their FLSA and NCWHA opt-in/out forms.

**Motion for Notice – Page 18**

The proposed notice therefore achieves the ultimate goal of providing employees accurate and timely notice concerning the pendency of the collective action, and should be adopted.

ii.    A List of Putative Class Members Is Necessary to Facilitate Notice.

As discussed above, all putative class members who Defendants employed since August 8, 2011 are "similarly situated" employees for FLSA purposes. Disclosure of their identity to Plaintiffs is accordingly necessary to provide these potential plaintiffs with notice of the action. *See Hoffmann-La Roche*, 493 U.S. at 170; *see also Calderon v. GEICO Gen. Ins. Co.*, 2011 WL 98197 at *27 (ordering production of list in electronic and importable format within fourteen days). Plaintiffs therefore request that Defendants be ordered to produce the following within fourteen (14) days of the Court's Order: a list, in electronic, importable and native format (i.e., an Excel Spreadsheet is produced in its native Excel format), of all non-management employees whom Defendants employed since August 8, 2011 including their name, job title, address, telephone number, email address, dates of employment, location of employment, date of birth, and last four digits of their Social Security number. Courts in the Fourth Circuit have established that Plaintiffs must "establish [] a need" for this type of information before it may be turned over[]…the return of the notice may establish such a need." *See Byard v. Verizon W. Va., Inc.*, 287 F.R.D. 365, 2012 U.S. Dist. LEXIS 152814, at *376 (N.D. W. Va. 2012). Here, the vast majority of employees who worked for Defendants during the relevant period have most likely moved since their employment with Defendants and thus further information is needed to locate them for delivery of notice. It is not uncommon in this Circuit for Courts to grant this information to Plaintiffs. *See Rehberg,* 2013 WL 1190290, at *7 (requiring production of names, last known addresses, telephone number, email addresses, dates of employment, job title, and last 4 digits of their Social Security number of potential opt-in plaintiffs).

iii.    Defendants Should Post the Court-Approved Notice and Consent

Motion for Notice – Page 19

<u>Forms At Each Place of Employment.</u>

In addition to mailing the notice, Plaintiffs seek to require Defendants to post the notice in both English and Spanish each of their restaurants where the putative class members work or have worked during the relevant period. As North Carolina and other district courts have recognized, posting the notice in both languages is a reasonable and measured means to assuage the vagaries of notice by mail. *Diaz,* 2011 U.S. Dist. LEXIS 109616, at \*8, 2011 WL 4498939 (granting posting of notice, <u>in both English and Spanish</u>, at the class members' place of employment); *Rehberg,* 2013 WL 1190290, at \*7 (ordering defendants to post notice to prospective class members at each of its warehouses); *Enriquez v. Cherry Hill Mkt Corp*., No. 10-CV-5616 (FB), 2012 U.S. Dist. LEXIS 17036, at \* 11, 2012 WL 440691 (E.D.N.Y Feb. 10, 2012) (granting posting of notice at employer's workplace.)

**2. PLAINTIFF'S NCWHA CLAIMS SHOULD BE CERTIFIED AS A CLASS ACTION UNDER FED. R. CIV. P. 23(A) AND (B)(3)**

Plaintiffs also seek class certification of their NCWHA claim that Defendants' failure to pay employees for all of their accrued and earned regular and overtime wages on their regular pay date violates N.C. Gen. Stat. §95-25.6. Rule 23 provides that this Court should certify a class where the plaintiffs satisfy the four elements of Rule 23(a) and one of the three requirements of Rule 23(b). *See Gaxiola v. Williams Seafood of Arapahoe, Inc.*, 776 F. Supp. 2d 117, 2011 U.S. Dist. LEXIS 20473, \*129-130, 17 Wage & Hour Cas. 2d (BNA) 1000 (E.D.N.C. 2011). As the record here satisfies the Rule 23 requirements, this matter should be certified as a class action.

**A. <u>Plaintiffs Satisfy the Rule 23(a) Requirements</u>.**

To obtain class certification under Rule 23, Plaintiffs must demonstrate that the requisite elements of subsection 23(a) are each satisfied: numerosity, commonality, typicality, and adequacy of representation. *Id*; *see also McLaurin*, 2010 U.S. Dist. LEXIS 119792, at \*475; *Romero*, 796 F.

