IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:14-CV-448-BO

| | |
|---|---|
| MOISES ENOT VELASQUEZ-MONTERROSA, on behalf of himself and all others similarly situated,<br>    Plaintiff,<br><br>v.<br><br>MI CASITA RESTAURANTS, a.k.a.<br>MI CASITA RESTAURANTE MEXICANO;<br>JM MACIAS, INC.; JFC LLC; MACIAS LLC;<br>MACIAS ENTERPRISE LLC; MC<br>MANAGEMENT LLC; MEXICAN FOODS<br>EXPRESS, INC.; PIRAMIDE MEXICAN<br>FOODS, INC.; VIA 216 NC LLC; JESUS<br>MACIAS; and JUAN MACIAS,<br>    Defendants. | O R D E R |

This cause comes before the Court on plaintiff's motion (1) to conditionally certify this matter as a collective action under the Fair Labor Standards Act, 29 U.S.C. § 216(b); (2) for approval of the proposed Fair Labor Standards Act notice of this action and the consent form; (3) for updated production of information of all putative plaintiffs/class members; (4) to post the notice and consent forms at each job site; (5) to certify this action as a class action under Federal Rules of Civil Procedure 23(a) and (b)(3) for the North Carolina Wage and Hour Act claims; and (6) for the appointment of class counsel. [DE 49]. The appropriate responses and replies have been filed, and the matter is ripe for ruling. For the reasons discussed below, plaintiff's motion is GRANTED. [DE 49].

## BACKGROUND

Plaintiff brought suit for alleged violations of the Fair Labor Standards Act (FLSA) and the North Carolina Wage and Hour Act (NCWHA). [DE 1]; 29 U.S.C. § 216(b); N.C.G.S. §95-25.6. Plaintiff and putative plaintiffs/class members are former and current employees of Mi

Casita Restaurants, a chain of sixteen Mexican restaurants in the greater Fayetteville, North Carolina, area. Defendant Juan Macias founded and owns Mi Casita. Juan Macias oversees the operations of the chain, and each restaurant has a manager to oversee day-to-day operations. Defendant Jesus Macias manages the Lillington and Angier, North Carolina, locations of Mi Casita. Mi Casita employees a wide range of non-managerial and non-tipped employees as well, including cooks, dishwashers, chip runners, drink runners, hosts and hostesses, and bussers.

In 1999, an FLSA collective action was brought against several defendants in this case, including J.M. Macias, Inc. (hereinafter "Mi Casita"), Juan Macias, and Jesus Macias, for to failure to pay overtime wages. [*See* DE 50-3]. The case settled, and defendants were ordered to pay. *Id.* In 2011, the Department of Labor (DOL) investigated Mi Casita once again. The DOL found that, still, "[e]mployees do not clock in or out" and "[a] record of hours worked was not kept on all employees." [DE 50-4]. The DOL found that there was an overtime violation in that employees were not paid the overtime required by statute. *Id.* Mi Casita agreed to, once again, pay back wages. In the instant matter, plaintiff claims that, following the 2011 DOL investigation, a time tracking system was put in place but that it has not been used consistently or properly and the practice of not paying employees for overtime or actual hours worked has persisted.

Plaintiff has defined the putative plaintiffs/class members as "all non-tipped and non-managerial employees such as cooks, dishwashers, chip and drink runners, hosts and hostesses, who were not permitted to record all of their time worked and were required to work in excess of forty (40) hours during at least one week from August 8, 2011, to the present." [DE 49]. In short, plaintiff claims that he and other putative plaintiffs/class members were paid a set amount that did not reflect their actual hours worked and did not include overtime when applicable.

2

DISCUSSION

Plaintiff moves (1) to conditionally certify this matter as a collective action under the FLSA, 29 U.S.C. § 216(b); (2) for approval of the proposed FLSA notice of this action and the consent form; (3) for updated production of information of all putative class members; (4) to post the notice and consent forms at each job site; (5) to certify this action as a class action under Federal Rule of Civil Procedure 23(a) and (b)(3) for the NCWHA claims; and (6) for the appointment of class counsel. [DE 49].

