# EXHIBIT
## A
# Stipulation and Settlement Agreement

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | | |
|---|---|---|
| MOISES ENOT VELASQUEZ MONTERROSA, on behalf of himself and all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>MI CASITA RESTAURANTS; JM MACIAS, INC.; JFC LLC; MACIAS LLC; MACIAS ENTERPRISE LLC; MC MANAGEMENT LLC; MEXICAN FOODS EXPRESS, INC.; PIRAMIDE MEXICAN FOODS, INC.; VIA 216 LLC; JESUS MACIAS; and JUAN MACIAS,<br><br>*Defendants.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.: 5:14-CV-448-BO |

## **STIPULATION AND SETTLEMENT AGREEMENT**

This Stipulation and Settlement Agreement ("Agreement") is entered into by and between Plaintiff Moises Enot Velasquez individually and on behalf of all Opt-in Plaintiffs and all members of the Settlement Class defined herein, and Defendants Mi Casita Restaurants; JM Macias, Inc.; JFC LLC; Macias LLC; Macias Enterprise LLC; MC Management LLC; Mexican Foods Express, Inc.; Piramide Mexican Foods, Inc.;[1] Jesus Macias; And Juan Macias ("Mi Casita"), and subject to the terms and conditions hereof and final approval by the Court. This settlement is intended to fully, finally, and forever compromise, release, resolve, discharge, and settle the released claims subject to the terms and conditions set forth in this Agreement. The instant action shall be dismissed with prejudice upon final approval of this settlement by the Court.

## I. RECITALS AND BACKGROUND

### A. The Nature of the Instant Action and Claims Raised

Defendants Mi Casita is a restaurant chain with 17 locations throughout North Carolina whose mission is to provide food and service to the public. The Restaurant employs hundreds of non-tipped and non-managerial employees such as cooks, dishwashers, chip and drink runners, bussers, and hosts and hostesses.

Plaintiff Moises Enot Velasquez worked as a cook No. 1 in Defendants' Lillington, NC location. He asserts claims under the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the North Carolina Wage and Hour Act pursuant to Fed. R. Civ. P. 23. Those claims include allegations that Plaintiff and all similarly situated were not permitted to record all of their time worked and were required to work in excess of forty (40) hours during at least one week from August 8, 2011, to the present without proper compensation, including time and one half for such

---

[1]Defendants have represented that 216 LLC has no affiliation to any of the individually named or corporate Defendants. Based on these representations, the parties agreed to file a joint stipulation of dismissal without prejudice as to Defendant 216 LLC.

hours. On these grounds, Plaintiffs seek to recover on his behalf, as well as on behalf of a class of similarly situated individuals who filed consents to participate in this action as party plaintiffs and on behalf of a R.23 class of individuals consisting of non-tipped and non-managerial employees in North Carolina, for their unpaid wages, overtime pay, liquidated damages, pre- and post-judgment interest, and attorneys' fees and costs.

### B. Procedural History of the Instant Action

1. On August 8, 2014, Moises Enot Velasquez filed a complaint in the U.S. District Court for the Eastern District of North Carolina, raising putative collective-action claims under the FLSA and putative class-action claims North Carolina state law. (*See* Dkt. No. 1.)

2. On December 9, 2014, the Court issued its Scheduling Order. (*See* Dkt. 26.) Because the parties agreed to a bifurcated discovery plan, the Phase I discovery deadline was scheduled as May 15, 2015. *Id.* Plaintiff's motion for conditional/class certification was due on August 6, 2015. *Id.* Among other significant deadlines, the Court required that the parties engage in mandatory mediation within forty-five (45) days of the Court's ruling on Plaintiff's motion for conditional/class certification. *Id.*

3. On December 12, 2014, Plaintiff served Defendants with his First Set of Interrogatories and Requests for Production of Documents. (*See* Dkt. 28 at 1.) Depositions of both the named, opt-in Plaintiffs were taken, in addition to, the 30(b)(6) corporate designee, Defendant Juan Macias.

4. On March 12, 2015, due to discovery disputes between the parties, Plaintiff filed a motion to compel. (*See* Dkt. 31.) On May 1, 2015, the parties filed a joint motion for extension of time to complete Phase I discovery given the pending motions, including the Court's ruling on Plaintiff's motion to compel. (*See* Dkt. 35.) On May 1, 2015, the Court denied Plaintiff's motion

to compel.  (*See* Dkt. 36.)   On May 7, 2015, the Court granted the parties' joint motion for extension of time, up to and including July 15, 2015.  (*See* Dkt. 37.)

5.      In light of information received from Defendants' counsel, that a potential resolution of the action had occurred between the parties directly, (and unbeknownst to Plaintiff's counsel), on August 31, 2015, Plaintiff filed an unopposed motion for extension of time to file his motion for conditional/class certification while Plaintiff's counsel investigated the matter.  (*See* Dkt. 42.)  On September 8, 2015, the Court granted Plaintiff's motion for extension of time to file his motion for conditional/class certification.  (*See* Dkt. 46.)

6.      On September 14, 2015, Plaintiffs filed a motion requesting conditional certification of their FLSA claims as a collective action, to certify this action as a class action under Federal Rules of Civil Procedure 23(a) and (b)(3) and authorization to send court-supervised notice to potential participants in that collective/class action and for the appointment of class counsel. (Dkt. No. 49).  On April 27, 2016, the Court granted Plaintiff's motion for conditional/class certification.  (*See* Dkt. No. 65.)

7.      Pursuant to this Court's December 9, 2014 Scheduling Order, the parties were also required to engage in mediation within forty-five (45) days of the Court's ruling on any motion for conditional collective/class action certification. (*See* Dkt. 26.)

8.      On May 10, 2016, the parties filed a joint motion for extension of time to hold mediation within thirty (30) days from the expiration of the opt-in deadline, and to provide the Court with the parties' phase II discovery plan within fifteen (15) days thereafter, should the parties' mediation fail.  (*See* Dkt. 67.)   On May 12, 2016, the Court granted the parties' motion for extension of time to hold mediation.  (*See* Dkt.  68.)

9.      On September 26, 2016, the parties met and began the mediation process with

4

mediator, Hunter Hughes III. Unfortunately, the parties were unable to resolve the case during their September 26, 2016 mediation, but agreed to continue their efforts to mediate this case with the assistance of the mediator, Mr. Hunter Hughes, following Defendants' voluminous production of financial and payroll records. *Id.*

10.     On October 11, 2016, the parties filed a Joint Notice regarding Continuation of Mediation and Alternative request for extension. (*See* Dkt. 88). The Court's December 22, 2016 Order, directed the parties to submit to the Court an Update as to the Status of the matter within thirty (30) days of the Court's Order. (*See* Dkt. 93.)

11.     On January 23, 2017, the parties filed another motion for extension of time to complete mediation given the extensive financial and payroll records Defendants provided. (*See* Dkt. 94.) The parties explained that the review process and mediation efforts were still ongoing, and that the parties were cooperating in good faith, to determine if a settlement could be reached. *Id.* The parties advised the Court that the parties would promptly file a Phase II discovery plan if the parties' mediation efforts were unsuccessful. *Id.* On January 31, 2017, the Court granted the parties' motion. (*See* Dkt. 95).

12.     On March 9, 2017, with the invaluable assistance of the mediator, Mr. Hughes, and following an exchange and review of extensive documentation and intense settlement negotiations, the parties reached a mutually agreeable settlement of the Litigation, and filed a joint notice to advise the Court that the parties had reached a class wide settlement agreement to resolve named Plaintiff, Opt-in Plaintiffs, and R.23 class members' claims under the FLSA and pursuant to the NCWHA and Rule 23 of the Federal Rules of Civil Procedure. (Dkt. No. 96). The terms of the settlement are explained herein.

### C. Parties' Statements and Recognition of the Benefits of Settlement

#### 1. Plaintiffs' Statement

Named Plaintiff believes the claims asserted in the Litigation have merit under the FLSA and the NCWHA. However, Plaintiff recognizes the cost and delay of continued proceedings necessary to prosecute the instant action against Defendants through Phase II discovery, dispositive motions, trial, and appeal. Plaintiff has also taken into account, the uncertain outcome and the risk of loss in any litigation, especially in a complex collective/class-action such as this one. Plaintiff believes that the settlement set forth in this Agreement confers substantial benefits on opt-in Plaintiffs and Settlement Class Members. Based on evaluation as discussed with his counsel, Plaintiff has determined that the settlement is in the best interest of Named Plaintiff, the Opt-in Plaintiffs, and the other members of the Settlement Classes.

#### 2. Defendants' Statement

Defendants deny each and all of the claims alleged by Named Plaintiff in the Litigation, including the claims in his Complaint. Nevertheless, Defendants have taken into account, the uncertainty and risks inherent in any litigation and the fact that the conduct of the Litigation would be protracted and expensive. Defendants, therefore, have determined it is desirable and beneficial that the Litigation be settled in the manner and upon the terms and conditions set forth in this Agreement.

## II. TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

IT IS HEREBY STIPULATED AND AGREED by and among the Named Plaintiff (for himself and the Settlement Classes defined below) and Defendants, by and through their respective attorneys, that, subject to the approval of the Court, the instant action will be finally and fully compromised, released, resolved, discharged, and settled, and will be dismissed with prejudice, subject to the terms and conditions of this Agreement, as follows:

## A. Definitions

As used throughout this Agreement, the following terms have the meanings specified below:

**1.** **"Authorized Claimant"** means any Settlement Class Member who is entitled to a Settlement Payment, as defined herein, if he or she timely submits the required claim form, as described herein in Parts II.H, II.J.3 and II.K, *infra*. However, notwithstanding the foregoing, the following specifically identified individuals will not be required to submit the required claim form:  Marco Vinicio Salazar, Raul Velasquez, Juan G. Rogel-Reyes, Jose Martin Valenzuela, Fernando Rogel Reyes,[2] Jose M. Hernandez-Lopez, Richardo Sanchez-Ordonez, Moises Enot-Velasquez-Monterrosa, Santos L. Sanabria, Anyi Yesenia Turcios Reyes, and Jose Antonio Gomez Urquin.   Pursuant to the parties' executed Memorandum of Understanding ("MOU"), each of these identified individuals have either opted into the case or have actively participated in the prosecution of this action and are automatically entitled to a Settlement Payment from the "Current Participant Fund" as defined herein.

**2.** **"Current Participant Fund"** refers to the portion of the Gross Settlement Amount available for distribution as cash Settlement Payments to Named Plaintiff, opt-in Plaintiffs and Rule 23 class members who actively participated in the prosecution of this litigation and for whom an opt-in notice will be filed with the Court upon preliminary approval by the Court of this Agreement as identified in Section II.A.1.

---

[2] While Mr. Rogel Reyes did not send back his consent form, he has been an active R.23 class member; thus, should the Court grant Plaintiff's motion for preliminary approval of the settlement, Plaintiff Rogel Reyes' consent form will be promptly filed with the Court.  Similarly, for any individuals whom opted out of the action during the notice period, but whose opt-out form has not yet been filed, will have their opt-out form similarly filed with the Court prior to having Plaintiff's Notice of Settlement mailed to all R.23 class members.

3. **"Defendants"** means Mi Casita Restaurants, a.k.a. Mi Casita Restaurante Mexicano; JM Macias, Inc.; Macias Enterprise LLC; JFC, LLC; Macias, LLC; Macias Enterprise LLC; MC Management LLC; Mexican Foods Express, Inc.; Piramide Mexican Foods, Inc.; Jesus Macias and Juan Macias, including all past, present, or future officers, directors, shareholders, employees, agents, principals, heirs, assigns, representatives, accountants, auditors, consultants, attorneys, fiduciaries, both individually and in their official capacities, employee benefits plans, insurers and reinsurers, and their respective successors and predecessors in interests, subsidiaries, affiliates, parents, divisions, partners, and affiliated organizations.[3]

4. **"Effective Date"** means the date by which both of the following have occurred: (i) this settlement has received final approval from the U.S. District Court for the Eastern District of North Carolina; and (ii) the period for appealing the Court's final order approving the settlement expires without an appeal being filed or, if such an appeal is filed, the date on which the appeal is finally resolved. To the extent any appeal results in the settlement being found to be invalid, this Agreement will be null and void for all purposes in its entirety.

5. **"Final Settlement Hearing"** means the hearing to be conducted by the U.S. District Court for the Eastern District of North Carolina, to determine whether to finally approve the settlement explained herein.

6. **"Gross Settlement Amount"** refers to a fund totaling $2,500,000, which is the total and maximum amount Defendants will be required to pay under this settlement to completely resolve and settle the claims alleged against Defendants in the Litigation, except that

---

[3]Counsel for Defendants have authority to act on behalf of Defendants, and Defendants specifically authorize Counsel for Defendants to act on their behalf for purposes of finalizing the settlement.

in addition to the Gross Settlement Amount, Defendants will pay their share of employer payroll taxes associated with payments to Authorized Claimants pursuant to this Agreement that are attributable to back wages. The Gross Settlement Amount expressly includes, but is not necessarily limited to, the following elements: (i) Current Participant Fund, (ii) Cash Settlement Payments to Authorized Claimants, as described in this Agreement; (iii) Service Awards, as described herein; (iv) Plaintiffs' Attorney's Fees, payable as described herein; (v) Plaintiffs' Litigation Expenses, as described herein; and (vi) Settlement Expenses, as defined herein.

7. **"Injunctive Relief"** refers to Defendants' agreement to performing semi-annual audits for a two (2) year period following the execution of the Settlement Agreement to ensure compliance with the Fair Labor Standards Act ("FLSA") and the North Carolina Wage and Hour Act ("NCWHA") as described herein *infra* in Part II.R. Defendants agree to provide appropriate training to every restaurant manager and supervisor to ensure that every manager and supervisor fully understands and complies with the FLSA and NCWHA compensation and recordkeeping requirements.

8. **"Litigation"** refers to the civil action filed on August 8, 2014, in the U.S. District Court for the Eastern District of North Carolina, styled as *Velasquez-Monterrosa et al., v. Mi Casita Restaurants, a.k.a. Mi Casita Restaurante Mexicano; JM Macias, Inc.; JFC LLC; Macias LLC; Macias Enterprise LLC; MC Management LLC; Mexican Foods Express, Inc.; Piramide Mexican Foods, Inc.; Jesus Macias and Juan Macias*, No. 5:14CV448(BO)

9. **"Motion for Preliminary Approval"** refers to the motion for preliminary approval of this settlement and its supporting papers.

10. **"Named Plaintiff"** means Moises Enot Velasquez-Monterrosa.

11.     **"Notice of Settlement"** refers to the official notice of settlement of class action and final fairness hearing, substantially in the forms attached hereto as Exhibit 1.

12.     **"Opt-in Plaintiff"** means any individual who, pursuant to 29 U.S.C. § 216(b), filed a written consent with the U.S. District Court for the Eastern District of North Carolina in the Litigation, asking to participate in Plaintiff's claims under the FLSA as a party plaintiff.

13.     **"Order Granting Preliminary Approval"** refers to the order or statement of decision in the Litigation granting preliminary approval to this settlement.

14.     **"All Non-Tipped and Non-Managerial Employees"** means a current or former employee of Defendants, who worked as a full-time Cook, Dishwasher, Chip and Drink Runner, Busser, and Hosts and Hostesses or similar position, in one of Defendants' 17 chain restaurants, and who Plaintiff allege was not paid for all of his/her hours worked.

15.     **"Plaintiffs"** means Enot Velasquez-Monterrosa, individually and on behalf of all Opt-in Plaintiffs defined herein, and all members of the Settlement Class defined herein, and their past, present, or future agents, heirs, assigns, representatives, and their respective successors and predecessors in interests.

16.     **"Plaintiffs' Attorney's Fees"** refers to the fee amount to be paid to Plaintiffs' Attorneys under the terms of this Agreement, as authorized by the U.S. District Court for the Eastern District of North Carolina, which shall not exceed one third of the Gross Settlement Amount.

17.     **"Plaintiffs' Attorneys"** or **"Class Counsel"** means the attorneys representing Plaintiffs and R.23 class members in the Litigation: (i) The Law Offices of Gilda A.

Hernandez, PLLC, 1020 Southhill Drive, Suite 130, Cary, North Carolina 27513; and (ii) Lee & Braziel, LLP, 1801 N. Lamar Street, Suite 325, Dallas, TX 75202.