Motion for Notice – Page 20

Supp. 2d at 713; *Mitchel*, 2012 WL 4005535, at *6; *Horne*, 2011 WL 4443034, at *6-7; *Harris*, 2011 WL 4443024, at *7; and *Martinez-Hernandez*, 2008 U.S. Dist. LEXIS 111931, at *7-8. Plaintiffs satisfy each element.

i.      The Proposed Class is Sufficiently Numerous

The numerosity requirement of Rule 23(a)(1) mandates that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23. No specific number of members is necessary for class certification, and the decision must be based upon the particular facts of each case. *See Gaxiola*, 2011 U.S. Dist. LEXIS 20473, at *130, (citing *Rodger v. Electronic Data Systems Corp.*, 160 F.R.D. 532 (E.D.N.C. 1995)). While there is no numerical requirement for satisfying the numerosity requirement, courts have acknowledged that as few as forty (40) class members generally satisfies the numerosity requirement. *See McLaurin*, 2010 U.S. Dist. LEXIS 119792, at *17 ("given that the Fourth Circuit has held that a class of eighteen (18) people alone is sufficient to satisfy the numerosity requirement, the court rejects [defendant's] arguments and concludes that the numerosity requirement has been met.").

Here, there would be at least one hundred y (100) class members. As such, the numerosity requirement of Rule 23(a)(1) is easily satisfied.

ii.      The Proposed Class Satisfies the Commonality and Typicality Requirements of Fed. R. Civ. P. 23(a)(2) and (a)(3).

Rule 23(a)(2) requires a determination that there are "questions of law or fact, common to the class" to unite the potential plaintiffs in the case. The analysis of commonality, typicality, and adequacy of representation requires a discussion of often overlapping facts, as the commonality and typicality requirements tend to merge. *See Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 157 n. 13 (U.S. 1982). "Both serve as guideposts for determining whether … the named plaintiff's claims and the class claims are so interrelated that the interests of the class members

will be fairly and adequately protected." *See Kidwell v. Transp. Com. Int'l Union*, 946 F.2d 283, 305 (4th Cir. 1991) (quoting *id.*).

Moreover, "the threshold requirements of commonality and typicality are not high; Rule 23(a) requires only that resolution of the common questions affect all or a substantial number of the class members." *See McLaurin*, 2010 U.S. Dist. LEXIS 119792, at *17 (citing *Brown v. Nucor Corp.*, 576 F.3d 149, 153 (4th Cir. 2009)). The commonality and typicality requirements may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members. *See Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 344 (4th Cir. 1998) ("we… do not suggest that the commonality and typicality elements of Rule 23 require that members of the class have identical factual and legal claims in all respects."). As such, factual differences among individual claims will not defeat commonality provided the claims arise from a common nucleus of operative facts. *See Haywood v. Barnes*, 109 F.R.D. 568, 577 (E.D.N.C. 1986) (holding a common question is one which arises from a common nucleus of operative facts, regardless of whether underlying facts fluctuate and vary as to individual claimants) (internal citations omitted); *see also Bumgarner v. NCDOC*, 276 F.R.D. 452, 2011 U.S. Dist. LEXIS 106926, at *457 (E.D.N.C. 2011). "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal-Mart Stores Inc., v. Dukes*, 131 S. Ct. 2541, 2551 (2011); Fed. R. Civ. P. 23(a)(2). Stated another way, there must be some "glue" that holds the claims together. *Id*. at 2554. In determining whether this element is met in FLSA and NCWHA wage claims, courts in this district tend to focus on whether the employer had company-wide wage policies that injured the proposed class. *See McLaurin*, 271 F.R.D. at 475.

The questions of law and fact in this case are common to the class and predominate over

any questions affecting only individual class members – namely, whether Defendants have violated the NCWHA, N.C. Gen. Stat. § 95-25.1, *et seq*, upon which Plaintiffs' state law claims are premised, by not paying their workers all of their earned wages on their regular pay day, including, but not limited to, their accrued straight and overtime wages pursuant to N.C. Gen. Stat. § 95-25.6. The allegations contained in Plaintiff's Original Complaint and the supporting evidence before the Court establish that the principal questions of law and fact at issue in Plaintiffs' wage claims against Defendants and the claims of other putative class members arise from a common nucleus of operative fact.