I.  Conditional Certification As A Collective Action

The FLSA expressly allows employees to maintain a collective action for, *inter alia*, "unpaid minimum wages, or their unpaid overtime compensation." 29 U.S.C. § 216(b). To bring a collective action under the FLSA, the putative plaintiffs must satisfy two requirements: (1) the putative plaintiffs must establish they are "similarly situated," and (2), the putative plaintiffs must affirmatively consent to the named plaintiff's class representation. *See* 29 U.S.C. § 216(b).

As to the question of whether the putative plaintiffs are "similarly situated," the Court proceeds without clear guidance because the Fourth Circuit Court of Appeals has not indicated precisely how to determine whether parties are "similarly situated" for purposes of FLSA collective actions. However, most courts, in those circuits where the issue has been addressed, apply a two-step approach to determine whether putative class members are "similarly situated." *E.g.*, *Cameron -Grant v. Maxim Health Care Servs., Inc.*, 347 F.3d 1240, 1243 (11th Cir. 2003). This Court has previously found the two-step approach to determining whether putative plaintiffs are "similarly situated" to be "rational, fair, and supported by sufficient persuasive case law" and therefore applies it here. *Ceras-Campo v. WF P'ship*, 2011 U.S. Dist. LEXIS 12688, *5–6 (E.D.N.C. Feb. 7, 2011).

3

At the first, "notice" stage of the process, the court determines whether the plaintiff and potential opt-ins are sufficiently "similarly situated" to warrant notice being given to allow potential plaintiffs to opt-in and to proceed as a collective action through discovery. *Id.* at *6. At this initial stage, a lenient standard applies. Plaintiff must establish "a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Id.* (quoting *Patton v. Thomson Corp.*, 364 F. Supp. 2d 263, 267 (E.D.N.Y Apr. 5, 2005)) (citations omitted). The Court has the discretion to use an intermediate level of scrutiny should it so choose based on the amount of discovery conducted, but it is not required to do so. *See McClean v. Health Sys.*, 2011 U.S. Dist. LEXIS 142283, *10–11 (W.D.Mo. Dec. 12, 2011) (discussing the various levels of scrutiny a court may use and applying an intermediate approach where parties had already taken "twelve depositions and exchanged interrogatories and requests for production of documents.").

If the Court finds plaintiff and potential opt-in plaintiffs sufficiently similarly situated to warrant issuing notice of the collective action, the Court will conditionally certify the collective action. Then, the second stage of collective action certification is triggered later. The Eleventh Circuit Court of Appeals described the second stage of the two-stage approach as follows:

> The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives-*i.e.* the original plaintiffs-proceed to trial on their individual claims.

*Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001) (quoting *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995) (internal footnote omitted)).

4

Here, plaintiff has provided the necessary support to create a modest factual showing that he and opt-in plaintiffs were victims of a common policy or plan. First, plaintiff has provided the deposition testimony of early opt-in plaintiff, Anyi Yesenia Turcios Reyes, which echoes his own. Plaintiff stated that the first cooks, second cooks, third cooks, fourth cooks, dish washers, front-of-house, bussers, and chip runners were all paid in the same way. [DE 50-6, 14–16]. Plaintiff stated he would occasionally work around 70 hours, but that "none of these hours [recorded on timesheets] represent what I used to work there." [DE 50-6 at 5–7]. Plaintiff states that the amount he was paid never changed, even when his hours exceeded forty per week. [DE 50-6. 24–25]. Similarly, opt-in plaintiff, who worked at a different Mi Casita location, stated that she received the same salary no matter how many hours she worked, estimating it was sometimes as many as 60 hours per week. [DE 50-7, 4–5, 8]. Plaintiff and opt-in plaintiff's testimony is writ large by the testimony of defendant Juan Macias, who stated that while Mi Casita lacked a formal overtime policy, the salary system, policies, and practices would have been consistent across all Mi Casita locations. [DE 50-5, 19–20].