18. **Plaintiffs' Litigation Expenses"** means the litigation costs and expenses, incurred by Plaintiffs in connection with the Litigation, not to exceed $20,000[4], which shall be paid to Plaintiffs' Attorneys under the terms of this Agreement, as authorized by the U.S. District Court for the Eastern District of North Carolina.

19. **"Revised Gross Settlement Amount"** refers to the portion of the Gross Settlement Amount available for distribution as cash Settlement Payments to Authorized Claimants, as described in Parts II.G and II.O.2, *infra*. The Revised Gross Settlement Amount is equal to Gross Settlement Amount less: (i) Current Participant Fund; (ii) Service Awards, as described herein; (iii) Plaintiffs' Attorney's Fees, as described herein; (iv) Plaintiffs' Litigation Expenses, as described herein; and (v) Settlement Expenses, as defined herein.

20. **"Service Award"** means a sum, as explained in Parts II.D and II.O.4, *infra*, and as authorized by the U.S. District Court for the Eastern District of North Carolina, to be paid to the Named Plaintiff and Class Representative, Enot Velasquez-Monterrosa, and to Anyi Turcios-Reyes, who is an Opt-in Plaintiff, in recognition of their service to the Settlement Classes in the Litigation.

21. **"Settlement Administrator"** means the firm of RG2 Claims Administration LLC, or any other firm or successors designated by the parties and approved by

---

[4] While Class Counsel's litigation expenses thus far amount to $16,553.55, Class Counsel anticipates that additional expenses will be incurred in responding to named, opt-in, and R.23 class members' calls relating to the settlement, including some that no longer live in the country; traveling expenses to the Final Approval Hearing, and any other miscellaneous expenses that may be incurred should the Court grant final approval prior to and following such approval. By requesting a full $20,000 for both firms, this gives each firm an additional $1,500.00 for any remaining expenses that may be incurred between now and after distribution of settlement checks.

the Court with jurisdiction over the Litigation, to effectuate the settlement by issuing notice of the settlement, collecting the required claim form, distributing Settlement Payments, distributing copies of the order granting final approval of this settlement, and any other tasks specified in this Agreement or by order of the Court with jurisdiction over the Litigation.

22. **"Settlement Class Members"** means those persons who are members of the Settlement Classes, defined below, and who do not properly and timely opt out of the Litigation in accordance with the opt-out procedures described herein in Part II.J.3, *infra*, associated with the Notice of Settlement.

23. **"Settlement Classes"** are defined as follows:

(i.) Opt-in Plaintiffs and Current Participants, as defined herein, who have not withdrawn their consent to participate in Plaintiff's FLSA claims as party plaintiffs, as of the time the Motion for Preliminary Approval is filed with the Court; as Opt-in Plaintiffs and Current Participants, they are entitled to the full value of their damages (less applicable taxes) and need not submit a claim form to receive the full value of their damages ("Opt-In Fund"); and

(ii.) the North Carolina R.23 Class Members who are Non-Tipped and Non-Managerial Employees, as defined herein, employed by Defendants in North Carolina between August 8, 2012 and the date of the entry of the Court's Order Granting Preliminary Approval to this settlement.

24. **"Settlement Expenses"** means all expenses associated with administering the settlement, including, but not limited to, the costs of the Settlement Administrator, the costs of

mailing the Notice of Settlement, and the costs of disbursing the settlement proceeds, which shall

be determined by the Settlement Administrator prior to the mailing of the Notice of Settlement.

25. **"Settlement Payments"** means the amounts to be paid to individual

Authorized Claimants from the Revised Gross Settlement Amount.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

Named Plaintiff (for himself and the Settlement Classes defined above) and Defendants, by and through their respective attorneys, HEREBY FURTHER STIPULATE AND AGREE as follows:

**B.      Scope of Settlement**

The settlement described herein will resolve fully and finally all of the released claims as described herein, in Part II.I, *infra*.

**C.      Authority to Execute Settlement**

The signatories to this Agreement hereby represent that they are fully authorized to enter into this Agreement and bind the parties to the terms and conditions hereof, as detailed below.

Plaintiffs' Attorneys or Class Counsel acknowledge that they have a retainer agreement with the Named Plaintiff Enot Velasquez-Monterrosa, and that each Opt-in Plaintiff has signed and filed with the Court a written consent to participate in the Litigation as a party plaintiff.[5] Pursuant to these retainer agreement and consent forms, Plaintiffs' Attorneys or Class Counsel represent that they have authority to negotiate and execute a settlement agreement on behalf of Plaintiffs and R.23 Class Members.  Upon approval by the Court, such settlement agreement shall bind the members of the Settlement Classes to all terms set forth in this Agreement, regardless of whether any particular member of the Settlement Classes timely submits the required claim form, or receives a Settlement Payment, described herein in Parts II.H, II.J.3, II.K, and II.O.2, *infra*, so long as such individual has not timely opted out of this settlement pursuant to the opt-out procedures described herein in Part II.J.3 *infra*.

It is agreed that because the members of the Settlement Classes are so numerous, it is

---

[5] As identified in II.A.1., Plaintiffs' counsel or Class Counsel will ensure that a Consent-To-Sue Form be timely filed immediately upon the Court's Order, potentially granting preliminary approval of the parties' Settlement Agreement.

impossible or impractical to have each member of the Settlement Classes execute the Agreement. The Notice of Settlement, in the forms attached hereto as Exhibit 1, which shall be submitted to the Court with jurisdiction over the Litigation for approval, will advise all members of the Settlement Classes of the binding nature of the release of claims described in this Agreement (*see* Part II.I, *infra*), and that the release will have the same force and effect upon members of the Settlement Classes as if the Agreement were executed by each member of the Settlement Classes.

### D.    Court Approval of Settlement

The parties agree that Plaintiff will move the Court with jurisdiction over the Litigation for approval of the settlement described herein.  Defendants will not oppose Plaintiff's motion seeking approval of this settlement.

As part of the approval process, Plaintiff will request Service Awards for the Named Plaintiff, Moises Enot Velasquez-Monterrosa and for Opt-In Plaintiff, Anyi Turcios Reyes as set forth herein.  Defendants agree not to oppose such a request, so long as Plaintiff does not request Service Awards of more than $7,000 for Named Plaintiff, Moises Enot Velasquez-Monterrosa, and of more than $3,000 for Anyi Turcios Reyes.  Further, Plaintiffs' Attorneys or Class Counsel will petition the Court for an award of Plaintiff's Attorney's Fees and Plaintiff's Litigation Expenses, as set forth herein.  Defendants agrees not to oppose such a petition, so long as the amount of Plaintiff's Attorney's Fees sought does not exceed one-third of the Gross Settlement Amount, as defined herein, and the Plaintiff's Litigation Expenses sought do not exceed a total amount of $20,000.[6]

---

[6] While Class Counsel's combined litigation expenses thus far amount to $16,553.55, Class Counsel anticipates that additional expenses will be incurred in responding to named, opt-in, and R.23 class members' calls relating to questions involving the settlement, including some that no longer live in the country; traveling expenses to the Final Approval Hearing, and any other

Any award of Plaintiffs' Attorney's Fees, Plaintiffs' Litigation Expenses, and/or Service Awards approved by the Court will be paid solely from the Gross Settlement Amount. In no event will Defendants be required to pay more than the Gross Settlement Amount, except that Defendants will also pay its share of employer payroll taxes associated with payments attributable to back wages to Authorized Claimants pursuant to this Agreement.

The parties' agreement to settle Plaintiffs' claims in the Litigation, as set forth in this Agreement, is contingent upon the U.S. District Court for the Eastern District of North Carolina, granting final approval of the settlement and, in the event such court grants final approval of the settlement and an appeal of the final approval order is filed, contingent upon the final approval order being affirmed on appeal in a form substantially identical to the form of the final approval order entered by the court with respect to all material terms. Should the U.S. District Court for the Eastern District of North Carolina, decline to approve all material aspects of this Agreement, or make rulings substantially altering the material terms of this Agreement, except for the awards of Plaintiffs' Attorney's Fees, Litigation Expenses, and Service Awards (each of which will be decided by the Court), Defendants will have no obligation to make any payment pursuant to this agreement, including payment of the Gross Settlement Amount.

E. **Certification of the North Carolina R.23 Settlement Class**

The U.S. District Court for the Eastern District of North Carolina has certified the following North Carolina Settlement Class, defined *supra*, pursuant to Federal Rule of Civil Procedure 23:

---

miscellaneous expenses that may be incurred should the Court grant final approval prior to and following such approval.

- North R.23 Class Members who are Non-Tipped and Non-Managerial Employees, as defined herein, employed by Defendants in North Carolina between August 8, 2012 and the date of the entry of the Court's Order Granting Preliminary Approval to this settlement.

### F. Defendants' Payment of Maximum Gross Settlement Amount

In order to settle the Litigation, and as consideration for Plaintiffs' release of claims, dismissal of the Litigation, and the other good and valuable consideration described herein that Plaintiffs are providing to Defendants, Defendants agree to pay $2,500,000.00, which shall be used to provide for: (i) Current Participant Fund; (ii) Cash Settlement Payments to Authorized Claimants, as described in this Agreement; (iii) Service Awards, as described herein; (iv) Plaintiffs' Attorney's Fees, payable as described herein; (v) Plaintiffs' Litigation Expenses, as described herein; and (vi) Settlement Expenses, as defined herein.

Pursuant to this Agreement, Defendants will not be required to pay any amount over $2,500,000.00, to settle Plaintiffs' claims in the Litigation. This amount, which is the negotiated and mutually agreeable Gross Settlement Amount defined *supra*, represents the maximum gross amount that Defendants would pay pursuant to this Agreement in the event every member of the agreed Settlement Class timely participated in the settlement and received Settlement Payments. The Gross Settlement Amount is inclusive of Settlement Payments payable to Authorized Claimants, as well as any award of Plaintiffs' Attorney's Fees, Plaintiffs' Litigation Expenses, Settlement Expenses, and Service Awards. However, the maximum Gross Settlement Amount will not include the employer's share of taxes due on portions of any Settlement Payment attributable to wages.

### G. Individual Settlement Awards and Minimum Settlement Awards

All Settlement Payments for Authorized Claimants shall be paid from the Revised Gross Settlement Amount, except as to any Settlement Payments to Opt-in Plaintiffs or Current Participants which shall be paid from the Current Participant Fund as stated *supra* in II.A.1-2. Prior to filing the motion for preliminary approval of this settlement, Plaintiff will provide Defendants with a list of the pro-rated damages for each Authorized Claimant, except as discussed *supra* II.A.1.[7] Authorized Claimants identified by name in Section II.A.1-2, *supra*, will not be required to send back a claim form to be considered Authorized Claimants as they have already opted into the case or have been active participants, and they will be entitled to their full damages as demonstrated in Exhibit 2.[8] Other than those identified in Exhibit 2, each Authorized Claimant who has timely submitted the required claim form, as specified herein (*see* Part II.H, II.J.3 and II.K, *infra*), shall be entitled to receive a Settlement Payment under this settlement.

The parties agree to apportion the Revised Settlement Fund as follows: (a) 80% will be set aside for Authorized Claimants identified as cooks (Cook Fund); (b) 20% of the Revised Settlement Fund will be set aside for the remainder of the categories of Authorized Claimants identified as Non-cooks (Non-Cook Fund). The Cook and Non-Cook Funds will be allocated separately from one another, but both will be divided on a pro-rata basis, based on the number of workweeks worked by the Authorized Claimant, multiplied by the Established Value of each

---

[7] As discussed *supra* at II.A.1, given the active participation of those Opt-in Plaintiffs and Current Participant(s) specifically identified by name, they will be entitled to receive the full value of their damages (less taxes), not a pro-rated amount, and they will not need to provide a claim form, to receive their Settlement Payment.

[8] Exhibit 2(a) identifies those opt-in Plaintiffs identified pursuant to II.A.1, who will not be required to submit a claim form and will be entitled to their full damages given their active participation in this matter. These identified Current Participants' full Settlement Payments will not under any circumstances return to Defendants.

workweek. The Established Value of a workweek will be set by dividing the amount of each fund by the total number of workweeks worked by Authorized Claimants for each Fund.[9] However, to the extent that Authorized Claimants (except those identified *supra* in II.A.1) do not timely or properly submit the required claim form, opt out of the settlement pursuant to the procedures specified in Part II.J.3, *infra*, or otherwise elect not to accept the payment of their designated share of the Revised Gross Settlement Amount, their share of the Revised Gross Settlement Amount will remain the sole and exclusive property of Defendants.

### H. Tax Treatment

The parties agree that each Settlement Payment to be issued to each Authorized Claimant pursuant to this Agreement shall be separated into two equal amounts: 50 percent shall be allocated to the claims asserted in the Litigation for unpaid overtime and other claims for unpaid wages; and 50 percent shall be allocated to the claims asserted in the Litigation for liquidated damages and other relief. The portion of each Settlement Payment allocated to claims of unpaid overtime and other wages will be subject to authorized or required deductions, including employee-paid payroll tax withholdings required by law, garnishments, and tax liens. However, Defendants will remain responsible for paying the employer's share of all required payroll taxes, and the amount of such taxes is not included in the Gross Settlement Amount. The portion of each Settlement Payment allocated to liquidated damages and other relief shall be characterized as non-wage income to the recipient.

The Settlement Administrator will report the portion of the Settlement Payment made to

---

[9] For example, if the amount of the Cook Fund is $750,000, and there are 100 Authorized Claimants who are cooks who worked a total of 30,000 weeks, each week's Established Value is $25.00 ($750,000/30,000). If Cook A works 220 weeks, his award will be $5,500 (220 x $25) (less applicable taxes), while Cook B, who works 400 weeks, will receive $10,000 ($400 x $25) (less applicable taxes). The same calculation method will be used for the Non-Cook Fund.

each Authorized Claimant attributable to wages on an I.R.S. Form W-2, and the portion of the Settlement Payment attributable to non-wages on an I.R.S. Form 1099. The Settlement Administrator shall be responsible for issuing the settlement checks, less required withholdings and deductions, to each Authorized Claimant and mailing the settlement checks, Form W-2s, and Form 1099s to each such individual.

## I. Release of Claims

In order to settle the Litigation, and as consideration for Defendants payment of the Gross Settlement Amount, which shall provide for cash Settlement Payments to Authorized Claimants, Service Awards, Plaintiffs' Attorney's Fees, Plaintiffs' Litigation Expenses, and Settlement Expenses, and the other goods and valuable consideration described herein, Plaintiffs agree to release any claims they may have against Defendants only as described herein.

### 1. Description of released claims

Effective as of the Effective Date, the Named Plaintiff and Class Representative hereby forever completely settles, compromises, releases, and discharges Defendants from any and all past and present matters, disputes, claims, demands, rights, liabilities, expenses, damages, losses of any kind, and causes of action of any kind whatsoever, whether at common law, pursuant to statute, ordinance, or regulation, in equity or otherwise, and whether arising under federal, state, or other applicable law, which Named Plaintiff has or might have, known or unknown, asserted or unasserted, of any kind whatsoever, that are based upon, relate to, or arise out of or reasonably could have arisen out of the facts, acts, transactions, occurrences, events or omissions alleged in the Litigation or by reason of the negotiations leading to this Agreement, including but not limited to any claims under the FLSA and the NCWHA, except to the extent that any such claim may not be waived as a matter of law. Each and every Settlement Class Member hereby forever completely

settles, compromises, releases, and discharges Defendants from any and all past and present matters, disputes, claims, demands, rights, liabilities, expenses, damages, losses of any kind, and causes of action, whether at common law, pursuant to statute, ordinance, or regulation, in equity or otherwise, and whether arising under federal, state, or other applicable law, which any Settlement Class Member has or might have, known or unknown, asserted or unasserted, of any kind whatsoever, that relate to hours worked or the payment of wages, including but not limited to any claims under the FLSA and the NCWHA, except to the extent that any such claim may not be waived as a matter of law. The claims released by both the Named Plaintiff and each and every Settlement Class Members specifically include without limitation (i) any and all claims asserted in the Litigation; (ii) any and all claims for unpaid wages, minimum wages, overtime, late payment of wages, retaliation for complaining about wages or for asserting wage-related claims and/or any other claims of any kind, or any other wage-related or recordkeeping-related claims, damages or relief of any kind including but not limited to the federal FLSA, 29 U.S.C. § 201, *et seq.*, and all claims under the North Carolina Wage Hour Act ("NCWHA") N.C.G.S. § 95-25.1 *et seq*., or any other statutes and/or regulations regulating hours of work, wages, the payment of wages, retaliation, wage-related or recordkeeping-related claims, the payment of minimum wages, and/or the payment of overtime compensation; (iii) any and all claims under state and federal law for earned wages, overtime, and/or missed or interrupted meal breaks, including such claims for breach of express contract or labor agreement, implied contract, money had and received in *assumpsit*, *quantum meruit*/unjust enrichment, fraud, negligent misrepresentation, equitable estoppel, promissory estoppel, conversion, and failure to keep accurate records; (iv) any and all claims pursuant to or derived from Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et seq.*, to the extent such ERISA claims are premised on an alleged failure to

credit any Settlement Class Member's account and/or benefits for all hours worked or all compensation paid or entitled to be paid, but excluding any potential ERISA claim that is not based on an alleged wage and hour violation; and (v) any and all wage-and-hour laws or wage-related claims of any kind under other laws, including but not limited to any and all such claims pursuant to other federal, local, or other states' laws and/or regulations.