The typicality requirement of Rule 23(a)(3) is met [when] the claims asserted by the named plaintiffs arise from the same course of conduct and are based on the same legal theories as the claims of the unnamed class members, notwithstanding factual distinctions between the claims of the named and unnamed putative class members and differences in the amount of damages claimed. *See Jimenez-Orozco*, 2007 U.S. Dist. LEXIS 93860, *at 11. The Supreme Court has held that the typicality requirement mandates that the class and the representatives "possess the same interests and suffer the same injury." *East Texas Motor Freight System, Inc., v. Rodriguez*, 431 U.S. 395, 403 (1977). Although there may be factual differences among the individual class members, the class members' claims arise from the same course of conduct. *Romero*, 796 F. Supp. 2d at 714 (citing *Broussard*, 155 F.3d 331, 341 (4th Cir. 1998) ("We do not suggest that the commonality and typicality elements of R.23 require that members of the class have identical factual and legal claims in all respects."); *Mitchell*, 2011 WL 4442973, at *5, *Horne*, 2011 WL 4443034, at *5, *Harris*, 2011 WL 4443024, at *5-6, and *Martinez-Hernandez*, 2008 U.S. Dist. LEXIS 111931, at *4. Plaintiffs satisfy the typicality requirement if their "allegations are not based on conduct unique" to them. *Dornberger v. Metropolitan Life Ins. Co.*, 182 F.R.D. 72, 81

(S.D.N.Y. 1998).

Here, a comparison just of the claims of the initial Plaintiffs shows the typicality requirement is easily met. Beyond Plaintiff, Early Opt-in Plaintiff, and the putative class members were also subject to Defendants' same unlawful policies that failed to pay proper regard to the hours actually worked and failed to pay proper overtime pay violating the NCWHA.

        iii.    Named Plaintiff Velasquez And His Counsel Will Fairly and
                 Adequately Protect the Interests of the Class.

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To meet this requirement, Plaintiffs must demonstrate that the named class representatives (1) "will vigorously prosecute the interests of the class through qualified counsel" and (2) that they have "common interests with unnamed members of the class." *Olvera-Morales v. Intern. Labor Mgmt Corp.*, 246 F.R.D. 250, 258 (M.D.N.C. 2007) (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996)). The importance of the adequacy requirement is based on the principle of due process which "requires that named plaintiffs possess undivided loyalties to absent class members." *Broussard,* 155 F.3d 331, 1998 U.S. App. LEXIS 20248, 41 Fed. R. Serv. 3d (Callaghan) 1151 (4th Cir. N.C.1998).

First, the class counsel must be "qualified, experienced and generally able to conduct the proposed litigation." *See Romero*, 796 F. Supp. 2d at 715 (quoting *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562 (2d Cir. 1968)). Plaintiff's counsel is qualified to be appointed as class counsel. As explained *supra*, The Law Offices of Gilda A. Hernandez and Lee & Braziel, LLP have extensive present and past experience litigating complex wage and hour class and collective actions, and are therefore competent and capable of conducting this litigation.

Second, the proposed class representatives must be members of the class they purport to represent, and their interests must not be in conflict with those of the other class members. *See*

*Romero*, 796 F. Supp. 2d at 715. There is no conflict or antagonistic interests of the named Plaintiff to the interest of any other class members. *Id.* The named Plaintiff has the same interests as all other class members: recovering the wages earned for all uncompensated overtime pay for hours worked beyond forty (40) per week and he has already presented his sworn deposition testimony to further these efforts and evincing his desire to advance these claims collectively. Plaintiff Moises Enot Velasquez Monterrosa, The Law Offices of Gilda A. Hernandez, and Lee & Braziel, LLP will fairly and adequately represent the proposed class in accordance with Rule 23(a)(4). *See generally*, II D, *supra*.