Accordingly, the Court is satisfied that plaintiff has made the requisite showing at this stage of the litigation that there are others sufficiently similarly-situated to warrant notice being issued.

II. Notice And Related Matters

a. Notice

The Court has the discretion to facilitate notice to potential plaintiffs in appropriate cases. *See Hoffman-LaRoche v. Sperling*, 493 U.S. 165, 169–70 (1989) (applying this principle to ADEA cases). Indeed, the benefits of permitting collective action "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that

5

they can make informed decisions about whether to participate." *Id.* at 170; *see also Soler v. G&U Inc.*, 86 F.R.D. 524, 530 (S.D.N.Y. May 7, 1980) ("Successful implementation of this provision [29 U.S.C. § 216] requires broad dissemination of information to the class of persons potentially affected by the suit.").

First, the Court notes that notice is appropriate because time is of the essence in FLSA collective actions. For purposes of the FLSA, an individual who is not a party to the action when filed is considered to have commenced his/her suit "on the subsequent date on which such written consent is filed in the court in which the action was commenced." 29 U.S.C. § 256. In other words, the statute of limitations is still running for potential opt-in plaintiffs until they file written consent. Court-facilitated notice serves the ends the FLSA hopes to achieve by providing this "broad dissemination of information to the class of persons potentially affected." *Soler*, 86 F.R.D. at 530. Moreover, the Court also notes that the nature of court-facilitated notice promotes the goals of judicial economy and efficiency by encouraging litigation in one action. *See Hoffman-LaRoche*, 493 U.S. at 170.

Finally, the Court has considered plaintiff's proposed notice and finds it acceptable. [DE 50-1].

b. Updated Information

The Supreme Court has held that:

> Section 216(b)'s affirmative permission for employees to proceed on behalf of those similarly situated must grant the court the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure.

*Hoffmann-La Roche*, 493 U.S. at 170. In pursuit of those goals of judicial economy and efficiency in collective actions, and recognizing the need for this information given the often

6

brief nature of non-managerial restaurant work, the Court directs defendants to provide a list in electronic and importable format of all non-tipped and non-management employees employed by defendants since August 8, 2011. This list shall include each employee's name, job title, address, telephone number, email address, dates of employment, location of employment, date of birth, and the last four digits of his/her social security number, to the extent defendants are in possession of or can reasonably obtain such information.

    c. Posting of Notice

Once again considering the high turnover and often-brief nature of restaurant work, the Court approves plaintiff's request that the court-approved notice be posted in English and Spanish at each of defendants' restaurants.

III.    Class Certification Under Federal Rules of Civil Procedure 23(a) and (b)(3)

The Court now turns to the issue of the requirements for certifying a class pursuant to Rule 23 of the Federal Rules of Civil Procedure. To fulfill the requirements for class certification, plaintiff(s) must first show compliance with Rule 23(a) of the Federal Rules of Civil Procedure, which applies to all class actions. Once plaintiffs have met the requirements of Rule 23(a), they must show that class certification is proper under one of the subdivisions of Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997); *Haywood v. Barnes*, 109 F.R.D. 568, 575 (E.D.N.C. 1986). The party seeking class certification bears the burden of proof. *E.g., Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001).

    a. Rule 23(a) Requirements

To be certified as a class action under Rule 23(a), an action must meet four threshold requirements: (1) the class must be so numerous that joinder of all members is impracticable (the "numerosity" requirement); (2) there must be questions of law or fact common to the class (the

7

"commonality" requirement); (3) the representative party's claim(s) must be typical of the claims of the class (the "typicality" requirement); and (4) the representative party must be able to fairly and adequately protect the interests of the class (the "adequacy-of-representation" requirement). Fed. R. Civ. P. 23(a).

### i. The Numerosity Requirement

Numerosity requires that "the class is so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P. 23(a)(1). Although there is no numerical minimum for satisfying the numerosity requirement, courts have acknowledged that a class with as few as 18 class members satisfies the numerosity requirement. *See McLaurin v. Prestage Foods, Inc.*, 271 F.R.D. 465, 475 (E.D.N.C. 2010) ("Given that the Fourth Circuit has held that a class of eighteen (18) people alone is sufficient to satisfy the numerosity requirement, the court rejects Prestage's arguments and concludes that the numerosity requirement has been met.") (referring to *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967)).