This Release has no application to any claim by any Class Member for discrimination in violation of state or federal law, or any claim of any type arising on or after the effective date of this Agreement as defined supra in II.A.4.

The settlements, compromises, releases, and discharges described in the preceding paragraph, with the exception of claims of retaliation, shall extend to any such claims that arose at any time up to and including the date this settlement has received final approval from the U.S. District Court for the Eastern District of North Carolina. With respect to claims of retaliation, such settlements, compromises, releases, and discharges shall extend to any such claims that arose at any time up to and including the effective date of this Agreement.

## 2. Agreement not to seek or accept relief in any other action

The Settlement Class Members further covenant and agree that, since they are settling disputed claims, they will not accept, recover, or receive any back pay, liquidated damages, other damages, or any other form of relief based on any claims asserted or settled in this Litigation, which may arise out of, or in connection with any other individual, class, collective, representative, administrative, or arbitral proceeding pursued by any individual, class, union, or federal, state or local governmental agency against any of the Defendants. Settlement Class Members further acknowledge that they are enjoined from pursuing any claim settled, compromised, released, and/or discharged as part of this settlement.

22

### 3.    Recognition of Binding Nature of Release

The parties agree that as of the Effective Date all Authorized Claimants will be bound by the terms and conditions of this Agreement, the order by the U.S. District Court for the Eastern District of North Carolina, granting final approval to the Agreement and this settlement, the final judgment in the Litigation, and the releases set forth herein.

### J.    Settlement Administrator and Notice Process

The parties agree that RG2 Claims Administration LLC., ("RG2"), a neutral third party, shall serve as the Settlement Administrator for this settlement, if approved by the Court with jurisdiction over the Litigation. To that end, as part of their Motion for Preliminary Approval, Plaintiff shall request that the Court approve RG2 to serve in this capacity and order RG2 to perform the specific tasks assigned to the Settlement Administrator in this Agreement or by order of the Court with jurisdiction over the Litigation, and only those tasks, unless otherwise agreed to by the Parties. This shall include the issuance of the agreed Notice of Settlement, substantially in the form attached hereto as Exhibit 1, to all members of the Settlement Classes defined herein after entry of the Order Granting Preliminary Approval of the settlement outlined in this Agreement.

### 1.    Providing and Updating Contact Information for Members of the Settlement Classes

Within fifteen (15) calendar days after the date the Court enters an Order Granting Preliminary Approval of this Agreement, Defendants will provide to Plaintiffs' Attorneys or Class Counsel full names and the last known mailing address, cell phone or home numbers, Employee ID number for the Named, Opt-in Plaintiffs, and R.23 Class Members from Defendants' records. This information will remain confidential and will not be disclosed to anyone, other than the Settlement Administrator, with the exception of applicable taxing authorities or pursuant to express written authorization by the party providing the information or by court order. Plaintiffs will

provide the Settlement Administrator with the names and last known mailing address for the Named Plaintiff, Opt-in Plaintiffs, and R.23 Class Members.

In order to ensure that the Settlement Administrator has the most up to date addresses possible, the Settlement Administrator shall update all addresses the parties provide for the members of the Settlement Classes using the national change of address database and by performing a "skiptrace." Any fees or costs incurred by the Settlement Administrator in updating addresses are Settlement Expenses and are included in the Gross Settlement Amount.

### 2.     Mailing of the Notice of Settlement and Related Materials

Within 30 calendar days after the Court enters an Order Granting Preliminary Approval of the Agreement, the Settlement Administrator will mail the Notice of Settlement. The Notice of Settlement shall consist of a single mailing to all individuals who are members of the Settlement Classes defined herein. The Settlement Notice and Claim Form will be double-sided, so that they are provided in both English and Spanish. The Settlement Administrator shall issue the Notice of Settlement by First Class U.S. Mail using envelopes that will include the name and/or logo of Plaintiffs' Attorneys' or Class Counsel's law firms, if Plaintiffs' Attorneys provide their logos in a format that the Settlement Administrator can use to print on the outside of the envelopes. Along with the Court-approved Notice of Settlement, the Settlement Administrator shall mail the claim form that members of the Settlement Class, with the exception of those identified *supra* in II.A.1, are required to complete in order to receive Settlement Payments, as discussed in greater detail in Part II.H, *supra*, and Parts II.J.3 and II.K, *infra*, and a postage pre-paid return envelope. Additionally, should any member of the Settlement Classes contact the Plaintiff's Attorneys or Class Counsel to request replacement copies of the Notice of Settlement and claim form, Plaintiffs' Attorneys' or Class Counsel shall advise the Settlement Administrator to mail such individual

24

replacement copies.

### 3.    Responses to the Notice of Settlement

The Notice of Settlement will inform the Settlement Classes that any Settlement Class Member who wishes to receive a Settlement Payment must return a claim form, to the Settlement Administrator. As stated *supra*, only Settlement Class Members who are neither a Named Plaintiff or Opt-in Plaintiff must return a simple claim form, a copy of which is included as Exhibit 3, in order to receive a Settlement Payment. Settlement Class Members shall have no more than 60 calendar days following the mailing of notice to postmark, email, or fax required claim forms to the Settlement Administrator.

The Notice of Settlement will also explain the option for members of the Settlement Class who are not Named or Opt-in Plaintiffs to opt out of the settlement. Opt-in Plaintiffs, who previously consented to be bound by any settlement of this action, shall not be provided the opportunity to opt out of the settlement without first receiving Court approval. Any request for exclusion submitted by a Named or Opt-in Plaintiff who has not received prior Court approval shall be rejected, and the Settlement Administrator or Plaintiff's Attorneys shall contact such individuals to inform them that they may not opt out of the settlement without first receiving Court approval.

Members of the Settlement Class who are not Named or Opt-in Plaintiffs and who wish to opt out of the settlement must submit a written statement expressly asserting that he or she wishes to be excluded from the settlement. Such written statements should state at the top of the letter "Request for Exclusion from Settlement in *Velasquez-Monterrosa et al., v. Mi Casita Restaurants, a.k.a. Mi Casita Restaurante Mexicano; JM Macias, Inc.; Macias Enterprise LLC; MC Management LLC; Mexican Foods Express, Inc.; Piramide Mexican Foods, Inc.; Jesus Macias*

*and Juan Macias*, No: 5:14CV448(BO), and should include the name, address, telephone number, and signature of the individual requesting exclusion from the settlement. All written requests for exclusion must be returned by First-Class U.S. Mail to the Settlement Administrator and must be postmarked no later than 60 calendar days from the postmark of the Notice of Settlement sent to members of the Settlement Classes. Any member of the Settlement Class who requests exclusion from the settlement will not be eligible to receive a Settlement Payment and cannot object to the settlement. In the event that any member of the Settlement Class timely and properly submits a written request for exclusion, and also timely submits the required claim form necessary to receive a Settlement Payment, or also timely submits an objection to the Settlement, the Settlement Administrator shall contact such individual, inform them that they can cannot request exclusion from the settlement and request a Settlement Payment and/or object to the settlement, and shall ask such individual which option they wish to pursue. Any member of the Settlement Classes who requests exclusion from the settlement will not be legally bound by the terms of the Agreement or the final order approving the settlement. In contrast, any member of the Settlement Classes who does not return a valid and timely written request for exclusion will be bound by all terms of the Agreement and the final order approving the settlement, regardless of whether they have objected to the settlement.

Additionally, the Notice of Settlement will inform the Settlement Classes of their right to object to the settlement and that to do so they must file their objection with the U.S. District Court for the Eastern District of North Carolina, and serve on counsel for the parties, either a written statement objecting to the settlement or a written notice of their intention to appear and object at the Final Settlement Hearing. Such written statement or notice must be filed and served within 60 calendar days after the mailing date of the Notice of Settlement. Persons who are included in the

Settlement Class who fail to timely file and serve written objections or notice of intention to appear and object in the manner specified above will be deemed to have waived any objections and will be foreclosed from making any objection to the settlement, whether by appeal or otherwise.

The Settlement Administrator shall provide to counsel for both parties, within 90 days of the mailing of the Notice of Settlement a declaration from an appropriate agent or agents working for it, stating under penalty of perjury: (a) the names and addresses of all individuals to whom the Settlement Administrator mailed notice of the proposed settlement; (b) whether each such individual was an Opt-in Plaintiff or other Settlement Class Member; (c) the form of notice sent to each such individual; (d) whether each such individual timely and properly submitted the required claim form to receive a Settlement Payment and, if so, the amount of that payment; and (d) the identify of all such individuals who are not Named or Opt-in Plaintiffs and who validly and timely requested exclusion from the settlement.

### 4. Communications Regarding Notice Process

Other than through the Court-approved Notice of Settlement to be mailed to members of the Settlement Classes by the Settlement Administrator, the agreed statements on Plaintiffs' Attorneys' or Class Counsel's firm websites that are discussed below in Part II.L.1, and assisting in curing deficiencies as described in Part II.J.3, neither Plaintiffs' Attorneys or Class Counsel, nor Defendants or their counsel, shall initiate contact with any member of the Settlement Class regarding the Notice or Settlement or the claims process. Furthermore, Defendants agree to distribute letters to each manager and supervisor one (1) week prior to the mailing of settlement notice, advising them that they are not to discuss the claims process, or otherwise interfere in any respect, with the claims of any current or former employees, (opt-in Plaintiffs and/or R.23 Settlement Class Members as defined *supra*). Defendants agree that each manager will be

instructed to direct any inquiries from opt-in Plaintiffs or R.23 Settlement Class Members regarding the Settlement Notice to the Settlement Administrator.

If Plaintiff's Attorneys or Class Counsel become aware of or are informed of any alleged interference with the settlement claims process, Plaintiff's Attorneys or Class Counsel will promptly notify Defendants' counsel prior to any investigation, and counsel for both parties will jointly investigate the matter. If such allegations are verified by agreement of both parties' counsel, the Defendants' offending manager or supervisor will be disciplined. If there is a disagreement between both parties' counsel as to the whether such allegations have been verified, a summary of the investigation will be presented to Mediator Hunter Hughes for resolution. If submitted to Mr. Hughes, and he determines that any interference was not systemic but an isolated incident, his decision will be final and not subject to Court review. On the other hand, if Mr. Hughes determines that the investigation reveals systemic interference with the claims process, and there are a minimum of four (4) confirmed instances of the same, Class Counsel will have the option of bringing this matter to the Court's immediate attention.

As to Plaintiffs' Attorneys or Class Counsel's communications with R.23 Settlement Class Members, Plaintiff's Attorneys' or Class Counsel shall remain free to discuss questions relating to the settlement agreement or settlement notice.

### K.     Claims Made Procedure

With the exception of those individuals specifically identified in Ex. 2, (opt-in Plaintiffs and R.23 class member as defined *supra* at II.A.1), each Authorized Claimant must return a simple claim form, a copy of which is included as Exhibit 3, in order to receive a Settlement Payment.

To the extent that any member of the R. 23 Settlement Class does not timely submit the required claim form, chooses to opt out the settlement, or otherwise elects not to accept the

payment of their designated share of the Revised Gross Settlement Amount, their share will remain the sole and exclusive property of Defendants. This excludes Settlement Payments for Current Participants as identified in Ex. 2, whom will be entitled to the full value of their damages, and they will not be required to submit a claim form to be an Authorized Claimant. Under no circumstances will Current Participants' damages remit back to the Defendants.

**L.    Communications Regarding the Settlement, Claims Against Defendants, and the Parties to the Litigation**

**1.    Public Comment and Non-disclosure**

After the Effective Date, the parties agree that Named Plaintiff, Opt-in Plaintiffs, Current Participants and Plaintiffs' Attorneys or Class Counsel and Defendants and Defendants' counsel will not disclose the terms of the settlement or this Agreement to any third parties, except to their spouse, attorneys, tax counselors, or as required by law. If asked about the settlement or this Agreement by any third party, Named Plaintiff and Plaintiffs' Attorneys or Class Counsel, and Defendants and Defendants' counsel, will acknowledge only that: "The action was resolved on a satisfactory basis;" and/or that "[Plaintiffs or Defendants] and their counsel believe they have reached a fair and reasonable settlement of the disputed claims." For purposes of this provision, "Defendants" constitute its corporate officers and directors.

Notwithstanding the foregoing, Defendants' managers will be similarly instructed that, if asked about the settlement or this Agreement by any third party, that they should acknowledge only that: "The action was resolved on a satisfactory basis;" and/or that "[Plaintiffs or Defendants] and their counsel believe they have reached a fair and reasonable settlement of the disputed claims." In addition, Plaintiffs' Attorneys or Class Counsel shall be permitted to list the existence of the settlement on this action on their firms' websites. Plaintiff's Attorneys and/or Class Counsel agree that any reference to this settlement on their firms' websites will be done in a generic manner

and without directly or indirectly identifying any Defendant (as defined in Section II. A. 3, *supra*). Their websites may also refer members of the R. 23 Settlement Class who have questions about the settlement, or need replacement copies of materials (such as the Notice of Settlement or required claim forms) to the Settlement Administrator.

### 2. Non-Disparagement

Named Plaintiff, Settlement Class Members (including opt-ins and active participants), Class Counsel and Defendants and their Counsel will refrain from disparagement of the other. For purposes of this clause, "Defendants" constitute its corporate officers, Human Resources personnel, and restaurant managers.

### M. Service Awards

As part of the Settlement, Plaintiff will request Service Awards for the Named Plaintiff and Class Representative, Moises Enot Velasquez Monterrosa, and Opt-in Plaintiff Anyi Turcio Reyes. Defendants agree not to oppose such a request, so long as the amount of the Service Awards sought for the Named and Opt-in Plaintiffs do not exceed $7,000 and $3000, respectively.

### N. Plaintiffs' Attorneys' Fees and Litigation Expenses

Plaintiffs' Attorneys or Class Counsel may make an application to the U.S. District Court for the Eastern District of North Carolina, for an award of Plaintiffs' Attorney's Fees and an award of Plaintiffs' Litigation Expenses. The amount of the Plaintiffs' Attorney's Fees will not exceed one third of the Gross Settlement Amount. The amount of Plaintiffs' Litigation Expenses shall not exceed $20,000. *See supra* at II.A.18. Such application or applications shall be filed in connection with the Motion for Preliminary Approval of the Agreement and this settlement. Defendants will not oppose any such application for fees or costs, provided that Plaintiff's Attorneys do not seek to recover attorney's fees in excess of one third of the Gross Settlement

Amount and do not seek to recover litigation costs that do not exceed $20,000.

If the Court rules that any amounts requested by Plaintiffs' Attorneys or Class Counsel as an award of Plaintiffs' Attorney's Fees or Plaintiffs' Litigation Expenses are excessive or improper, and reduces the same, only the reduced amounts will be deemed to be Plaintiffs' Attorney's Fees and Plaintiffs' Litigation Expenses for purposes of this Agreement. Any remaining or reduced amounts shall be added to the Revised Gross Settlement Amount available for distribution to Authorized Claimants.