**B.      The Proposed Class Satisfies the Requirements of Rule 23(b)(3).**

If the prerequisites under Rule 23(a) are met, the action must then satisfy one of the three alternative sets of requirements under Rule 23(b). *Romero*, 796, F. Supp. 2d at 700. It requires (1) that the questions of law or fact common to the class members predominate over any questions affecting only individual members and (2) that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. *Id.* Here, Plaintiffs seek class certification under Rule 23(b)(3).

i.      <u>Common Questions of Law and Fact Predominate Any Individual Questions.</u>

The Rule 23(b) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. *Amchem Prods. v. Windsor,* 521 U.S. at 623 (1997). First, the questions of law or fact common to putative class members predominate over any questions affecting only individual members. As discussed previously, the same basic factual circumstances apply to each putative class member.

Courts in this circuit routinely hold that the predominance requirement has been met when defendant has implemented a common, uniform policy. *See Martinez-Hernandez*, 2008 U.S. Dist.

Motion for Notice – Page 25

LEXIS 111931, at *13 (court found that the predominance requirement was met because defendant's use of a "GANG" time policy affected all of the putative class members); *see also Ceras-Campo v. WF P'ship,* 2011 U.S. Dist. LEXIS 12688, at *10 (court found contract class claims predominated over any questions affecting only individual class members); *see also Gaxiola v. Williams Seafood of Arapahoe, Inc.,* 2011 U.S. Dist. LEXIS 20473, at *130 (same); *Harris*, 2011 WL 4443024, at *10 (court found predominance was met because claims involved a uniform policy or practice of compensating employees based on their scheduled shifts); *see also McLaurin*, 2010 U.S. Dist. LEXIS 119792, at *478 (court found predominance was met because defendant's use of a line time policy affected all of the putative class members); *Romero*, 796 F. Supp. 2d at 716 (court found predominance requirement was satisfied because the same operative facts underlying defendant's compensation system, also formed the basis of Plaintiffs' NCWHA claims); *Mitchel*, 2012 WL 4005535, at *9 (same); *Horne*, 2011 WL 4443034, at *8-9 (same).

Here, it is Defendants' uniform failure to pay current and former employees all the hours suffered or permitted to work will be the predominant issue of this litigation. The individualized inquiries that may be required would be to determine damages, but such differences do not defeat class certification. *See Mitchel*, 2012 WL 4005535, at *9; *Horne*, 2011 WL 4443034, at *9 (same); *Harris* 2011 WL 4443024, at *10 (same). ("[D]ifferences in the amount of potential damages among putative class members will not alone prevent class certification") quoting *Haggart v. United States*, 89 Fed. Cl. 523 (Fed. Cl. 2009). Plaintiffs have accordingly met the predominance requirement of Rule 23(b)(3).

    ii.  <u>A Class Action Is The Superior Method For Litigating This Matter</u>.

The superiority question under Rule 23(b)(3) requires a court to consider whether a class action is superior to other methods of adjudication. The Court is to compare the possible

alternatives to a class action and determine if any is superior to the proposed class action. The alternative to a class action litigation in this case would be individual lawsuits by each class member. *See Romero*, 796 F. Supp. 2d at 716. Based on the relatively small amount of individual wages claimed in this case, the putative class members would not have a great incentive or desire to bring individual suits against Defendants. *Id.* Even if the putative class members were inclined to pursue individual actions, there is no doubt this would be more burdensome on the class members, and it would likely be a less efficient use of judicial resources. *Id.*

Additionally, Courts in this District consider Rule 23(b)(3)'s four non-exclusive factors pertinent to the predominance and superiority determinations. The four factors are: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D). *See Romero,* 796 F. Supp. 2d at 716*, see also Amchem*, 521 U.S. at 616.

With respect to the first factor, individualized lawsuits would be financially burdensome and many plaintiffs may not have the means or ability to prosecute their claims separately. On the other hand, the advantages of determining the common issues by means of a class action are evident, as all employees in the class could finalize their claims in one proceeding rather than in hundreds of individual suits. *See Ceras-Campo,* 2011 U.S. Dist. LEXIS 12688, at *10, (quoting *Jimenez-Orozco*, 2007 U.S. Dist. LEXIS 93860, at *13-15 (finding that a class action is superior to other available methods for the fair and efficient adjudication of this controversy)).

With respect to the second factor, none of the parties have indicated that there is any similar ongoing litigation by the class members against Defendants. In the instant case, putative class

members all seek a common finding that Defendants have violated the NCWHA, specifically N.C. Gen. Stat. §§ 95-25.6, 95-25.8, and 95-25.13. There is no conflict within the class, and there are no individual aspects to render the parties within the class adverse to one another.