Here, plaintiff predicts at least one hundred class members. This number satisfies the numerosity requirement.

### ii. The Commonality and Typicality Requirements

The requirements for typicality and commonality often merge. *See Kidwell v. Transp. Commc'ns Int'l Union*, 946 F.2d 283, 305 (4th Cir. 1991). "The threshold requirements of commonality and typicality are not high; Rule 23(a) requires only that resolution of the common questions affect all or a substantial number of the class members." *Brown v. Nucor Corp.*, 576 F.3d 149, 153 (4th Cir. 2009) (internal quotation marks omitted) (quoting *Shipes v. Trinity Indus.*, 987 F.2d 311, 316 (5th Cir. 1993)). A plaintiff's claim is typical if it arises from the same event, practice, or course of conduct that gives rise to the claims of other class members, and if

8

the plaintiff's claim is based on the same legal theory as those of the other members. *See Haywood v. Barnes*, 109 F.R.D. 568, 578 (E.D.N.C. Feb. 13, 1986). The commonality and typicality requirements may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of the other class members. *See Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 344 (4th Cir. 1998) ("We . . . do not suggest that the commonality and typicality elements of Rule 23 require that members of the class have identical factual and legal claims in all respects."); *see also Haywood*, 109 F.R.D. at 578 ("[T]he typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of the class members, differences in the amount of damages claimed, or even differences in the availability of certain defenses against a class representative.").

Here, plaintiff's claims satisfy the commonality and typicality requirements. The Court finds that the common question of whether defendants violated the NCWHA by not paying workers the wages they had earned, including overtime pay, predominates. Though potential plaintiffs' claims may not—and likely will not—be identical in every respect, the Court is satisfied based on the showing before it that the claims arise from the same course of conduct and any recovery would be the result of the same legal theory. Specifically, the class members' claims arise from the same conduct (Mi Casita's salary/employee payment practices), raise common questions of law and fact (including, without limitation, whether workers were properly paid for hours worked, specifically, any time worked in excess of a set number of hours per week), and are based on the same legal theory (violations of the NCWHA) as those of named plaintiff. Thus, the Court is satisfied that, at this stage, the commonality and typicality requirements have been met.

9

### iii. The Adequacy of Representation Requirement

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Proposed class representatives must be members of the class they purport to represent and their interests must not be in conflict with those of the other class members. *See Amchem*, 521 U.S. at 625–26. The Court finds that plaintiff satisfies these requirements. Named plaintiff has the same interest as all other potential plaintiffs: recovery of wages for any time worked that has gone uncompensated by defendants. The Court has considered defendants' objections to named plaintiff's adequacy but does not find them persuasive. Named plaintiff may not have mastered all the terminology associated with a class action suit, but he has sufficiently demonstrated that he understands his role in the litigation.[1] Accordingly, the Court finds that plaintiff will adequately represent and protect the interests of the class.

### b. The Rule 23(b) Requirements

Having found that the prerequisites of Rule 23(a) are met, the next inquiry is whether plaintiff's action also falls under any of the three categories listed in Rule 23(b). Plaintiff asserts that the state law claim is maintainable under Rule 23(b)(3).

Rule 23(b)(3) provides that a class action may be maintained if Rule 23(a) is satisfied and if: "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P.

---

[1] See, for example, the following deposition excerpts: "I'm expecting the just thing, what the law says has to be done or imposes. That **we** have to get paid for overtime . . . ."; "I come representing myself and others that could have been in the same situation that I was during that time." [DE 50-6] (emphasis added).

10

23(b)(3). To be certified as a Rule 23(b)(3) class action, plaintiffs must satisfy both the "predominance" and "superiority" components of the rule. *Amchem*, 521 U.S. at 615.