Payment of such Plaintiffs' Attorney's Fees and Plaintiffs' Litigation Expenses to Plaintiffs' Attorneys as set forth in this Agreement, and payment of Settlement Expenses, shall constitute full satisfaction of any and all obligations by Defendants to pay any person, attorney, or law firm (including but not limited to Plaintiffs' Attorneys or Class Counsel) for attorneys' fees, expenses, or costs (including but not limited to any fees, costs, and expenses related to any experts and/or consultants and any fees, costs, and expenses associated with mediation) incurred on behalf all members of the Settlement Classes, and shall relieve Defendants of any other claims or liability to any person for any attorneys' fees, expenses, and costs to which any person may claim to be entitled on behalf of any members of the Settlement Classes for this Litigation. Upon payment of Plaintiffs' Attorney's Fees and Plaintiffs' Litigation Expenses hereunder, and payment of Settlement Expenses, Plaintiffs' Attorneys and members of the Settlement Classes shall release Defendants from any and all claims for attorneys' fees, expenses, and costs relating to this Litigation.

Plaintiffs' Attorney's Fees and Litigation Expenses, and the Settlement Expenses, will be paid solely from the Gross Settlement Amount. In no event shall any award of Plaintiffs' Attorney's Fees and Litigation Expenses to Plaintiffs' Attorneys, or the payment of Settlement

Expenses, cause Defendants to pay more than the Gross Settlement Amount in full satisfaction of all its obligations under this Agreement.

### O. Funding of Gross Settlement Amount and Payments from Gross Settlement Amount

#### 1. Defendants' payment of the Gross Settlement Amount

Defendants will pay the Gross Settlement Amount to the Settlement Administrator within fifteen (15) calendar days after the Effective Date, where it shall be deposited and maintained in a Qualified Settlement Fund.

#### 2. Settlement Administrator's Issuance of Settlement Payments to Authorized Claimants

Within 15 calendar days after Defendants' payment of the Gross Settlement Amount is received by the Settlement Administrator, the Settlement Administrator will make Settlement Payments by U.S. Mail to each Authorized Claimant. The checks making such Settlement Payments shall include language, to be agreed to by the parties, indicating that by signing the check the Authorized Claimant acknowledges the release of claims set forth, *supra*, in Part II.I. Copies of each negotiated check showing this acknowledgment and the Authorized Claimant's signature shall be provided to Defendants by the Settlement Administrator.

Those members of the Settlement Classes who have properly and timely opted out of the settlement are not Authorized Claimants and are not entitled to a Settlement Payment. Additionally, any Settlement Class Member who is not a Named Plaintiff or Opt-in Plaintiff[10] who did not timely return a claim form, a copy of which is included as Exhibit 3, is not an Authorized Claimant and is not entitled to any Settlement Payments. The Settlement Administrator's

---

[10] Pursuant to II.A.1, Named, opt-in and R.23 class members who were specifically identified do not need to send back a simple claim form to be considered Authorized Claimants.

determination of whether a member of the Settlement Classes is an Authorized Claimant will be conclusive and binding on all Settlement Class Members, subject to the dispute resolution provisions of this Agreement as set forth in Part II.P, *infra*. Regardless of whether or not a member of the Settlement Class is an Authorized Claimant, the Settlement Administrator shall send each such individual a copy of the Court's order granting final approval to this settlement agreement by U.S. Mail, at the same time that it issues Settlement Payments to Authorized Claimants.

Neither Defendants, counsel for Defendants, Plaintiffs' Attorneys or Class Counsel, Plaintiffs, nor the Settlement Administrator shall have any liability for lost or stolen settlement checks, for forged signatures on settlement checks, or for unauthorized negotiation of settlement checks. Without limiting the foregoing, in the event an individual entitled to receive a Settlement Payment notifies the Settlement Administrator that he or she believes that a settlement check has been lost or stolen, the Settlement Administrator shall immediately stop payment on such check. If the settlement check in question has not been negotiated prior to the stop payment order, the Settlement Administrator will issue a replacement check.

### 3. Settlement Administrator's Payment of Plaintiffs' Attorney's Fees and Plaintiffs' Litigation Expenses

Plaintiffs' Attorney's Fees and Plaintiffs' Litigation Expenses, as authorized by the Court, will be paid by the Settlement Administrator from the Gross Settlement Amount within five calendar days after receipt of the Gross Settlement Amount, or within five calendar days of a court order in this Litigation awarding Plaintiffs' Attorney's Fees and Plaintiffs' Litigation Expenses to Plaintiffs' Attorneys, whichever is later. Prior to payment of any Plaintiffs' Attorney's Fees or Plaintiffs' Litigation Expenses to Plaintiffs' Attorneys, Plaintiffs' Attorneys or Class Counsel shall inform the Settlement Administrator of the proper apportionment of the Plaintiffs' Attorney's Fees and Plaintiffs' Litigation Expenses authorized by the court between their respective firms.

The Settlement Administrator will issue an I.R.S. Form 1099 to each of Plaintiffs' Attorneys firms for the payments and each of Plaintiffs' Attorneys firms will provide the Settlement Administrator with completed I.R.S. Form W-9s.

### 4.     Settlement Administrator's Payment of Service Awards

Service Awards for the Named Plaintiff and for Opt-In Plaintiff Moises Enot Velasquez Monterrosa and Anyi Turcios Reyes respectively, will be paid by the Settlement Administrator from the Gross Settlement Amount within five calendar days after receipt of the Gross Settlement Amount, or within five calendar days of a court order in this Litigation authorizing such Service Awards, whichever is later. The Settlement Administrator will pay the Service Awards ordered by the Court directly to the individuals ordered by the Court to receive such payments.

### 5.     Payment of the Settlement Administrator's Expenses

The charges and costs incurred by the Settlement Administrator in performing its duties under this Agreement will be paid solely from the Gross Settlement Amount. The Settlement Administrator shall determine the final amount of such charges and costs prior to mailing the Notice of Settlement. Disputes of any kind relating to the Settlement Administrator will be resolved pursuant to the dispute resolution procedures set forth in Part II.P, *infra*, if they cannot be resolved informally by the parties. The Settlement Administrator will regularly report to the parties, in written form, the substance of the work performed, including all amounts paid under this Agreement.

### P.     Dispute Procedure

Except as otherwise set forth herein (*see* Parts II.Z & II.DD.1, *infra*), in the event of a dispute concerning the proper interpretation of the Agreement, the enforcement of this Agreement, the parties' rights or obligations under the Agreement, or any alleged breach of the

terms of the Agreement, notice must be mailed to counsel for the opposing party as provided in Part II.X, *infra*. After receipt of such notice, the parties shall meet and confer in a good faith attempt to resolve the matter for 10 calendar days. In the event those efforts are unsuccessful, and one or more of the parties attempts to institute any legal action or other proceeding against any other party or parties to enforce the provisions of this Agreement or to declare rights and/or obligations under this Agreement, each party shall bear their own respective expenses for attorneys' fees, expenses, and costs.

### Q. Assignment of Claims

Defendants and its counsel, and Plaintiffs' Attorneys or Class Counsel, Named Plaintiff, and Opt-in Plaintiff, for themselves and on behalf of all Opt-in Plaintiffs and all other members of the Settlement Classes, represent, covenant and warrant that they have not directly or indirectly, assigned or transferred to any person or entity any portion of any liability, claim, demand, action, cause of action, or rights herein released and discharged except as set forth herein.

The parties further agree that this Agreement will be binding upon, and inure to the benefit of, the parties, and their respective heirs, trustees, executors, successors, legal administrators, and assigns.

### R. Injunctive Relief

Defendants agree to perform semi-annual self-audits for a two (2) year period following the execution of the Settlement Agreement. Defendants agree to provide appropriate training to every restaurant manager and supervisor, to ensure that every manager and supervisor fully understands and complies with the Fair Labor Standards Act's ("FLSA") and North Carolina Wage and Hour Act's ("NCWHA") compensation and recordkeeping requirements.

### S. Construction and Interpretation

The parties hereto agree that the terms and conditions of the Agreement are the result of lengthy, intensive, arms-length negotiations among the parties, through counsel, and the Agreement shall not be construed in favor of or against any party by reason of the extent to which any party or his, her, or its counsel participated in the drafting of the Agreement.

Paragraph and section titles are inserted as a matter of convenience for reference, and in no way define, limit, extend, or describe the scope of this Agreement or an of its provisions. With the exception of Part I, *supra*, each term of this Agreement is contractual and not merely a recital.

All exhibits attached to the Agreement, and referenced herein, are incorporated into the Agreement by such references and are a material part of this Agreement. Any notice or other exhibit that requires approval of the Court must be approved without material alteration from its current form in order for this Agreement to become effective.

This Agreement shall be governed by and enforced in accordance with the laws of the State of North Carolina.

### T. Modification

This Agreement, and any of its parts, may be amended, modified, or waived only by an express written instrument signed by all signatories below or their successors-in-interest.

### U. Counterparts

This Agreement may be executed in one or more counterparts. All executed counterparts and each of them will be deemed to be one and the same instrument. Any executed counterpart will be admissible in evidence to prove the existence and contents of this Agreement.

### V. Waiver of Right to Object

By signing this Agreement, Named Plaintiff Moises Enot Velasquez Monterrosa agrees to

be bound by its terms.    Likewise, Defendants agree to be bound by the terms of this settlement and agree not to object to any of the terms of the settlement.  Non-compliance by the Named Plaintiff or Defendants with this paragraph will be void and have no force and effect.

**W.     Notices, Demands, and Communications Concerning the Settlement**

Unless otherwise specifically provided herein, all notices, demands, or other communications given hereunder shall be in writing and shall be deemed to have been duly given as of the third business day after mailing by First Class U.S. Mail, addressed as follows:

To Named Plaintiff, Opt-in Plaintiffs, R.23 class members, or members of the Settlement Classes, and/or Plaintiffs' Attorneys or Class Counsel:

Gilda A. Hernandez, Esq.
THE LAW OFFICES OF GILDA A. HERNANDEZ, PLLC
1020 SOUTHHILL DRIVE, SUITE 130
Cary, NC 27513
ghernandez@gildahernandezlaw.com

To Defendants and/or Counsel for Defendants:

Josh Krasner, Esq.
BARRETT LAW OFFICES, PLLC
5 W. Hargett Street, Suite 910
Raleigh, NC 27601
jkrasner@barrettlawoffices.com

**X.     Form and Content Resolution**

The parties agree they must reach agreement on the form and content of the Agreement and its exhibits, as well as: Plaintiffs' unopposed motion for preliminary approval of the settlement and authorization to send notice to members of the Settlement Classes concerning the settlement and the final fairness hearing; a proposed order granting the same unopposed motion; the notices to be sent to members of the Settlement Classes concerning the; Plaintiffs' unopposed motion for final approval of the settlement; and a proposed order granting the same unopposed motion.

The parties agree that in the event they dispute and reach impasse as to any of the settlement

terms, or the form and content of any documents listed in the preceding paragraph, or any other document necessary to effectuate the Agreement, that cannot be resolved among the parties themselves, or, where appropriate, with the assistance of the Settlement Administrator, any and all such disputes may be submitted to mediator Hunter R. Hughes for final and binding resolution. The cost incurred for the services of Mr. Hughes shall be paid entirely from the Gross Settlement Amount, and the parties shall bear their own respective expenses for attorneys' fees, expenses, and costs.

### Y.  Authorization

Plaintiffs' Attorneys or Class Counsel warrant and represent that they are fully authorized by Plaintiffs, and the attorneys for Defendants warrant and represent that they are fully authorized by Defendants, to take all appropriate action required or permitted by this Agreement.  The parties agree to fully cooperate with each other to accomplish the terms of the settlement and this Agreement, including, but not limited to, execution of such documents and to take such other action as may reasonably be necessary to implement the terms of the Agreement.  The parties to the Agreement shall use their best efforts, including all efforts contemplated by the Agreement and any other efforts that may become necessary by order of the U.S. District Court of the Eastern District of North Carolina, or otherwise, to effectuate the Agreement and the terms set forth herein. If the parties are unable to reach agreement on the form or content of any document needed to implement this Agreement, the parties agree, in accordance with Part II.X, *supra*, to seek the assistance of mediator Hunter R. Hughes.

### Z.  Dismissal

Upon entry of a final order approving this Agreement, Plaintiffs agree to execute all documents necessary to dismiss with prejudice any and all claims raised against Defendants in the

Litigation. But if an appeal leads to reversal of approval of this Agreement, then the parties agree that the claims will be reinstated as if never dismissed as described in Part II.BB.3(c).

## AA. Reasonableness of Settlement

The parties believe that this is a fair, reasonable, and adequate settlement and have arrived at this settlement through arms-length negotiations, taking into account all relevant factors, present and potential.

## BB. Termination of the Settlement Agreement

### 1. Grounds for Settlement Termination:

This Agreement may be terminated on the following grounds:

(a.)   Plaintiffs' Attorneys or Class Counsel or Defendants' counsel may terminate the Agreement if the Court declines to enter an Order Granting Preliminary Approval, an order granting final approval to this settlement, or judgment in substantially the same form as that submitted by the parties, or the Agreement does not become final for any other reason, or a Court of Appeals reverses the entry of an order granting final approval to this settlement or a final judgment in this Litigation following such an order, provided that the parties agree to work cooperatively and in good faith, including mediating unresolved differences with mediator Hunter R. Hughes for a period of fourteen (14) calendar days, to address and resolve any concerns identified by the Court in declining to enter an Order Granting Preliminary Approval, an order granting final approval to this settlement, or judgment in the form submitted by the parties.

(b.)   In the event that at least ten (10) percent or more of the members of the Settlement Class who are not Named or Opt-in Plaintiffs exercise their rights to opt out of the settlement and this Agreement, as described in Part II.J.3, *supra*, Defendants shall have the right, notwithstanding any other provisions of this Agreement, to withdraw from this Agreement, whereupon the

Agreement will be null and void for all purposes and may not be used or introduced in the Litigation or any other proceeding of any kind. Alternatively, in the event that the total sum of the claims of eligible members of the R.23 Settlement Class, who are not Named or Opt-in Plaintiffs, and who exercise their rights to opt out of the settlement is equal to $75,000, Defendants shall have the right, notwithstanding any other provisions of the Settlement Agreement, to withdraw from the Settlement Agreement, whereupon the Settlement Agreement will be null and void for purposes, and may not be used or introduced in the litigation.

**2.     Procedures for Termination:**

To terminate this Agreement on one of the grounds specified above, the terminating Counsel (*i.e*., Plaintiffs' Attorneys or counsel for Defendants) shall give written notice to the opposing counsel no later than:

(a.)     15 business days after the Court acts; or

(b.)     15 business days after Defendants receives notice from the Settlement Administrator that the requisite number of members of the Settlement Classes who are not Opt-in Plaintiffs have timely requested exclusion from the settlement.

**3.     Effect of Termination:**

In the event that this Agreement is canceled, rescinded, terminated, voided, or nullified, however that may occur, or the settlement of the Litigation is barred by operation of the law, is invalidated, is not approved or otherwise is ordered not to be carried out by any court:

(a.)     The Agreement shall be terminated and shall have no force or effect, and no party shall be bound by any of its terms;

(b.)     In the event the Agreement is terminated, Defendants shall have no obligation to make any payments to any Plaintiff, any member of the Settlement Classes, or

Plaintiffs' Attorneys, except that the parties shall be jointly responsible (*i.e.*, each party will be responsible for 50% of fees due) for paying the Settlement Administrator for services rendered up to the date the Settlement Administrator is notified that the Agreement has been terminated;

(c.) The Agreement and all negotiations, statements, and proceedings relating thereto, shall be without prejudice to the rights of any of the parties, all of whom shall be restored to their respective positions in the action prior to the settlement;

(d.) Neither this Agreement, nor any ancillary documents, actions, statements, or filings in furtherance of settlement (including all matters associated with the mediation) shall be admissible or offered into evidence in the Litigation or any other action for any purpose whatsoever.

## CC. Integration Clause

After this Agreement is fully executed by all parties, it will constitute the entire Agreement of the parties and fully supersedes any and all prior agreements or understandings, written or oral, between the parties pertaining to the subject matter hereof, including, but not limited to, any and all written and oral agreements reached between the parties during the mediation that resulted in this Agreement.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

IN WITNESS WHEREOF, the undersigned have duly executed this Agreement:

Dated: 7/6/2017

By _____
Moises Velasquez
Plaintiff

Dated: 7/6/2017

By _____
Gilda A. Hernandez, Esq.
LAW OFFICES OF GILDA A. HERNANDEZ, PLLC
Attorney for Plaintiffs

Dated: 7/6/2017

By _____
J. Derek Braziel, Esq.
LEE & BRAZIEL, LLP
Attorney for Plaintiffs

Dated: 07/07/17

By _____
Juan Macias,
President on behalf of all Defendants, Mi Casita
Restaurants, a.k.a. Mi Casita Restaurante Mexicano;
JM Macias, Inc.; Macias Enterprise LLC; MC
Management LLC; Mexican Foods Express, Inc.;
Piramide Mexican Foods, Inc.; Mi Casita Restaurant

Dated: 07/07/17

By _____
Jesus Macias,
On behalf of all Defendants, Mi Casita Restaurants,
a.k.a. Mi Casita Restaurante Mexicano; JM Macias,
Inc.; Macias Enterprise LLC; MC Management
LLC; Mexican Foods Express, Inc.; Piramide
Mexican Foods, Inc.; Mi Casita Restaurant

Dated: 7/7/17

By _____
Joshua M. Krasner, Esq.
BARRETT LAW OFFICES, PLLC
Attorneys for all Defendants, Mi Casita Restaurants,
a.k.a. Mi Casita Restaurante Mexicano; JM Macias,
Inc.; Macias Enterprise LLC; MC Management LLC;
Mexican Foods Express, Inc.; Piramide Mexican
Foods, Inc.; Mi Casita Restaurant

42

# EXHIBIT
# A – 1
# FLSA AND R.
# 23
# NOTICES

# FLSA CLASS NOTICE

# UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NORTH CAROLINA - WESTERN DIVISION
## VELASQUEZ MONTERROSA V. MI CASITA RESTAURANTS ET AL.
### Case No.: 5:14-CV-448-BO

**IF YOU ARE A CURRENT OR FORMER EMPLOYEE WHO WORKED FOR ANY ONE OF THE 17 MI CASITA RESTAURANTS FULL-TIME AS A COOK, DISHWASHER, CHIP OR DRINK RUNNER, BUSSER, HOST OR HOSTESS, OR SIMILAR POSITION AND BELIEVE THAT YOU WERE NOT PAID FOR ALL OF YOUR HOURS WORKED, IT IS IMPORTANT THAT YOU READ THIS NOTICE OF A PROPOSED SETTLEMENT.**

- This is a Court-authorized notice. This is not a solicitation from a lawyer.

- A former cook has sued Mi Casita Restaurants Inc., alleging that employees were not paid correctly for all hours worked. The Court has permitted this lawsuit to proceed on a collective/class action basis.

- The Court has not decided whether Mi Casita did anything wrong. However, the parties have proposed a settlement of this case and the Court has authorized notice of that proposed settlement to individuals who may be eligible to participate in it. Mi Casita Restaurants' and/or Plaintiff's records indicate you are entitled to receive notice and that you may be entitled to a monetary award under the settlement.

- ***Your legal rights are affected whether you act or not. Your options are explained in this notice. Please read it carefully.***
  **YOU MUST RETURN THE ENCLOSED CLAIM FORM BY [MAIL + 60] TO RECEIVE A PAYMENT FROM THIS SETTLEMENT**
- **[MAIL + 60]** is also the deadline to object to the settlement

## SUMMARY

The settlement provides a cash payment to certain current and former employees of Mi Casita Restaurants, Inc. who worked at any one of their 17 Restaurant locations as full-time Cooks, Dishwashers, Chip or Drink Runners, Bussers, Hosts or Hostesses or in a similar position, and who may not have been paid for all of their hours worked. The amount of the payments to each settlement participant will vary.

| HERE ARE YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **RECEIVE A SETTLEMENT PAYMENT** | **If you would like to receive a settlement payment if the Court approves the proposed settlement, you need not do anything, as you have already sent back your consent form to participate in this action**, as explained below in Section 13. However, anyone who receives a settlement payment will also be bound by the release of claims explained below in Section 9. |

| **OBJECT** | You can write the Court about why you do not like the settlement. |
|---|---|

- These rights and options — and the deadlines to exercise them — are explained in this notice.

- The Court in charge of this case still has to decide whether to approve the settlement. Settlement payments will be made if the Court approves the settlement and after any potential appeals are resolved.

# BASIC INFORMATION

| 1. | Why did I get this notice? |
|---|---|

You have received this notice package because records indicate you worked for Mi Casita Restaurants, Inc. as a full-time Cook, Dishwasher, Chip or Drink Runner, Busser, Host or Hostess or in a similar position, and may not have been paid for all of your hours worked, and you previously submitted a written consent requesting to participate in this lawsuit as a party plaintiff.

This notice is designed to advise you of your automatic participation in this settlement. The Court sent you this notice because you have a right to know about the proposed settlement of this lawsuit, and about all of your options, before the Court decides whether to approve the settlement. If the Court approves the settlement, and after any potential objections and appeals are resolved, the individual settlement payments provided for by the settlement will be made.

This package explains the lawsuit, the settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.

The Court in charge of the lawsuit is the United States District Court for the Eastern District of North Carolina. The judge presiding over the action is United States District Judge Terrence W. Boyle. The case is *Velasquez-Monterrosa, et al., v. Mi Casita Restaurants, Inc.*, et al., No. 5:14-CV-00448-(BO). The person who sued is the "plaintiff," and the company he sued, Mi Casita Restaurants, Inc., et al., are the "defendants."

| 2. | What is this lawsuit about? |
|---|---|

Plaintiff Enot Velasquez Monterrosa worked as a cook in one of defendants' 17 Mi Casita Restaurant, Inc. locations. He asserts that Mi Casita Restaurants, Inc., required him and all others similarly situated to work without reporting all hours worked, and did not pay them properly for all hours worked over 40 per week at time and one-half, thus, denying them full pay for all hours worked, including overtime. Plaintiff alleges Mi Casitas Restaurants Inc., violated the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the laws of the North Carolina Wage and Hour Act ("NCWHA") N.C. Gen. Stat. § 95-25.1, *et seq.* Based on these allegations, plaintiff seeks to recover unpaid wages, liquidated damages, pre- and post-judgment interest, and attorneys' fees and costs.

Mi Casita Restaurants, Inc. denies each and all of plaintiff's allegations, and expressly denies charges of wrongdoing or liability in this lawsuit. To the contrary, Mi Casita Restaurants, Inc. contends it acted in compliance with all applicable state and federal laws, and paid its employees all wages due. Accordingly, Mi Casita Restaurants, Inc. believes plaintiff's claims for unpaid wages, liquidated damages, pre- and post-judgment interest, and attorneys' fees and costs are without merit. Mi Casita also denies that the asserted claims are appropriate for collective or class action treatment.

| 3. | What is a "collective action," what is a "class action," and who is involved? |
|---|---|

Under the FLSA, a group of similarly situated individuals may seek to recover unpaid overtime wages and related

damages in what is known as a "collective action." In a collective action, those plaintiffs who file consents, or "opt in" to the lawsuit, become plaintiffs. They are sometimes referred to as "opt-in plaintiffs." The individuals who initiate the lawsuit, the "named plaintiffs," bring the action on behalf of themselves and other people they believe have similar claims who may later choose to join the action.

This type of "opt-in" collective action is different from the better-known "class action," in which no consent is needed to join. In a traditional class action, the "named plaintiffs" sue on behalf of all individuals within a defined class. Individuals who meet the class definition, the "class members," are automatically members of that class, unless they file a written request with the Court specifically asking to be excluded.

The named plaintiff here – Enot Velasquez Monterrosa – filed this case as both a collective action and a class action. The collective action under federal law includes full-time Cooks, Dishwashers, Chip or Drink Runners, Bussers, Hosts or Hostesses, or similar positions that were not paid for all of their hours worked and already opted in to this case by filing a written consent with the Court. Additionally, the named plaintiff sought to bring a class action under North Carolina state law on behalf of a class of such full-time employees who worked in North Carolina between August 8, 2014 and **[DATE OF PRELIMINARY APPROVAL]**.

In both types of cases, the court certifies plaintiffs' claims for class and/or collective treatment, and the same court resolves the issues in the case for all opt-in plaintiffs and class members. Here, United State District Judge Terrence W. Boyle is in charge of this collective/class action. The Court has already granted certification to plaintiff's collective-action or class-action claims in the lawsuit, and the Court authorized notice be sent to opt-in plaintiffs and class members while the Court decides whether to grant the parties final approval of the settlement.

| **4.** | **Why is there a settlement?** |
| --- | --- |

Litigation is risky, and neither side can predict the outcome with certainty. This lawsuit has been heavily litigated for a significant period of time (approximately three years), and it would likely be several more years before any final resolution could be reached through litigation.

Given these factors, the named plaintiff/class representative and his counsel concluded, after careful consideration of all of the facts and circumstances, that the proposed settlement agreed to by the parties, is fair, reasonable, and adequate, and is in the best interests of the opt-in plaintiffs and class members. This settlement avoids the costs and inconvenience associated with the discovery process, as well as the costs and risks associated with dispositive motions and trial, while providing cash benefits to opt-in plaintiffs and class members.

Mi Casita Restaurants, Inc. expressly denies any liability or wrongdoing, and contends it has complied with the applicable federal and state laws at all times. By entering into the settlement agreement, Mi Casita Restaurants, Inc. has not admitted any liability or wrongdoing, and expressly denies the same. However, like the named plaintiff and his counsel, Mi Casita Restaurants, Inc. recognizes the cost and delay associated with further litigation, and the risk inherent in all lawsuits. As such, Mi Casita Restaurants, Inc. agreed to enter into a settlement to avoid the costs, risk, and disruption of ongoing litigation, and to settle the outstanding claims against it.

The Court has not decided in favor of plaintiff or Mi Casita Restaurants, Inc. Instead, at a mediation, the parties agreed to settle the case instead of proceeding further in litigation. The Court has, however, granted preliminary approval to the parties' proposed settlement.

# WHO IS IN THE SETTLEMENT

| **5.** | **How do I know if I am part of the settlement?** |
| --- | --- |

(a) You are eligible to participate in the settlement if you were employed by Mi Casita Restaurants, Inc. as a full-time Cook, Dishwasher, Chip or Drink Runner, Busser, Host or Hostess, or similar position, in one of the company's 17 restaurant locations; were not paid for all of your hours worked; and previously submitted a written consent form requesting to join the FLSA collective action in *Velasquez-Monterrosa, et al., v. Mi Casita Restaurants, Inc.*, *et al.*, No. 5:14-CV-00448-(BO).  If you were mailed this notice, Mi Casita's and plaintiff's attorneys' records indicate you previously submitted such a written consent.

(b) Additionally, individuals who did not previously submit written consents to join the FLSA collective action in this lawsuit are eligible to participate in the proposed settlement if they were employed by Mi Casita Restaurants, Inc. as a full-time Cook, Dishwasher, Chip or Drink Runner, Busser, Host or Hostess, or similar position, in one of the companies' 17 restaurant locations, and were not paid for all of their hours worked, AND:

    (i) Worked in the State of North Carolina between August 8, 2012, and **[DATE OF PRELIMINARY APPROVAL]**.

Such individuals, who did not previously submit written consents to join the FLSA collective action, will receive separate Court-authorized notices.

| **6.** | **Are there exceptions to being included?** |
| --- | --- |

All opt-in plaintiffs who previously submitted written consent forms requesting to join the FLSA collective action in this lawsuit have agreed to be bound by any settlement, and are included in the settlement, unless they seek and receive leave from the Court to be excluded from it.  All other class members, who are part of the proposed settlement solely because they meet the definition above, may request exclusion from the settlement.  Any such individual who timely requests exclusion will receive no settlement payment, but will not be bound by the release of claims explained in Section 9 below.

# THE PROPOSED SETTLEMENT BENEFITS – WHAT YOU GET

| **7.** | **What does the proposed settlement provide?** |
| --- | --- |

Mi Casita Restaurants, Inc. has agreed to pay a total settlement amount of $2,500,000 (the "gross settlement amount") in full settlement of the claims of all opt-in plaintiffs and class members.  The gross settlement amount includes all payments to individual opt-in plaintiffs and class members, plaintiffs' attorney's fees and litigation expenses, service awards to the named plaintiff/class representative and first opt-in plaintiff to participate in the action, costs of notice of the settlement, and costs of administration of the settlement.  The amount remaining after the payment to individual opt-in plaintiffs, payment of class counsel's attorney's fees and expenses, service awards, and costs of settlement administration and notice is referred to as the "revised gross settlement amount." The revised gross settlement amount, less required tax withholdings, will be distributed to individuals who are members of the settlement class or class members (*i.e.*, current and former Mi Casita Restaurant, Inc.'s employees from North Carolina who meet the definition in Section 5(b) above). The settlement distribution process will be administered by an independent settlement administrator (the "settlement administrator") approved by the Court.

| **8.** | **What can I get from the proposed settlement?** |
| --- | --- |

If the Court approves the proposed settlement, you will receive a settlement check. The exact amount of each individual's payment will depend on a number of factors, including, among others, the number of weeks you worked for Mi Casita Restaurants, Inc. during the relevant time period, the hours you reported working each week, and your effective regular rate of pay.

Each final settlement payment will be separated into two equal amounts: fifty percent (50%) will be allocated to the claims asserted in the lawsuit for unpaid overtime and other wage-related damages, and fifty percent (50%) will be allocated to the claims asserted in the lawsuit for liquidated damages and other relief. The portion allocated to claims asserted in this lawsuit for unpaid overtime and other wage-related damages will be subject to all authorized or required deductions, just as if it were a regular paycheck, including, but not limited to: local, state and federal taxes, garnishments, child support orders, and tax levies/liens. The portion allocated to claims for unpaid overtime and other claims for unpaid wages will be reported on an I.R.S. Form W-2. The portion allocated to liquidated damages and other relief will be reported as non-wage income and reported on an I.R.S. Form 1099. You should consult a tax professional about tax treatment of these payments.

| 9. | What am I giving up in the settlement? |
|----|----------------------------------------|

The Court's orders in this lawsuit will bind all individuals participating in the settlement and you will be barred from bringing any action against Mi Casita Restaurant, Inc., et. al. (including its officers, directors, shareholders, employees, agents, principals, heirs, assigns, representatives, accountants, auditors, consultants, attorneys, fiduciaries, employee benefits plans, insurers, and their respective successors and predecessors in interests, subsidiaries, affiliates, parents, divisions, partners, and affiliated organizations) that relate to hours worked or the payment of wages, during the relevant time period, except to the extent that any such claims may not be waived as a matter of law.

This release of claims against Mi Casita Restaurant, Inc. specifically includes, without limitation:

> (i) any and all claims asserted in the Litigation; (ii) any and all claims for unpaid wages, minimum wages, overtime, late payment of wages, retaliation for complaining about wages or for asserting wage-related claims and/or any other claims of any kind, or any other wage-related or recordkeeping-related claims, damages or relief of any kind including but not limited to the federal FLSA, 29 U.S.C. § 201, *et seq.*, any and all claims under North Carolina state law, including but not limited to the North Carolina Wage and Hour Act, N.C. Gen. Stat. § 95-25.1, *et seq.*, (iii) any and all claims under state and federal law for earned wages, overtime, and/or missed or interrupted meal breaks, including such claims for breach of express contract or labor agreement, implied contract, money had and received in *assumpsit*, *quantum meruit*/unjust enrichment, fraud, negligent misrepresentation, equitable estoppel, promissory estoppel, conversion, and failure to keep accurate records; (iv) any and all claims pursuant to or derived from Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et seq.*, to the extent such ERISA claims are premised on an alleged failure to credit any Settlement Class Member's account and/or benefits for all hours worked or all compensation paid or entitled to be paid, but excluding any potential ERISA claim that is not based on an alleged wage and hour violation; and (v) any and all wage-and-hour laws or wage-related claims of any kind under other laws, including but not limited to any and all such claims pursuant to other federal, local, or other states' laws and/or regulations.

This release has no application to any claim by any Class Member for discrimination in violation of state or federal law, or any claim of any type arising on or after the date the settlement has received final approval from the U.S. District Court for the Eastern District of North Carolina, or any other court taking jurisdiction over this Litigation.

This release of claims includes past and present matters, disputes, claims, demands, rights, liabilities, expenses, damages, losses of any kind, and causes of action, whether at common law, pursuant to statute, ordinance, or regulation, in equity or otherwise, and whether arising under federal, state, or other applicable law, which you have or might have, known or unknown, asserted or unasserted, of any kind whatsoever, that relate to hours worked or the payment of wages, except to the extent that any such claim may not be waived as a matter of law, and shall extend to any such claims that arose at any time up to and including the date this settlement has received final approval from the Court, except with respect to claims of retaliation, which shall extend to any such claims that arose at any time up to and including **[DATE OF PRELIMINARY APPROVAL]**.

---

**10.    Since I have already submitted an opt-in form, must I submit a required claim form to receive a payment?**

---

**No. Because you are already a plaintiff in this action by previously submitting a consent form, no claim form is required to be eligible for a payment**. The settlement agreement contains a release of legal claims. If the proposed settlement agreement becomes final then you will be releasing Mi Casita Restaurants, Inc., et al. (and certain related people and entities) from all of the claims described in Section 9 above. This means you will no longer be able to sue Mi Casita Restaurants, Inc., et al., for any of those claims, or to continue with a legal action, or be part of any other legal action against Mi Casita Restaurants, Inc., et al., for any of those claims, provided they arose during, and not after, **[DATE OF PRELIMINARY APPROVAL]**.

---

**11.    Does the named plaintiff/class representative receive any additional payment?**

---

Yes, but these amounts are subject to Court-approval. Plaintiff Enot Velasquez Monterrosa will ask the Court to approve payments of $7,000 and $3,000 for his and opt-in Plaintiff, Anyi Yesenia Turcios Reyes' original involvement in the lawsuit for the benefit of the members of the settlement classes, and for the broader release they will provide. The Court has not yet ruled on whether it will award these amounts. The Court may deny these requests or award less than this amount. The Court will make a determination on the reasonableness of these requests at a later date.

---

**12.    What happens to proposed settlement payments that are not claimed?**

---

Subject to Court approval, for those opt-in plaintiffs who have already submitted their consent forms, their amounts will NOT, under any circumstances, go back to Mi Casita, Restaurants, Inc., et al. However, for those individuals who meet the definition of section 5(b) above and are authorized by the settlement agreement to receive a monetary payment, but do not timely or properly submit the required claim form, opt out the settlement, or otherwise elect not to accept the payment of their designated share of the revised gross settlement amount, their share will remain the property of Mi Casita Restaurants, Inc., et al.

# HOW YOU GET A PAYMENT

---

**13.    How can I get a payment?**

---

**Since you have already opted into the action by submitting a consent form to participate in this action, in order to receive a settlement payment, you need NOT do anything**. However, if your contact information has changed or you anticipate that it will change, we ask that you please provide any new contact information by completing and returning the enclosed form to the settlement administrator by U.S. Mail in the postage pre-paid envelope included with this notice, by fax ((\*\*\*) \*\*\*-\*\*\*\*), or by e-mail (e-mail address).

For timely receipt of your settlement payment, please provide any updated contact information to the settlement administrator by U.S. Mail, fax, or e-mail, and preferably no later than **[MAIL DATE + 60]**.

| 14. | When would I get my payment? |
|-----|------------------------------|

If you are eligible to participate in the settlement because you have previously submitted your consent form to participate in this action and timely provide updated contact information as described in Section 13 above, you will be sent a settlement check approximately 22 days after the effective date of the settlement. Before the settlement is effective, however, settlement class members must be given time to object to the settlement or opt-out, the Court must hold a hearing to consider the fairness of the settlement and grant final approval of the settlement, and any appeals of the court's order granting final approval must be resolved. Please be patient.

# EXCLUDING YOURSELF FROM THE SETTLEMENT

| 15. | Can I decide not to participate in the settlement? |
|-----|----------------------------------------------------|

Not without prior Court approval. Opt-in plaintiffs who previously submitted a written consent form requesting to join the FLSA collective action in this lawsuit agreed to be bound by any settlement of the case.

| 16. | If I participate in the settlement, can I sue this defendant for the same thing later? |
|-----|---------------------------------------------------------------------------------------|

No. Unless you request and receive the Court's permission to exclude yourself from this lawsuit, you give up any right to sue Mi Casita Restaurant, Inc., for the claims that this settlement resolves, which are set forth in Section 9 above. If you have a pending lawsuit asserting the claims resolved by this settlement, speak to your lawyer in the pending lawsuit immediately. You must exclude yourself from this settlement to continue your own lawsuit against Mi Casitas Restaurant Inc. regarding the claims resolved by this settlement.

| 17. | If I receive the Court's permission to exclude myself, can I get money from this settlement? |
|-----|---------------------------------------------------------------------------------------------|

No.

# THE LAWYERS REPRESENTING YOU

| 18. | Do I have a lawyer in this case? |
|-----|----------------------------------|

Opt-in plaintiffs and class members are represented in this case by the following attorneys and law firms:

| | |
|---|---|
| Gilda Adriana Hernandez, Esq.<br>Michael B. Cohen, Esq.<br>THE LAW OFFICES OF GILDA A.<br>  HERNANDEZ, PLLC<br>1020 Southhill Drive, Suite 130<br>Cary, NC 27513<br>(919) 741-8693<br>(99) 869-1853 Fax<br>www.gildahernandezlaw.com<br>snelson@gildahernandezlaw.com | Derek J. Braziel, Esq.<br>LEE & BRAZIEL, LLP.<br>1801 N. Lamar St.<br>Suite 325<br>Dallas, TX 75202<br>(214) 749-1400<br>(214) 749-1010 Fax<br>jdbraziel@l-b-law.com |

The Court decided that these lawyers and law firms are qualified to represent the settlement class members in this case. These lawyers are called "class counsel." You do not need to hire your own lawyer because class counsel is working on your behalf in this action. However, should you choose to retain your own lawyer, you must do so at your own expense.

| **19.** | **How will the lawyers be paid?** |
|---|---|

Class Counsel will ask the Court to approve payment of up to one-third or 33.33% of the gross settlement amount (i.e., up to $833,333.33) to them for attorneys' fees. These fees would compensate Class Counsel for investigating the facts, litigating the case, negotiating the settlement, and additional work involved in implementing the settlement. Class Counsel will also ask the Court to approve payment of their out-of-pocket costs of no more than $20,000. The Court has not yet ruled on class counsel's request for an award of attorneys' fees and costs. The Court may award less than the amounts class counsel request. The Court will make a determination on the reasonableness of class counsel's application at a later date.

# OBJECTING TO THE SETTLEMENT

| **20.** | **How do I object/tell the Court that I do not like the proposed settlement?** |
|---|---|

If you are an opt-in plaintiff, or a member of the settlement class who has not requested exclusion from the settlement, you may object to the settlement if you do not agree with all or some part of it. To do so, you must file with the Court, and serve on counsel for the parties, a written statement giving the reasons why you object to the proposed settlement. Any such objections to the approval of the proposed settlement should be labeled at the top with the name and case number of this lawsuit ("*Velasquez-Monterrosa, et al., v. Mi Casita Restaurants, Inc.*, *et al.*, No. 5:14-CV-00448-(BO)"), and must include: (i) your full name, address, telephone number, the dates of your employment with Mi Casita Restaurants, Inc., and the Mi Casita Restaurants, Inc. location(s) where you worked; and (ii) each specific reason for your objection, including any legal or evidentiary support you have for your objection.

You must mail copies of the objection to the Court, class counsel, and counsel for Mi Casita Restaurants, Inc. (addresses below), postmarked no later than **[MAIL DATE + 60]**:

THE COURT
Clerk of Court
U.S. District Court for the Eastern District of North Carolina
Terry Sanford Federal Building and United States Courthouse
310 New Bern Avenue
Raleigh, NC 27601

CLASS COUNSEL
Gilda Adriana Hernandez, Esq.
THE LAW OFFICES OF GILDA A. HERNANDEZ, PLLC
1020 Southhill Drive, Suite 130
Cary, NC 27513

COUNSEL FOR MI CASITAS RESTAURANT INC.
Joshua Krasner, Esq.
BARRETT LAW OFFICES, PLLC

5 W. Hargett Street, Suite 910
Raleigh, NC 27601

You may also ask the Court for permission to speak at the fairness hearing, as described below in Section 25, if you submit a timely objection.

| 21. | **What happens if the Court rejects my objection?** |
|---|---|

The Court will consider any objections that are timely filed. This does not mean, however, that the Court will necessarily take action based on any objection. If the Court rejects your objection, you will still be bound by the terms of the settlement and the release of claims explained in Section 9 above.

If you intend to object to the settlement, and the Court approves the settlement despite your objections, you will still receive a settlement payment.

| 22. | **What's the difference between objecting and asking the Court to exclude me?** |
|---|---|

Objecting is simply telling the Court you do not like something about the settlement. You can object only if you stay in the settlement. If you ask the Court to exclude you from this lawsuit, you are telling the Court you do not want to be part of the lawsuit or settlement. If you are granted permission to exclude yourself from the lawsuit, you have no basis to object to the settlement, because the case no longer affects you.

## THE COURT'S FAIRNESS HEARING

| 23. | **When and where will the Court decide whether to approve the settlement?** |
|---|---|

The Court will hold a fairness hearing on **[DATE OF FAIRNESS HEARING]** at **[TIME]**, in Courtroom 2, Terry Sanford Federal Building and United States Courthouse, 310 New Bern Avenue – 7th Floor, Raleigh, North Carolina 276091. At this hearing the Court will consider whether the settlement is fair, reasonable, and adequate. If there are objections to the settlement, the Court will consider them. The Court will also listen to people who have asked to speak at the hearing. The hearing may be continued without further notice to opt-in plaintiffs or other class members. After the hearing, the Court will decide whether to approve the settlement. We do not know how long these decisions will take.

| 24. | **Do I have to come to the hearing?** |
|---|---|

No. Class counsel will answer questions the Court may have about the settlement. However, if you have timely filed an objection with the Court, and wish to be heard in support of your objection, you are welcome to come at your own expense. Even if you file an objection, you do not have to come to Court to talk about it. As long as you mailed your written objection on time, the Court will consider it. You may also pay your own lawyer to attend the hearing, but you are not required to do so.

| 25. | **May I speak at the hearing?** |
|---|---|

You may ask the Court for permission to speak at the fairness hearing. To do so, you must send a letter saying that it is your "Notice of Intention to Appear at Hearing on Final Approval of Class Settlement in ("*Velasquez-Monterrosa, et al., v. Mi Casita Restaurants, Inc., et al.*, No. 5:14-CV-00448-(BO)")". Be sure to include your full name, address, telephone number, and signature. Your notice of intention to appear must be postmarked no

later than **[MAIL + 60]**, and be sent to the Clerk of Court, and to class counsel and defense counsel, at the addresses list above in Section 20.

# NO RETALIATION OR DISCRIMINATION

| **26.**     **If I am a current employee, will I experience any retaliation or discrimination?** |
|---|

No. It is against the law to retaliate or discriminate against an employee who decides to participate in this settlement agreement. Mi Casita Restaurant, Inc. will not discriminate or retaliate against you in any way because of your decision to participate or not in the lawsuit or this settlement. If you believe that you have been discriminated against, retaliated against, or in any way discouraged from participating in the settlement agreement, please contact class counsel in Section 18 above.

# ADDRESS CHANGES

| **27.**     **What if my address changes?** |
|---|

It is your responsibility to inform the settlement administrator of your correct address. Please mail any change of address, along with your former address, and new address, to *Velasquez-Monterrosa, et al., v. Mi Casita Restaurants, Inc., et al.* Settlement Administrator, c/o., RG2 Claims Administration LLC, **********, ** *****-****, or call (***) ***-****.

# IF YOU DO NOTHING

| **28.**     **What happens if I do nothing at all?** |
|---|

You have the right to do nothing. If you do nothing, however, you will still receive your settlement money from this proposed settlement, and you will still be bound by the Court's orders in this lawsuit and the release of claims explained in Section 9 above. You will not be able to start a legal action, continue with a legal action, or be part of any other legal action against Mi Casitas Restaurants Inc. regarding the claims resolved by this settlement.

# GETTING MORE INFORMATION

| **29.**     **Are there more details about the settlement?** |
|---|

This notice summarizes the basic terms of the proposed settlement. Further information is available from the settlement administrator and/or class counsel.

More details of the settlement are also contained in the stipulation of settlement and the pleadings and other documents relating to the lawsuit that are on file with the U.S. District Court for the Eastern District of North Carolina. Copies of the complete stipulation of settlement and select other filings in the lawsuit are available with the settlement administrator and/or class counsel, whose contact information may be found in Section 18 above. All filings are available online at the Court's Electronic Case Files ("ECF") website (https://ecf.nced.uscourts.gov/cgi-bin/login.pl), at a cost of $.10 per page. In order to access documents via that website, you must first sign-up for a Public Access to Court Electronic Records ("PACER") account (http://www.pacer.gov). You may also contact the settlement administrator or class counsel, identified above, and they will mail or email you a copy of the full stipulation of settlement.

| **30.** | **How do I get more information?** |
|---|---|

You can call (\*\*\*) \*\*\*-\*\*\*\* toll free, or write to *Velasquez-Monterrosa, et al., v. Mi Casita Restaurants, Inc.*, *et al.* Settlement Administrator, c/o RG2 Claims Administration LLC, with any questions you may have. In addition, you may contact class counsel, whose contact information is provided in Section 20.

**PLEASE DO NOT CALL THE COURT, THE CLERK, OR MI CASITA RESTAURANTS, ABOUT THIS SETTLEMENT**.

# R. 23 CLASS NOTICE

# UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NORTH CAROLINA - WESTERN DIVISION

## VELASQUEZ MONTERROSA V. MI CASITA RESTAURANTS ET AL.
### Case No.: 5:14-CV-448-BO

**IF YOU ARE A CURRENT OR FORMER EMPLOYEE WHO WORKED FOR ANY ONE OF THE 17 MI CASITA RESTAURANTS FULL-TIME AS A COOK, DISHWASHER, CHIP OR DRINK RUNNER, BUSSER, HOST OR HOSTESS, OR SIMILAR POSITION AND BELIEVE THAT YOU WERE NOT PAID FOR ALL OF YOUR HOURS WORKED, IT IS IMPORTANT THAT YOU READ THIS NOTICE OF A PROPOSED SETTLEMENT.**

- This is a Court-authorized notice.  This is not a solicitation from a lawyer.

- A former cook has sued Mi Casita Restaurants Inc., alleging that employees were not paid correctly for all hours worked.  The Court has permitted this lawsuit to proceed on a collective/class action basis.

- The Court has not decided whether Mi Casita did anything wrong.  However, the parties have proposed a settlement of this case and the Court has authorized notice of that proposed settlement to individuals who may be eligible to participate in it.  Mi Casita and/or Plaintiff's records indicate you are entitled to receive notice and that you may be entitled to a monetary award under the settlement.

- ***Your legal rights are affected whether you act or not.  Your options are explained in this notice. Please read it carefully.***
  **YOU MUST RETURN THE ENCLOSED CLAIM FORM BY [MAIL + 60] TO POTENTIALLY RECEIVE A PAYMENT FROM THIS SETTLEMENT**

- **[MAIL + 60]** is also the deadline to object to the settlement

## SUMMARY

The settlement provides a cash payment to certain current and former employees of Mi Casita Restaurants, Inc. who worked at any one of their 17 restaurant locations as full-time Cooks, Dishwashers, Chip or Drink Runners, Bussers, Hosts or Hostesses or in a similar position, and who may not have been paid for all of their hours worked.  The amount of the payments to each settlement participant will vary. **Your estimated payment is included in the claim form.**

| HERE ARE YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **RECEIVE A SETTLEMENT PAYMENT** | **If you would like to receive a settlement payment if the Court approves the proposed settlement, you must complete the claim form provided along with this notice** and return it to the Settlement Administrator, as explained below in Section 14.  Anyone who receives a settlement payment will also be bound by the release of claims explained below in Section 9. |
| **DO NOTHING, DO NOT RECEIVE A SETTLEMENT PAYMENT** | **If you do nothing, and do not return the claim form provided along with this notice, you will not receive a settlement payment**.  However, you will still be bound by the release of claims explained in Section 9 if the Court approves the settlement. |

| **OBJECT** | You can write the Court about why you do not like the settlement. |
|---|---|

- These rights and options — and the deadlines to exercise them — are explained in this notice.
- The Court in charge of this case still has to decide whether to approve the settlement. Settlement payments will be made if the Court approves the settlement and after any appeals are resolved.

# BASIC INFORMATION

## 1. Why did I get this notice?

You have received this notice package because records indicate you worked for Mi Casita Restaurants, Inc. as a full-time Cook, Dishwasher, Chip or Drink Runner, Busser, Host or Hostess or in a similar position, and may not have been paid for all of your hours worked.

This notice is designed to advise you of how you can participate in this settlement. The Court sent you this notice because you have a right to know about a proposed settlement of this lawsuit, and about all of your options, before the Court decides whether to approve the settlement. If the Court approves the settlement, and after objections and appeals are resolved, the individual settlement payments provided for by the settlement will be made.

This package explains the lawsuit, the settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.

The Court in charge of the lawsuit is the United States District Court for the Eastern District of North Carolina. The judge presiding over the action is United State District Judge Terrence W. Boyle. The case is *Velasquez-Monterrosa, et al., v. Mi Casita Restaurants, Inc.*, et al., No. 5:14-CV-00448-(BO). The person who sued is the "plaintiff" and the company they sued, Mi Casita Restaurants, Inc., et al., are the "defendants."

## 2. What is this lawsuit about?

Plaintiff Enot Velasquez Monterrosa worked as a cook in one of defendants' 17 Mi Casita Restaurant, Inc. locations. He asserts that Mi Casita Restaurants, Inc., required him and all others similarly situated to work without reporting all hours worked, and did not pay them properly for all hours worked over 40 per week at time and one-half, thus, denying them full pay for all hours worked, including overtime. Plaintiff alleges Mi Casitas Restaurants Inc., violated the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the laws of the North Carolina Wage and Hour Act ("NCWHA") N.C. Gen. Stat. § 95-25.1, *et seq*. Based on these allegations, plaintiff seeks to recover unpaid wages, liquidated damages, pre- and post-judgment interest, and attorneys' fees and costs.

Mi Casita Restaurants, Inc. denies each and all of plaintiff's allegations, and expressly denies charges of wrongdoing or liability in this lawsuit. To the contrary, Mi Casita Restaurants, Inc. contends it acted in compliance with applicable state and federal laws, and paid its employees all wages due. Accordingly, Mi Casita Restaurants, Inc. believes plaintiff's claims for unpaid wages, liquidated damages, pre- and post-judgment interest, and attorneys' fees and costs are without merit. Mi Casita also denies that the asserted claims are appropriate for collective or class action treatment.

## 3. What is a "collective action," what is a "class action," and who is involved?

Under the FLSA, a group of similarly situated individuals may seek to recover unpaid overtime wages and related damages in what is known as a "collective action." In a collective action, those plaintiffs who file consents, or "opt in" to the lawsuit, become plaintiffs. They are sometimes referred to as "opt-in plaintiffs." The individuals who initiate the lawsuit, the "named plaintiffs," bring the action on behalf of themselves and other people they believe have similar claims who may later choose to join the action.

This type of "opt-in" collective action is different from the better-known "class action," in which no consent is needed to join. In a traditional class action, the "named plaintiffs" sue on behalf of all individuals within a defined class. Individuals who meet the class definition, the "class members," are automatically members of that class, unless they file a written request with the Court specifically asking to be excluded.

The named plaintiff here – Enot Velasquez Monterrosa – filed this case as both a collective action and a class action. The collective action under federal law includes full-time Cooks, Dishwashers, Chip or Drink Runners, Bussers, Hosts or Hostesses, or similar position who were not paid for all of their hours worked and already opted in to this case by filing a written consent with the Court. Additionally, the named plaintiff sought to bring a class action under North Carolina state law on behalf of a class of such full-time employees and who worked in North Carolina between August 8, 2012 and **[DATE OF PRELIMINARY APPROVAL]**.

In both types of cases, the court certifies plaintiffs' claims for class or collective treatment, and the same court resolves the issues in the case for all opt-in plaintiffs and class members. Here, United State District Judge Terrence W. Boyle is in charge of this collective/class action. The Court has already granted certification to plaintiff's collective-action or class-action claims in the lawsuit, and the Court authorized notice be sent to opt-in plaintiffs and class members while the Court decides whether to grant the parties final approval of the settlement.

| 4. | **Why is there a settlement?** |
|---|---|

Litigation is risky, and neither side can predict the outcome with certainty. This lawsuit has been heavily litigated for a significant period of time (approximately three years), and it would likely be several more years before any final resolution could be reached through litigation.

Given these factors, the named plaintiff/class representative and their counsel concluded, after careful consideration of all of the facts and circumstances, that the proposed settlement agreed to by the parties, is fair, reasonable, and adequate, and is in the best interests of the opt-in plaintiffs and class members. This settlement avoids the costs and inconvenience associated with the discovery process, as well as the costs and risks associated with dispositive motions and trial, while providing cash benefits to opt-in plaintiffs and class members.

Mi Casita Restaurants Inc. expressly denies any liability or wrongdoing and contends it has complied with the applicable federal and state laws at all times. By entering into the settlement agreement, Mi Casita Restaurants Inc. has not admitted any liability or wrongdoing and expressly denies the same. However, like the named plaintiff and his counsel, Mi Casita Restaurants Inc. recognizes the cost and delay associated with further litigation, and the risk inherent in all lawsuits. As such, Mi Casita Restaurants Inc. agreed to enter into a settlement to avoid the costs, risks, and disruption of ongoing litigation, and to settle the outstanding claims against it.

The Court has not decided in favor of plaintiff or Mi Casita Restaurants Inc. Instead, at a mediation, the parties agreed to settle the case instead of proceeding further in litigation. The Court has, however, granted preliminary approval to the parties' proposed settlement.

## WHO IS IN THE SETTLEMENT

## 5. How do I know if I am part of the settlement?

(a) You are eligible to participate in the settlement if you were employed by Mi Casita Restaurants, Inc. as a full-time Cook, Dishwasher, Chip or Drink Runner, Busser, Host or Hostess, or similar position, in one of the company's 17 restaurant locations, and were not paid for all of his/her hours worked, and previously submitted a written consent form requesting to join the FLSA collective action in *Velasquez-Monterrosa, et al., v. Mi Casita Restaurants, Inc.*, et al., No. 5:14-CV-00448-(BO).

(b) Additionally, individuals who did not previously submit written consents to join the FLSA collective action in this lawsuit are eligible to participate in the proposed settlement if they were employed by Mi Casita Restaurants, Inc. as a full-time Cook, Dishwasher, Chip or Drink Runner, Busser, Host or Hostess, or similar position, in one of the company's 17 restaurant locations, and were not paid for all of their hours worked, AND:

    (i.) Worked in the State of North Carolina between August 8, 2012, and **[DATE OF PRELIMINARYAPPROVAL]**;

If you were mailed this notice, Mi Casita and plaintiff's attorneys' records indicate that while you did not submit a written consent form, you worked in one of the positions identified above in the State of North Carolina between August 8, 2012 and **[DATE OF PRELIMINARYAPPROVAL]**.

## 6. Are there exceptions to being included?

All opt-in plaintiffs who previously submitted written consent forms requesting to join the FLSA collective action in this lawsuit have agreed to be bound by any settlement and are included in the settlement unless they seek and receive leave from the Court to be excluded from it. All other class members, who are part of the proposed settlement solely because they meet the definition above, may request exclusion from the settlement. Any such individual who timely requests exclusion will receive no settlement payment, but will not be bound by the release of claims explained in Section 9 below.

## THE PROPOSED SETTLEMENT BENEFITS – WHAT YOU GET

## 7. What does the proposed settlement provide?

Mi Casita Restaurants, Inc. has agreed to pay a total settlement amount of $2,500,000 (the "gross settlement amount") in full settlement of the claims of all opt-in plaintiffs and class members. The gross settlement amount includes all payments to individual opt-in plaintiffs and class members, plaintiffs' attorney's fees and litigation expenses, service awards to the named plaintiff/class representative and first opt-in plaintiff to participate in the action, costs of notice of the settlement, and costs of administration of the settlement. The amount remaining after the payment to individual opt-in plaintiffs, payment of class counsel's attorney's fees and expenses, service awards, and costs of settlement administration and notice is referred to as the "revised gross settlement amount." The revised gross settlement amount, less required tax withholdings, will be distributed to individuals who are members of the settlement class or class members (*i.e.*, current and former Mi Casita Restaurant, Inc.'s employees from North Carolina who meet the definition in Section 5(b) above) who timely return the required claim form explained below in Section 14. The settlement distribution process will be administered by an independent settlement administrator (the "settlement administrator") approved by the Court.

## 8. What can I get from the proposed settlement?

If the Court approves the proposed settlement and you timely submit the required claim form, you will receive a settlement check, excluding required deductions. The exact amount of each individual's payment will depend on a number of factors, including, among others, the number of weeks you worked for Mi Casita Restaurants Inc. during the relevant time period, the hours you reported working each week, and your effective regular rate of pay.

Each final settlement payment will be separated into two equal amounts: fifty percent (50%) will be allocated to the claims asserted in the lawsuit for unpaid overtime and other wage-related damages, and fifty percent (50%) will be allocated to the claims asserted in the lawsuit for liquidated damages and other relief. The portion allocated to claims asserted in this lawsuit for unpaid overtime and other wage-related damages will be subject to all authorized or required deductions, just as if it were a regular paycheck, including, but not limited to: local, state and federal taxes, garnishments, child support orders, and tax levies/liens. The portion allocated to claims for unpaid overtime and other claims for unpaid wages will be reported on an I.R.S. Form W-2. The portion allocated to liquidated damages and other relief will be reported as non-wage income and reported on an I.R.S. Form 1099. You should consult a tax professional about tax treatment of these payments.

## 9. What am I giving up in the settlement?

The Court's orders in this lawsuit will bind all individuals participating in the settlement and you will be barred from bringing any action against Mi Casita Restaurant, Inc et. al., (including its officers, directors, shareholders, employees, agents, principals, heirs, assigns, representatives, accountants, auditors, consultants, attorneys, fiduciaries, employee benefits plans, insurers, and their respective successors and predecessors in interests, subsidiaries, affiliates, parents, divisions, partners, and affiliated organizations) that relate to hours worked or the payment of wages, except to the extent that any such claims may not be waived as a matter of law.

This release of claims against Mi Casita Restaurant, Inc. specifically includes, without limitation:

> (i) any and all claims asserted in the Litigation; (ii) any and all claims for unpaid wages, minimum wages, overtime, late payment of wages, retaliation for complaining about wages or for asserting wage-related claims and/or any other claims of any kind, or any other wage-related or recordkeeping-related claims, damages or relief of any kind including but not limited to the federal FLSA, 29 U.S.C. § 201, *et seq.*, any and all claims under North Carolina state law, including but not limited to the North Carolina Wage and Hour Act, N.C. Gen. Stat. § 95-25.1, *et seq.*, (iii) any and all claims under state and federal law for earned wages, overtime, and/or missed or interrupted meal breaks, including such claims for breach of express contract or labor agreement, implied contract, money had and received in *assumpsit*, *quantum meruit*/unjust enrichment, fraud, negligent misrepresentation, equitable estoppel, promissory estoppel, conversion, and failure to keep accurate records; (iv) any and all claims pursuant to or derived from Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et seq.*, to the extent such ERISA claims are premised on an alleged failure to credit any Settlement Class Member's account and/or benefits for all hours worked or any compensation paid or entitled to be paid, but excluding any potential ERISA claim that is not based on an alleged wage and hour violation; and (v) any and all wage-and-hour laws or wage-related claims of any kind under other laws, including but not limited to any and all such claims pursuant to other federal, local, or other states' laws and/or regulations.

This release has no application to any claim by any Class Member for discrimination in violation of state or federal law, or any claim of any type arising on or after the date the settlement has received final approval from the U.S. District Court for the Eastern District of North Carolina, or any other court taking jurisdiction over this

Litigation.

This release of claims includes past and present matters, disputes, claims, demands, rights, liabilities, expenses, damages, losses of any kind, and causes of action, whether at common law, pursuant to statute, ordinance, or regulation, in equity or otherwise, and whether arising under federal, state, or other applicable law, which you have or might have, known or unknown, asserted or unasserted, of any kind whatsoever, that relate to hours worked or the payment of wages, except to the extent that any such claim may not be waived as a matter of law, and shall extend to any such claims that arose at any time up to and including the date this settlement has received final approval from the Court, except with respect to claims of retaliation, which shall extend to any such claims that arose at any time up to and including **[DATE OF PRELIMINARY APPROVAL]**.

---

### 10.  Are my legal rights affected if I submit the required claim form to receive a payment?

Yes.  Timely submitting the required claim form is required to be eligible for a payment.  The settlement agreement contains a release of legal claims.  If the proposed settlement agreement becomes final then you will be releasing Mi Casita Restaurants Inc., et al., (and certain related people and entities) from all of the claims described in Section 9 above.  This means you will no longer be able to sue Mi Casita Restaurants Inc., et al., for any of those claims, or to continue with a legal action, or be part of any other legal action against Mi Casita Restaurants Inc., et al., for any of those claims.  However, as noted in Section 11 below, the same release applies if you do not submit the required claim form to receive a payment.

---

### 11.  Are my legal rights affected if I *do not* submit the required claim form to receive a payment?

Yes.  Even if you do not return the required claim form to receive a settlement payment, you will not be able to start a legal action, continue with a legal action, or be part of any other legal action against Mi Casita Restaurants Inc., et al., (and certain related people and entities) for any of the claims described in Section 9 above. Additionally, if you do nothing, and do not return the required claim form, you will not receive any money from this proposed settlement.

---

### 12.  Does the named plaintiff/class representative receive any additional payment?

Yes, subject to Court-approval, Plaintiff Enot Velasquez Monterrosa will ask the Court to approve payments of $7,000 and $3,000 for his and opt-in Plaintiff, Anyi Yesenia Turcios Reyes' involvement in the lawsuit for the benefit of the members of the settlement classes, and for the broader release they will provide.  The Court has not yet ruled on whether it will award these amounts.  The Court may deny these requests or award less than this amount.  The Court will make a determination on the reasonableness of these requests at a later date.

---

### 13.  What happens to proposed settlement payments that are not claimed?

Subject to Court approval, to the extent any individuals or class members (except those who previously submitted written consent forms) who are authorized by the settlement agreement to receive a monetary payment, but do not timely or properly submit the required claim form, opt out of the settlement, or otherwise elect not to accept the payment of their designated share of the revised gross settlement amount, their share will remain the property of Mi Casita Restaurants Inc et al.

# HOW YOU GET A PAYMENT

## 14.  How can I get a payment?

In order to receive a settlement payment, you must timely complete and sign the enclosed claim form, and return this form to the settlement administrator by U.S. Mail in the postage pre-paid enveloped included with this notice, by fax ((***) ***-****), or by e-mail (**[EMAIL FOR SETTLEMENT ADMINISTRATOR]**).

In order to be considered timely, any completed forms returned to the settlement administrator by U.S. Mail must be postmarked no later than **[MAIL DATE + 60]**.  Any completed claim form returned to the settlement administrator by fax or e-mail must be received no later than **[MAIL DATE + 60]**.

If necessary, you can contact the settlement administrator by telephone at (***) ***-**** to request a new copy of your claim form.

## 15.  When would I get my payment?

If you are eligible to participate in the settlement and timely provide the claim form described in Section 14 above, you will be sent a settlement check approximately 22 days after the effective date of the settlement.  Before the settlement is effective, however, settlement class members must be given time to object to the settlement or opt-out, the Court must hold a hearing to consider the fairness of the settlement and grant final approval of the settlement, and any potential appeals of the court's order granting final approval must be resolved.  Please be patient.

# EXCLUDING YOURSELF FROM THE SETTLEMENT

## 16.  Can I decide not to participate in the settlement?

Yes.  Settlement class members who are not named plaintiffs or opt-in plaintiffs, and who do not want to be part of the settlement or who want to keep the right to sue or continue to sue defendants in another action about the issues in this lawsuit or any other claim that relates to hours worked or the payment of wages, may request exclusion from the settlement.  This is sometimes referred to as "opting out" of the settlement class.

## 17.  How do I opt out of the settlement?

If you wish to exclude yourself from the settlement (*i.e.*, to "opt out"), you must submit a written statement to the settlement administrator expressly stating that you wish to be excluded from the settlement.  Such requests for exclusion should state at the top of the letter "Request for Exclusion from Settlement in "*Velasquez-Monterrosa, et al., v. Mi Casita Restaurants, Inc.*, et al., No. 5:14-CV-00448-(BO)".   Also, be sure to include your name, address, telephone number, and signature.  All written requests for exclusion must be sent by First-Class U.S. Mail, postmarked no later than **[MAIL DATE + 60]**, to:

*Velasquez-Monterrosa, et al., v. Mi Casita Restaurants, Inc.*, et al., Settlement Administrator
c/o **RG2 Claims Administration LLC**

*********
**********, ** *****-****

You cannot exclude yourself by phone or by e-mail. Requests for exclusion that do not include all required information, or that are not timely postmarked, will be deemed null, void, and ineffective.

If you timely ask to be excluded from the settlement, you will not receive any settlement payment, and you cannot object to the settlement. You also will not be legally bound by anything that happens in this lawsuit with respect to the settled claims. You will retain any legal rights that you may have against Mi Casita Restaurants Inc. concerning the claims that this settlement resolves.

| 18. | If I do not exclude myself, can I sue defendants for the same thing later? |
| --- | --- |

No. Unless you exclude yourself, you give up any right to sue defendants for the claims that this settlement resolves, which are set forth in Section 9 above. If you have a pending lawsuit asserting the claims resolved by this settlement, speak to your lawyer in the pending lawsuit immediately. You must exclude yourself from this settlement to continue your own lawsuit against Mi Casita Restaurants Inc. regarding the claims resolved by this settlement.

| 19. | If I exclude myself from the settlement, can I get money from this settlement? |
| --- | --- |

No.

## THE LAWYERS REPRESENTING YOU

| 20. | Do I have a lawyer in this case? |
| --- | --- |

Opt-in plaintiffs and class members are represented in this case by the following attorneys and law firms:

| | |
| --- | --- |
| Gilda Adriana Hernandez, Esq.<br>Michael B. Cohen, Esq.<br>THE LAW OFFICES OF GILDA A.<br>  HERNANDEZ, PLLC<br>1020 Southhill Drive, Suite 130<br>Cary, NC 27513<br>(919) 741-8693<br>(99) 869-1853 Fax<br>www.gildahernandezlaw.com<br>snelson@gildahernandezlaw.com | Derek J. Braziel, Esq.<br>LEE & BRAZIEL, LLP.<br>1801 N. Lamar St.<br>Suite 325<br>Dallas, TX 75202<br>(214) 749-1400<br>(214) 749-1010 Fax<br>jdbraziel@l-b-law.com |

The Court decided that these lawyers and law firms are qualified to represent the settlement class members in this case. These lawyers are called "class counsel." You do not need to hire your own lawyer because class counsel is working on your behalf in this action. However, should you choose to retain your own lawyer, you must do so at your own expense.

## 21.     How will the lawyers be paid?

Class Counsel will ask the Court to approve payment of up to one-third or 33.33% of the gross settlement amount (i.e., up to $833,333.33) to them for attorneys' fees. These fees would compensate Class Counsel for investigating the facts, litigating the case, negotiating the settlement, and additional work involved in implementing the settlement. Class Counsel will also ask the Court to approve payment of their out-of-pocket costs of no more than $20,000. The Court has not yet ruled on class counsel's request for an award of attorneys' fees and costs. The Court may award less than the amounts class counsel request. The Court will make a determination on the reasonableness of class counsel's application at a later date.

## OBJECTING TO THE SETTLEMENT

## 22.     How do I object/tell the Court that I do not like the proposed settlement?

If you are an opt-in plaintiff, or a member of the settlement class who has not requested exclusion from the settlement, you may object to the settlement if you do not agree with it or some part of it. To do so, you must file with the Court, and serve on counsel for the parties, a written statement giving the reasons why you object to the proposed settlement. Any such objections to the approval of the proposed settlement should be labeled at the top with the name and case number of this lawsuit ("*Velasquez-Monterrosa, et al., v. Mi Casita Restaurants, Inc.*, *et al.*, No. 5:14-CV-00448-(BO)") and must include: (i) your full name, address, telephone number, the dates of your employment with Mi Casita Restaurants, Inc., and the Mi Casita Restaurant location(s) where you worked; and (ii) each specific reason for your objection, including any legal or evidentiary support you have for your objection.

You must mail copies of the objection to the Court, class counsel, and counsel for Mi Casita Restaurants Inc., (addresses below), postmarked no later than **[MAIL DATE + 60]**:

> THE COURT
> Clerk of Court
> U.S. District Court for the Eastern District of North Carolina
> Terry Sanford Federal Building and United States Courthouse
> 310 New Bern Avenue
> Raleigh, NC 27601
>
> CLASS COUNSEL
> Gilda Adriana Hernandez, Esq.
> THE LAW OFFICES OF GILDA A. HERNANDEZ, PLLC
> 1020 Southhill Drive, Suite 130
> Cary, NC 27513
>
> COUNSEL FOR MI CASITA RESTAURANT INC., ET AL.
> Joshua Krasner, Esq.
> BARRETT LAW OFFICES, PLLC
> 5 W. Hargett Street, Suite 910
> Raleigh, NC 27601

You may also ask the Court for permission to speak at the fairness hearing, as described below in Section 27, if you submit a timely objection.

| 23. | What happens if the Court rejects my objection? |
|---|---|

The Court will consider any objections that are timely filed. This does not mean, however, that the Court will necessarily take action based on any objection. If the Court rejects your objection, you will still be bound by the terms of the settlement and the release of claims explained in Section 9 above.

Moreover, if you intend to object to the settlement, but still wish to receive a settlement payment, you must timely file the required claim form described in Section 14 above. If the Court approves the settlement despite your objections, and you have not timely filed the required claim form necessary to receive a settlement payment, you will not receive a settlement payment.

| 24. | What's the difference between objecting and asking the Court to exclude me? |
|---|---|

Objecting is simply telling the Court you do not like something about the settlement. You can object only if you stay in the settlement. If you ask the Court to exclude you from this lawsuit, you are telling the Court you do not want to be part of the lawsuit or settlement. If you are granted permission to exclude yourself from the lawsuit, you have no basis to object to the settlement, because the case no longer affects you.

## THE COURT'S FAIRNESS HEARING

| 25. | When and where will the Court decide whether to approve the settlement? |
|---|---|

The Court will hold a fairness hearing on **[DATE OF FAIRNESS HEARING]** at **[TIME]**, in Courtroom 2, Terry Sanford Federal Building and United States Courthouse, 310 New Bern Avenue – 7th Floor, Raleigh, North Carolina 27609. At this hearing, the Court will consider whether the settlement is fair, reasonable, and adequate. If there are objections to the settlement, the Court will consider them. The Court will also listen to people who have asked to speak at the hearing. The hearing may be continued without further notice to opt-in plaintiffs or other class members. After the hearing, the Court will decide whether to approve the settlement. We do not know how long these decisions will take.

| 26. | Do I have to come to the hearing? |
|---|---|

No. Class counsel will answer questions the Court may have about the settlement. However, if you have timely filed an objection with the Court, and wish to be heard in support of your objection, you are welcome to come at your own expense. Even if you file an objection, you do not have to come to Court to talk about it. As long as you mailed your written objection on time, the Court will consider it. You may also pay your own lawyer to attend the hearing, but it is not required.

| 27. | May I speak at the hearing? |
|---|---|

You may ask the Court for permission to speak at the fairness hearing. To do so, you must send a letter saying that it is your "Notice of Intention to Appear at Hearing on Final Approval of Class Settlement in *Velasquez-Monterrosa, et al., v. Mi Casita Restaurants, Inc., et al.*, No. 5:14-CV-00448-(BO). Be sure to include your full name, address, telephone number, and signature. Your notice of intention to appear must be postmarked no later

than **[MAIL + 60]**, and be sent to the Clerk of Court, and to class counsel and defense counsel, at the addresses list above in Section 22.

## NO RETALIATION OR DISCRIMINATION

| **28.** | **If I am a current employee, will I experience any retaliation or discrimination?** |
|---|---|

No. It is against the law to retaliate or discriminate against an employee who decides to participate in this settlement agreement. Mi Casita Restaurant, Inc. will not discriminate or retaliate against you in any way because of your decision to participate or not in the lawsuit or this settlement. If you believe that you have been discriminated against, retaliated against, or in any way discouraged from participating in the settlement agreement, please contact class counsel in Section 20 above.

## ADDRESS CHANGES

| **29.** | **What if my address changes?** |
|---|---|

It is your responsibility to inform the settlement administrator of your correct address. Please mail any change of address, along with your former address, and new address to *Velasquez-Monterrosa, et al., v. Mi Casita Restaurants, Inc.*, *et al*., No. 5:14-CV-00448-(BO) - Settlement Administrator, c/o RG2 Claims Administration LLC., **\*\*\*\*\*\*\*\*\***, **\*\*\*\*\*\*\*\*\*\***, **\*\* \*\*\*\*\*-\*\*\*\*** or call (\*\*\*) \*\*\*-\*\*\*\*.

## IF YOU DO NOTHING

| **30.** | **What happens if I do nothing at all?** |
|---|---|

You have the right to do nothing. If you do nothing, however, you will not receive any money from this proposed settlement, but you will still be bound by the Court's orders in this lawsuit and the release of claims explained in Section 9 above. You will not be able to start a legal action, continue with a legal action, or be part of any other legal action against Mi Casita Restaurants Inc., et al., regarding the claims resolved by this settlement.

## GETTING MORE INFORMATION

| **31.** | **Are there more details about the settlement?** |
|---|---|

This notice summarizes the basic terms of the proposed settlement. Further information is available from the settlement administrator and/or class counsel.

More details of the settlement are also contained in the stipulation of settlement and the pleadings and other documents relating to the lawsuit that are on file with the U.S. District Court for the Eastern District of North Carolina. Copies of the complete stipulation of settlement and select other filings in the lawsuit are available with the settlement administrator and/or class counsel, whose contact information may be found in Section 20 above. All filings are available online at the Court's Electronic Case Files ("ECF") website (https://ecf.nced.uscourts.gov/cgi-bin/login.pl), at a cost of $.10 per page. In order to access documents via that website, you must first sign-up for a Public Access to Court Electronic Records ("PACER") account (http://www.pacer.gov). You may also contact settlement administrator or class counsel, identified above, and they will mail or email you a copy of the full stipulation of settlement.

| 32. | How do I get more information? |
|-----|--------------------------------|

You can call (***) ***-**** toll free, or write to *Velasquez-Monterrosa, et al., v. Mi Casita Restaurants, Inc.*, *et al.* Settlement Administrator, c/o RG2 Claims Administration LLC, with any questions you may have. In addition, you may contact class counsel, whose contact information is provided in Section 20.

## PLEASE DO NOT CALL THE COURT, THE CLERK, OR MI CASITA RESTAURANTS, ABOUT THIS SETTLEMENT.

# EXHIBIT A – 2 FLSA OPT-IN PLAINTIFFS

| Employee Number | Employee Name | Total Wks | Salary | Rate | Hrs/Wk | MW owed | Total Damages | Pre-judgment Interest | Liquidated Damages |
|---|---|---|---|---|---|---|---|---|---|
| | Salazar, Marco Vinicio | 91.1 | $400.00 | $ 10.00 | 59 | | $25,963.50 | $28,040.58 | $56,081.16 |
| 444 | Velazquez, Raul | 22.71 | $253.43 | $ 6.34 | 54 | $ 20.76 | $3,021.58 | $3,263.31 | $6,526.62 |
| 212 | Rogel-Reyes, Juan G | 35 | $350.00 | $ 8.75 | 65 | | $11,484.38 | $12,403.13 | $24,806.25 |
| 105 | Valenzuela, Jose Martin | 67.71 | $450.00 | $ 11.25 | 60 | | $22,852.13 | $24,680.30 | $49,360.59 |
| 623 | Rogel, Fernando | 59.86 | $300.00 | $ 7.50 | 66 | | $17,508.21 | $18,908.87 | $37,817.74 |
| 219 | Hernandez Lopez, Jose M | 41.71 | $443.00 | $ 11.08 | 64.5 | | $16,976.23 | $18,334.33 | $36,668.66 |
| 150 | Sanchez, Ordonez, Ricardo | 41.14 | $450.00 | $ 11.25 | 74.5 | | $23,951.19 | $25,867.29 | $51,734.58 |
| 1410 | Valasquez Monterrosa, Moises Enot | 128.71 | $550.00 | $ 13.75 | 81 | | $108,844.02 | $113,053.64 | $226,107.27 |
| 229 | Sanabria L, Santos | 82.7 | $382.50 | $ 9.56 | 60 | | $23,724.56 | $25,622.53 | $51,245.06 |
| 1521 | Flores-Ortiz, Pedro | 0 | $300.00 | $ 7.50 | 51 | | $0.00 | $0.00 | $0.00 |
| 1426 | Turcios Reyes, Anyi Yesenia | 68.21 | $390.00 | $ 10.63 | 66 | | $28,264.52 | $26,718.95 | $53,437.90 |
| 323 | Gomez Urquin, Jose Antonio | 142.15 | $340.00 | $ 8.50 | 53 | | $23,561.36 | $25,446.27 | $50,892.54 |
| | | | | | | | | $322,339.18 | $644,678.37 |

# EXHIBIT
# A – 3
# CLAIM
# FORM

*Velasquez Monterrosa et al v. Mi Casita Restaurants et al* Settlement Administrator
c/o

*Velasquez Monterrosa et al v. Mi Casita Restaurants et al*
Case No. 5:14-CV-448-BO
United States Court for the Eastern District of North Carolina

Estimated Award
(Before Taxes): _____

[Class Member Name]
[Mailing Address 1]
[Mailing Address 2]
[City, State ZIP]

## CLAIM FORM

In order to receive a settlement payment, you must submit this Claim Form to the Settlement Administrator. To be considered timely, these forms must be postmarked by no later than [**MAIL DATE + 60**] if returned by U.S. Mail, or received by [MAIL DATE + 60] if returned by fax or e-mail.

### SEND ALL DOCUMENTS TO:

*Velasquez et al v. Mi Casita et al. Settlement Administrator*
c/o
## RG2 Claims Administration LLC
*********
**********, ** *****-****
Fax: (***) ***-****

E-mail: [**EMAIL FOR SETTLEMENT ADMINISTRATOR**]

---

Name and Address Updates:

*If your name or address is different from what is printed above, please provide updated information below:*

First Name        MI        Last Name

Mailing Address        Apt/Unit

City        State        Zip Code

---

- By completing and signing this Claim Form, I verify that I was employed by Mi Casita Restaurants as a full-time cook, dishwasher, chip and drink runner, host and hostess, or similar position, in the company's restaurant at some point in time between August 8, 2012, and [DATE OF PRELIMINARY APPROVAL], and defendants failed to pay me for all hours worked since I was not permitted to record all of my time worked or was required to work in excess of forty (40) hours per week and did not receive overtime pay.

- I understand that this lawsuit claims that *Mi Casita Restaurants et al* did not pay employees such as cooks, dishwashers, chip and drink runners, hosts and hostesses, or similar positions as required by the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., and North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. §§ 95-25.1 et seq., as explained in the notice of the proposed settlement that I received along with this claim form.

- I wish to participate in the parties' proposed settlement if approved by the Court.

- I understand that I must keep the Settlement Administrator informed of my current address and of any change in my address. If I do not do so, I understand that I may not receive any settlement payment that I might otherwise be entitled to receive.

**I declare under penalty of perjury under the laws of the United States that the foregoing statements are true and correct.**

_____     _____
Signature                                                     Date

_____
Print Name                                       City, State