With respect to the third factor, Defendants' restaurants in North Carolina are located within this district and all the putative plaintiffs work or did work at Defendants' restaurants within the relevant period of time. The United States District Court for the Eastern District of North Carolina, Western Division will provide an excellent forum for this matter. Because individual adjudications could take up the dockets of several judges within this Court, there is no reason to further burden an overloaded court system when a single adjudication will simply and efficiently satisfy the claims of many. The Court must seek to effectuate the public policy expressed in Rule 23 in favor of having all similar cases "disposed of where feasible, in a single lawsuit." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 n. 11 (1981).

Manageability compares the class action device to other methods of adjudicating the controversy only when management difficulties make a class action less fair and efficient than some other methods, such as individual interventions or consolidation of individual lawsuits, would a class action become improper. *See* Newberg, Newberg on Class Actions § 4.32 at 4-125 (3d ed. 1992). Plaintiffs believe that this class action would involve a minimum of 100 class members, so it is readily manageable, particularly when compared to classes in other larger and more complicated cases that have been managed successfully through settlement or trial. *See Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54, 62 (D. Mass. 1997) ("class consists of persons or entities who have had an ownership interest in one or more of approximately 1.8 million [insurance] policies"). Given the possible size and scope of this class, joinder and intervention are not possible or superior alternatives.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the following relief: (1) conditional certification of this action as a representative collective action under the FLSA; (2) approval of the proposed FLSA notice of this action and the consent form; (3) production of names, last known mailing addresses, alternate addresses, telephone numbers, email addresses, last four digits of their Social Security numbers, and dates of employment of all Class Members; (4) posting of the Notice, along with the consent forms, in both English and Spanish at each of Defendants' 16 restaurant locations; and (5) designating named Plaintiff Class Representative and Plaintiff's Counsel as Class Counsel; and (6) certifying this action as a class action under Rule 23(a) and (b)(3) for the NCWHA claims.

Respectfully submitted, this 14th day of September, 2015.

/s/ *J. Derek Braziel*
**J. DEREK BRAZIEL**
State Bar No. 00793380
**J. FORESTER**
Texas Bar No. 24087532
**LEE & BRAZIEL, L.L.P.**
1801 N. Lamar Street, Suite 325
Dallas, Texas  75202
(214) 749-1400 phone
(214) 749-1010 fax
www.overtimelawyer.com

**GILDA A. HERNANDEZ, NCSB #36812**
315 S. Salem Street, Suite 310
Apex, NC  27502
ghernandez@gildahernandezlaw.com
Tel: (919) 741-8693
Fax: (919) 869-1853

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on September 14, 2015, the foregoing PLAINTIFFS'
MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR CONDITIONAL
CERTIFICATION PURSUANT TO THE FAIR LABOR STANDARDS ACT AND FOR CLASS
CERTIFICATION UNDER FED. R. CIV. P. 23 was served in accordance with the Federal Rules
of Civil Procedure on the following:

**JACKSON LEWIS LLP**
M. Robin Davis
N.C. State Bar No. 21655
Joshua M. Krasner
N.C. State Bar No. 19132
*Attorneys for Defendants Mi Casita, JM Macias, Inc., JFC LLC, Macias LLC, Macias Enterprise*
*LLC, MC Mgmt. LLC, Mexican Foods Express, Inc., Piramide Mexican Foods, Inc., Jesus*
*Macias, and Juan Macias*

                                              /s/ *J. Derek Braziel*

                                              **J. DEREK BRAZIEL**
                                              State Bar No. 00793380
                                              **J. FORESTER**
                                              Texas Bar No. 24087532
                                              **LEE & BRAZIEL, L.L.P.**
                                              1801 N. Lamar Street, Suite 325
                                              Dallas, Texas  75202
                                              (214) 749-1400 phone
                                              (214) 749-1010 fax
                                              www.overtimelawyer.com

                                              **GILDA A. HERNANDEZ, NCSB #36812**
                                              315 S. Salem Street, Suite 310
                                              Apex, NC  27502
                                              ghernandez@gildahernandezlaw.com
                                              Tel: (919) 741-8693
                                              Fax: (919) 869-1853

                                              **ATTORNEYS FOR PLAINTIFF**