Defendants contend that common questions do not predominate in the case at hand, arguing instead that there will be highly specific inquiries into employees' exempt or non-exempt status and time records which defeat predominance. The Court does not agree.

The Court finds that the legal and factual issues common to the putative class predominate over any individual issues of law or fact. The primary common question of fact in this litigation is, without limitation, whether defendants failed to pay current and former employees wages for all the hours they worked, especially those hours above and beyond forty per week. The Court further finds that common questions of law also predominate because the same operative facts underlying plaintiffs' FLSA claim also form the basis of plaintiffs' NCWHA claim.

Regarding the superiority inquiry, the Court is to compare the possible alternatives to a class action and determine if any is superior to the proposed class action. The alternative to class action litigation in this case would be, of course, individual lawsuits by each class member. Based on the relatively small amount of individual wages at issue in this case (compared to the cost of litigation), it does not appear that the putative class members would have a great incentive or desire to bring individual suits against defendants. Even if the putative class members were inclined to pursue individual actions, there is no doubt this would be more burdensome on the class members, and it would likely be a less efficient use of judicial resources.

Additionally, the Court has considered Rule 23(b)(3)'s four non-exclusive factors pertinent to the predominance and superiority determinations. The four factors are:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;
(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)–(D). The Court finds that these factors counsel in favor of a class action.

With respect to the first factor, the Court does not foresee a great interest among individual plaintiffs in proceeding separately. Such individualized lawsuits would be financially burdensome and many plaintiffs may not have the means or ability to prosecute their claims separately. On the other hand, the advantages of determining the common issues by means of a class action are evident, as all employees in the class could finalize their claims in one proceeding rather than in dozens of individual suits.

With respect to the second factor, none of the parties have indicated that there is any similar ongoing litigation by the class members against defendants.

With respect to the third factor, all of defendants' restaurants that are referenced in the pleadings are located within this district, and there is no reason why this Court would not be a desirable forum for the litigation.

With respect to the fourth factor, the court does not foresee significant problems of manageability. Although Plaintiffs believe this class action would involve a minimum of 100 class members, it is readily manageable, particularly when compared to classes in other larger and more complicated cases that have been managed successfully through settlement or trial. *See Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54, 62 (D. Mass. 1997) ("class consists of persons or entities who have had an ownership interest in one or more of approximately 3.8

million [insurance] policies"). Given the possible size and scope of this class, joinder and intervention are not possible or superior alternatives.

The Court finds that the predominance and superiority requirements have been met. This action is maintainable as a Rule 23(b)(3) class action.

IV.    Appointment of Class Counsel

Finally, the Court hereby designates plaintiff's counsel as class counsel. Class counsel must be "qualified, experienced and generally able to conduct the proposed litigation." *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562 (2d Cir. 1968), *vacated on other grounds*, 417 U.S. 156 (1974). Here, defendants have not specifically objected to plaintiffs' counsels' fitness to serve as class counsel, and the Court finds that plaintiffs' counsel possess the necessary qualifications.

## CONCLUSION

Based on the foregoing discussion, it is hereby ordered that:

1. Plaintiff's motion is GRANTED [DE 49];

2. The case shall proceed with respect to the FLSA claims as a conditionally-certified collective action under 29 U.S.C. § 216(b) and with respect to the NCWHA claims as a class action under Federal Rules of Civil Procedure 23(a) and (b)(3);

3. Plaintiff's proposed notice is approved and defendants are to provide the requested employee information and post the notice in accord with the language of this Order;

4. The putative plaintiffs/class members are defined as follows with respect to plaintiff's FLSA claims and NCWHA claims:

   > All non-tipped and non-managerial employees such as cooks, dishwashers, chip and drink runners, bussers, and hosts and hostesses, who were not permitted to record all of their time worked and were required to work in excess of forty (40) hours during at least one week from August 8, 2011, to the present;

5. Plaintiff Moises Enot Velazquez-Monterrosa is designated as the class representative and the attorneys of record for said named plaintiff are authorized to serve as class counsel in this action.

SO ORDERED, this 26 day of April, 2016.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE